ACCEPTED
14-16-00495-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
7/8/2016 11:51:01 AM
CHRISTOPHER PRINE
CLERK

No. 14-16-00495-CV

**In the Court of Appeals
For the Fourteenth District of Texas**

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

7/8/2016 11:51:01 AM

CHRISTOPHER A. PRINE
Clerk

In Re Tom Thomas, Dan Sheehan, and Marc Culp, Individually and as Successors
to the Interest of Thomas, Sheehan & Culp, LLP, Relators

From the Probate Court Number Two (2)
of Harris County, Texas
Honorable Mike Wood, Presiding

**Real Party in Interest Legacy's Motion to Reconsider Order Granting Motion
for Emergency Stay of Proceedings**

MacIntyre, McCulloch, Stanfield
& Young, LLP

By: /s/ W. Cameron McCulloch

**W. Cameron McCulloch**
State Bar No. 00788930
cameron.mcculloch@mmlawtexas.com
**Christopher C. Burt**
State Bar No. 24068339
christopher.burt@mmlawtexas.com
2900 Weslayan, Suite 150
Houston, Texas 77027
(713) 572-2900

**Counsel for Real Party in Interest Legacy Trust
Company, in its capacity as the court-appointed
Receiver for the Article IV Trust created by the Last
Will and Testament of Katherine Pillot Barnhart**

5631319v2

## Identity of Parties and Counsel

**Relators and Movants for Emergency Stay**

Tom Thomas, Dan Sheehan, and Marc Culp, as successors to Thomas, Sheehan & Culp LLC ("Relators" or TSC"), plaintiffs and counterclaim defendants

**Counsel in Trial Courts and for Mandamus Petition and Motion for Emergency Stay**

Marc S. Culp
State Bar No. 05212700
mculp@cdhllp.com
**CULP & DYER, L.L.P.**
222 East McKinney Street, Suite 210
Denton, Texas 76201
(940) 484-2236 - Telephone
(940) 484-4436 - Facsimile

**Real Party in Interest, Defendant, and Counterclaim Plaintiff**

Legacy Trust Company, N.A., in its capacity as court-appointed Receiver of the Article IV Trust under the Last Will and Testament of Katherine Pillot Lee Barnhart ("Legacy" or "Receiver")

**Counsel in Trial Courts and for Mandamus Petition and Motion for Emergency Stay**

W. Cameron McCulloch
State Bar No. 00788930
cameron.mcculloch@mmlawtexas.com
Christopher C. Burt
State Bar No. 24068339
christopher.burt@mmlawtexas.com
**MACINTYRE, MCCULLOCH, STANFIELD & YOUNG, LLP**
2900 Weslayan, Suite 150
Houston, Texas 77027
(713) 572-2900

**Respondent**

The Honorable Mike Wood
Presiding Judge, Harris County
Probate Court No. 2
Harris County Civil Courthouse
201 Caroline
6th Floor
Houston, TX 77002
713-368-6710

## Procedural History

Relators Tom Thomas, Dan Sheehan, and Marc Culp, individually, and as successors to the interest of the law firm of Thomas Sheehan & Culp, LLP ("TSC" or "Relators") sued Legacy Trust Company, in its capacity as the court-appointed Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Barnhart ("Legacy"), to collect a contingent fee they claim is due them under a 1995 attorney fee agreement with their clients Susan Camille Lee and Susan Campbell Gibson for representation in *Lee v. Lee* in Harris County Probate Court Number Two (2) (the "Probate Court"). TSC however filed their Original Petition in the 162nd Judicial District of Dallas County on April 20, 2016 (the "Dallas Lawsuit"). Legacy was appointed Receiver over the Trust by the Probate Court. Legacy filed, in the Dallas Lawsuit, a Plea in Abatement and Motion to Transfer that challenged the venue of the Dallas court, and subject to those motions, an Answer and Counterclaim that asserted among other things that TSC had only a fee agreement with their clients Susan Camille Lee and Susan Campbell Gibson, and not any trustee of the Trust, and in any event were barred by the Final Judgment awarding attorneys' fees entered by the Harris County Probate Court in *Lee v. Lee*. *See* **Tab 1**.

On May 13, 2016, Legacy filed a motion asking the Probate Court to transfer the Dallas County Lawsuit to the Probate Court under Texas Estates Code § 34.001

as it was a matter related to a probate proceeding pending in the Probate Court. The Probate Court granted Legacy's Motion. Legacy served discovery requests on TSC regarding their breach of contract action.[1] Relators subsequently filed their Petition for Writ of Mandamus pending in the above numbered and styled case. At its most basic level, Relators have asserted that the Probate Court does not have jurisdiction such that it could transfer the litigation to itself from 162nd Judicial District Court in Dallas County under Texas Estates Code § 34.001. Relators now have filed a Motion for Emergency Stay of Proceedings seeking to avoid having to produce discovery in this matter and the Court subsequently granted the request for Emergency Stay on July 8, 2016.

Save for TSC's upcoming deadline to respond to discovery requests from Legacy, Legacy represents to the Court that there are no other pending deadlines in place for this case at the present time.

No matter whether TSC's claims move forward in the Probate Court or Dallas County District Court, TSC will have to respond to discovery properly requested by Legacy. TSC is simply seeking to avoid making discovery available on its own claims for reasons unknown.

---

[1] *See* Tab 1 to Relator's Motion for Emergency Stay of Proceedings.

## *Argument and Authorities*

## 1. The Emergency Stay Serves Only to Delay Necessary Proceedings, Prejudicing Legacy.

### A. Absent compelling circumstances, a stay is improper.

The request for an emergency stay is an extraordinary measure provided for in the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 52.10. The Supreme Court of Texas has provided that "[f]or a court of appeals to stay proceedings in the trial court while it considers an interlocutory appeal increases delay and expense and should not be done absent compelling circumstances." *Coal. of Cities for Affordable Util. Rates v. Third Court of Appeals*, 787 S.W.2d 946, 947 (Tex. 1990) (per curiam). No such compelling circumstances exist here.

### B. No compelling circumstances exist for a stay.

Relators' sole basis for requesting a "stay of the trial court's proceedings" is to avoid having to respond to Legacy's discovery about their claims against Legacy. Relators have shown no "compelling circumstances" for avoiding discovery. Regardless of whether TSC's Petition for Writ of Mandamus is ruled on by this Court prior to August 15, or if that petition is granted or denied, it will not change in any way the need for TSC to respond to discovery requests from Legacy about TSC's own claims. The discovery will remain necessary and probative for the resolution of this matter either by settlement or trial, regardless of whether the lawsuit proceeds in the Probate Court or District Court in Dallas County. The

Court's stay of the proceedings does nothing more than further protract this litigation and require the further delay and expense that the Texas Supreme Court warned against in *Coal. of Cities*. *See Coal. of Cities*, 787 S.W.2d at 947.

Relators have conceded that Legacy has already agreed to an extension of the time period for which TSC may respond to Legacy's discovery requests until August 15, 2016. A true and correct copy of the proposed discovery response extension agreement that counsel for Legacy has sent to counsel for Relators is attached to this pleading within **Tab 2**. Relators admitted in their own Motion for Emergency Stay that they have tentatively agreed to such relief.[2]

Contrary to Relators' bald assertion, they have shown no prejudice by ongoing discovery in the trial court. They argue, without citing any authority, that they cannot *send* discovery to Legacy without "risk of waiver of arguments made in TSC's plea in abatement." Even if that were true, that is easily avoided by a Rule 11 agreement as Legacy has offered not to assert such a waiver. A true and correct copy of counsel for Legacy's offer to stipulate that responding to discovery would not waive Relators' plea in abatement is attached to this pleading within **Tab 3**.

On the other hand, Legacy and the beneficiaries of the Trust over which Legacy is the Receiver are prejudiced by this stay. Legacy is charged by the order

---

[2] Motion for Emergency Stay at 6.

of the Probate Court appointing Legacy as Receiver for the Article IV Trust under the Last Will and Testament of Katherine Pillot Lee Barnhart with performing the functions of the trustee of that Trust, which includes the mandatory distribution of income of the Trust. Relators claim they are owed over $1 million to be paid from the Trust based on events that occurred twenty years ago, a disputed liability that nevertheless affects Legacy's ability to make distributions from the Trust to its beneficiaries.

## Prayer

For the foregoing reasons, Legacy Trust Company, in its capacity as the Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Barnhart, respectfully requests that this Court (1) reconsider the Realtors' Motion for Emergency Stay of Proceedings and the Order granting the same; (2) upon reconsideration, **deny** Relators' Motion for Emergency Stay of Proceedings, and (3) grant such other and further relief as Legacy may show itself justly entitled to receive.

Respectfully submitted,

**MacIntyre, McCulloch, Stanfield & Young, LLP**

By:   */s/ W. Cameron McCulloch*
     W. Cameron McCulloch
     State Bar No. 00788930
     cameron.mcculloch@mmlawtexas.com
     Christopher C. Burt
     State Bar No. 24068339
     christopher.burt@mmlawtexas.com
     2900 Weslayan, Suite 150
     Houston, Texas 77027
     (713) 572-2900
     (713) 572-2902 (FAX)

**Counsel for Real Party in Interest Legacy Trust Company, in its capacity as the court-appointed Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Barnhart**

## Certificate of Service

I do hereby certify that a copy of Real Party in Interest Legacy's Motion to Reconsider Order Granting Motion for Emergency Stay of Proceedings was served on the following counsel on this the 8th day of July, 2016 by U.S. Postal Mail, facsimile, and electronically.

Mr. Marc S. Culp
Culp & Dyer, LLP
222 E. McKinney Street, Suite 210
Denton, Texas 76201
(940) 484-4436
mculp@cdhllp.com

Neil Kenton Alexander
kalexander@porterhedges.com
Eric M. English
eenglish@porterhedges.com
Jonna Summers
jsummer@porterhedges.com
Porter Hedges, LLP
1000 Main St., 36th Floor
Houston, Texas 77002
(713) 226-6614

Daniel J. Sheehan
dsheehan@dsa-law.com
John M. Phalen, Jr.
jphalen@dsa-law.com
Daniel Sheehan PLLC
Campbell Center II, Suite 100
8150 N. Central Expressway
Dallas, Texas 75206
(214) 468-8803

The Honorable Mike Wood
Presiding Judge, Harris County
Probate Court No. 2
Harris County Civil Courthouse
201 Caroline Houston, Texas 77002
713-368-6710
(the "Probate Court")

John Porter
john.porter@bakerbotts.com
Keri D. Brown
keri.brown@bakerbotts.com
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
(713) 229-1522

Thomas Zabel
Zabel Freeman
tzabel@zflawfirm.com
1135 Heights Blvd.
Houston, Texas 77008
(713) 802-9114

By:    */s/ W. Cameron McCulloch*

W. Cameron McCulloch
State Bar No. 00788930
cameron.mcculloch@mmlawtexas.com
Christopher C. Burt
State Bar No. 24068339
christopher.burt@mmlawtexas.com
2900 Weslayan, Suite 150
Houston, Texas 77027
(713) 572-2900
(713) 572-2902 (FAX)

**Counsel for Real Party in Interest Legacy Trust Company, in its capacity as the court-appointed Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Barnhart**

# Appendix

# TABLE OF CONTENTS

TAB 1 – Legacy's Motion to Transfer Venue, and Subject to Motion to Transfer Venue & Motion to Transfer Lawsuit to Statutory Probate Court, Defendant's Original Answer, Plea in Abatement, and Counter Claim filed in the 162nd Dallas County, Texas........................................................ 1

TAB 2 – July 5, 2016 Proposed Rule 11 Agreement...............................184

TAB 3 – July 1, 2016 Correspondence regarding plea in abatement stipulation..186

# TAB 1

CAUSE NUMBER DC-16-04570

| | | |
|---|---|---|
| TOM THOMAS, DAN SHEEHAN and MARC CULP, individually and as successors to the interests of Thomas, Sheehan & Culp, L.L.P., Plaintiffs, | § § § § § § | IN THE 162nd DISTRICT |
| v. | § § | COURT OF |
| LEGACY TRUST COMPANY, N.A., in the capacity as RECEIVER FOR THE ARTICLE IV TRUST created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased, Defendant. | § § § § § § § § | DALLAS COUNTY, TEXAS |

## Defendant Legacy's Motion to Transfer Venue

Defendant Legacy Trust Company, N.A., in its capacity as the court-appointed Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased (hereinafter referred to as "Legacy"), respectfully moves the Court to transfer this lawsuit to Probate Court No. 2 of Harris County, Texas because it is the only proper venue to hear this dispute.

## Background

Plaintiffs Tom Thomas, Dan Sheehan, and Marc Culp (hereinafter sometimes collectively referred to as the "Plaintiff Lawyers"), who allege they are successors to the law firm of Thomas, Sheehan & Culp, L.L.P., claim they are owed contingent legal fees from the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased (hereinafter referred to as the "Article IV Trust"), for which Legacy is the Receiver appointed by Probate Court No. 2 of Harris County, Texas. Legacy has its principal place of business in Harris County. The Plaintiff Lawyers base their claim on the March 30, 1995 written fee agreement signed by Dan Sheehan, on behalf of Thomas, Sheehan & Culp, LLP, and clients Susan Camille Lee (hereinafter referred to as "Ms. Lee"),

1

0050733

05/26/16

individually, and Ms. Lee's daughter Susan Campbell Gibson (hereinafter referred to as "Ms. Gibson"), individually, under which the law firm agreed to represent these clients for a mixture of hourly fees and contingent fees in a lawsuit Ms. Lee filed in 1988 in Probate Court No. 2 of Harris County, *In the Estate of Katherine Pillot Lee Barnhart, Deceased -- Susan Lee et al v. Ronald E. Lee, Jr., individually, as Independent Executor of the Estate and as Trustee of the Article IV Trust under the Last Will and Testament of Katherine Pillot Lee Barnhart*, No. 137,506 (hereinafter referred to as the "Probate Court Lawsuit").[1] The Probate Court Lawsuit was tried and a judgment entered in 1996, the judgment was modified on appeal in 2002, and Ms. Lee and Ms. Gibson were awarded specific attorneys' fees paid from the Article IV Trust. The judgment also ordered defendant Ronald E. Lee, Jr., a resident of Harris County, to reimburse the Article IV Trust for certain expenses. Per Plaintiffs' Original Petition which is attached hereto as Exhibit "1", the Plaintiff Lawyers claim they are entitled to collect a contingent fee based on amounts collected in Harris County 1) in 1997 by the Trustee of the Article IV Trust on the judgment entered in the Probate Court Lawsuit in 1996, 2) in 2015 by Legacy as court-appointed Receiver for the Article IV Trust in 2015, and 3) in 2016 pursuant to a settlement agreement approved in 2016 by Harris County Probate Court No. 2. The Plaintiff Lawyers do not seek contingent fees awarded to their clients Ms. Lee and Ms. Gibson, but rather from the Article IV Trust despite the fact that the Trustee of the Article IV Trust was not a party to the fee agreement. *See* Exhibit "A" to Plaintiffs' Original Petition. There is ongoing litigation in Harris County Probate Court No. 2 concerning the Article IV Trust to which Legacy, Ms. Lee, and Ms. Gibson are parties. Plaintiff Sheehan in fact is counsel for Ms. Lee and Ms. Gibson in that litigation.

---

[1] A copy of the alleged fee agreement between the Plaintiff Lawyers, Ms. Lee and Ms. Gibson is attached to Plaintiffs' Original Petition at page 22 as Exhibit "A".

0050733

# Summary of Argument

A motion to transfer venue is the proper vehicle for a defendant to raise a challenge to the plaintiff's venue choice. TEX. R. CIV. P. 86; *Wichita Cty. v. Hart*, 917 S.W.2d 779, 781 (Tex. 1996). Legacy moves the Court to transfer venue of this lawsuit to Probate Court No. 2 of Harris County for 3 reasons:

1. Plaintffs' allegations of venue in Dallas County are incorrect.

2. Venue is proper in Harris County, and particularly in Probate Court No. 2 of Harris County, because the claims asserted in this lawsuit directly involve prior judgments and rulings of Probate Court No. 2 of Harris County, and ongoing litigation on related matters in that court.

3. Dallas County is an inappropriate and inconvenient forum for the adjudication of this dispute.

Legacy has previously filed a motion in Probate Court No. 2 of Harris County requesting that court to exercise its power conferred under Texas Estates Code §34.001 to order this case transferred from this Court to Probate Court No. 2 of Harris County. A hearing on that motion is set for June 7, 2016. If that motion is granted, this motion will be moot.

# Argument

## 1. Venue for this Lawsuit is Only Proper in Probate Court No. 2 of Harris County.

Section 15.002(a) of the Texas Civil Practice and Remedies Code provides in relevant part that, except where otherwise provided by statute, "all lawsuits shall be brought "(1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred; … or (3) in the county of the defendant's principal office in this state, if the defendant is not a natural person."

3

Only if these provisions do not apply may the plaintiff sue in the county of his or her residence under Section 15.002(a)(4).

Harris County is the only county where all or a substantial part of the events or omissions giving rise to the claim occurred. The Article IV Trust (and the underlying probate of the will that created the trust), the Receiver, the lawsuit through which the Plaintiff Lawyers claim their contingency fee was earned, the payments to the Article IV Trust arising out of that lawsuit, Susan Lee, and Susan Gibson – all of the people, acts or omissions giving rise to the cause of action – were situated or occurred in Harris County.

1. A plain reading of the fee agreement shows that the Susan Lee was a resident of Harris County at the time that she signed the agreement, and that the agreement pertained to a lawsuit she had already filed in Harris County in 1988.

2. Ms. Gibson, Ms. Lee's daughter, was a resident of Harris County with her mother when the agreement was signed in 1995, although she was attending Pine Manor College in Massachusetts during the school year.

3. The sole basis on which the Plaintiff Lawyers claim they are entitled to collect the additional contingency fee is that the Trustee and the Receiver for the Article IV Trust collected money in Harris County pursuant to a Harris County judgment.

4. The situs of that Article IV Trust was maintained in Harris County since the Trust was created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased, probated in Harris County, and under the supervision of Probate Court No. 2 in Harris County.

5. Legacy, as court-appointed Receiver of the Article IV Trust with all the powers of a trustee, resides in Harris County, and thus the funds from which the Plaintiff Lawyers seek to recover are located in Harris County.

4

0050733

Therefore, venue of this lawsuit is proper only in Harris County, Texas. *See* TEX. CIV. PRAC. & REM. CODE §15.002(a)(1).

Plaintiffs allege, correctly, that defendant Legacy is a nationally chartered non-depository trust company with its principal place of business in Houston, Harris County, Texas. Movant is not a natural person. Given the fact that Legacy's principal office is located in Harris County, venue of the lawsuit is proper in Harris County, Texas. *See* TEX. CIV. PRAC. & REM. CODE §15.002(a)(3).

The Plaintiff Lawyers claim venue is proper in Dallas County under TEX. CIV. PRAC. & REM. CODE §64.052(b) which provides that "a suit against a receiver may be brought where the person whose property is in receivership resides." However, §64.052(b) is a basis for proper venue in Harris County, not Dallas County. Legacy is the Receiver for the Article IV Trust, and as such, holds title to the assets of the Article IV Trust. Venue is proper in Harris County as Legacy's principal place of business is in Houston, Harris County, Texas.

Texas Property Code §115.002(c-1) also provides that "...if the settlor is deceased and an administration of the settlor's estate is pending in this state, an action involving the interpretation and administration of ... a testamentary trust created by the settlor's will may be brought ... (2) in the county in which the administration of the settlor's estate is pending."[2] In this case, the Plaintiff Lawyers seek to have a contingent fee awarded to them from the Article IV Trust, a testamentary trust created by Settlor Katherine Pillot Lee Barnhart (now deceased). The administration of the Estate of Katherine Lee Pillot Lee Barnhart, Deceased is presently pending

---

[2] Likewise, ESTATES CODE §33.002 provides that venue for a cause of action related to a probate proceeding pending in a statutory probate court (other than a cause of action against a personal representative for personal injury, death, or property damage) is proper in the statutory probate court in which the decedent's estate is pending.

5

0050733

in Harris County Probate Court Number 2. Venue of the lawsuit is therefore proper in Probate Court No. 2 of Harris County.

Even if venue were proper in Dallas County, there are compelling reasons for this Court to transfer this case to Probate Court No. 2 in Harris County under TEX. CIV. PRAC. & REM. CODE §15.002(b). Not only is venue unquestionably proper in that court, the following reasons make transfer to that Court the only reasonable choice in the exercise of this court's power to transfer under TEX. CIV. PRAC. REM. CODE §15.002(b:

1. Parties to this lawsuit are *already parties to pending litigation* involving overlapping issues in Probate Court No. 2 of Harris County.

2. Plaintiffs' claims involve the interpretation of orders and judgments entered by Probate Court No. 2 of Harris County. The Honorable Mike Wood, Judge of Probate Court No. 2, presided over the trial and entered the very judgment that addressed both attorneys' fees and the obligations of the trustee of the Article IV Trust at issue in the Plaintiff Lawyers' claims for a contingent fee. Judge Wood is likewise supervising Legacy as Receiver for the Article IV Trust.

3. Any judgment entered against Legacy as Receiver for the Article IV Trust in this court must be referred to Probate Court No. 2, the court that appointed it Receiver, for enforcement first under Texas Civil Practice & Remedies Code §64.055. *Campbell v. Wood*, 811 S.W.2d 753, 756 (Tex. App.—Houston [1st Dist.] 1991, no writ).

Under these circumstances, maintenance of the action in Dallas County, rather than in the court that was and is directly involved in all matters pertinent to this dispute, would work an injustice to Legacy and the beneficiaries of the Article IV Trust. The balance of interests of all parties clearly favors proceedings in Probate Court No. 2, and a transfer to that court will not work any injustice as to any party.

6

0050733

## A. Probate Court No. 2 is already adjudicating related issues involving the same parties.

The Plaintiff Lawyers' claims are but one part of an ongoing dispute entirely presided over by Probate Court No. 2 since 1988 concerning the management of the Article IV Trust. The most recent chapter of that dispute led to that court removing the Plaintiff Lawyers' client Ms. Lee as a substitute trustee of the Trust, and the appointment of defendant Legacy as Receiver for the trust. *See* **Exhibit B** to Plaintiffs' Original Petition, "Order Removing Trustee and Appointing Receiver," dated June 18, 2015. Also actively in dispute before Probate Court No. 2 is Ms. Lee's claim that the terms of the settlement agreed to by Legacy and Mr. Ronald E. Lee, Jr., under which Legacy has collected the judgment in favor of the Article IV Trust on which the Plaintiff Lawyers seek to collect contingent fees, should not be approved by that court. *See* **Exhibit "2"** to this Motion, "Defendant Susan Lee's Objections, Opposition, and Response to Application to Approve Settlement Agreement." Dan Sheehan, a plaintiff here, is counsel for both Ms. Lee and Ms. Gibson in the ongoing disputes in Probate Court No. 2. He served as lead counsel for Ms. Lee in Probate Court No. 2 in a previous chapter, which is the basis for the claims asserted in this lawsuit. It serves no legitimate purpose to involve a different court in a different venue in the adjudication of this lawsuit.[3]

## B. Plaintiffs' claims require the interpretation and enforcement of the orders and judgments of Probate Court No. 2.

Why did Sheehan and his former partners sue in Dallas, rather than in Probate Court No. 2? The answer probably lies in the fact that their claims are *foreclosed* by that court's Final Judgment, dated October 25, 1996 in the very lawsuit to which the contingent fee agreement

---

[3] The Local Rules of the Dallas District Courts recognize the desirability of transferring cases "related to another case previously filed in or disposed of by another Court" in Rules 1.06 and 1.07. While these rules are not directly applicable here, the principle is the same.

7

pertains, *Susan Lee et al v. Ronald E. Lee, Jr.,* No 137,506. It is payments toward this same judgment on which the Plaintiff Lawyers base their attorneys' fee claims. These same lawyers, Ms. Lee, and Ms. Gibson were parties to a stipulation that was incorporated into that Final Judgment dated October 25, 1996, which states in relevant part:

> Based upon the stipulation of the counsel for the parties and the undisputed or admitted facts, the Court finds that i) Susan C. Lee's attorneys were paid reasonable and necessary fees of $1,000,000.00 for the prosecution of this action; ii) attorneys representing Susan C. Gibson, individually, and Susan C. Lee as Trustee of the Article V Trust for Susan C. Gibson, were paid reasonable and necessary fees of $500,000.00 for the prosecution of this action . . . . The Court further finds that Plaintiffs are entitled to judgment directing and authorizing the Executor of the Estate and Trustee of the Article IV Trust to reimburse Susan C. Lee, individually and Susan C. Lee as Trustee of the Article V Trust for Susan C. Gibson for the aforesaid attorneys' fees from the assets of the Estate and/or the Article IV Trust, ***and after such payment or reimbursement, Plaintiffs are not entitled to any additional attorneys' fees for the trial of this action.***

Final Judgment, October 25, 1996, *Lee v. Lee,* No. 137,506, p. 3 (emphasis added), attached as **Exhibit C** to Plaintiffs' Original Petition at p. 037. Notwithstanding this order, under which the Plaintiff Lawyers received their fees, they now claim they are entitled to *additional* contingent fees. The proper court for interpreting and applying this order in this lawsuit is the one that issued it – Probate Court No. 2. Moreover, it is Probate Court No. 2 that appointed and supervises Legacy as Receiver for the Article IV Trust, and has power over the administration of the Article IV Trust created by the Will of Katherine Pillot Lee Barnhart, whose estate was probated in that court.

The same fee agreement on which plaintiffs base their claim was also the subject of a previous jury trial before Judge Wood in Harris County Probate Court No.2, where another lawyer claiming under it sued Ms. Lee to collect fees. *Donna Kline v. Susan Camille Lee,* No.

8

137,506-403. *See* **Exhibit J** to Plaintiffs' Original Petition at p. 143. Plaintiff Sheehan defended Ms. Lee in that lawsuit. (Neither the then-trustee of the Article IV Trust nor Legacy was a party to that lawsuit.) The Plaintiff Lawyers now seek to have fees awarded to themselves under the very same fee agreement that was previously litigated in Harris County Probate Court No. 2.

### C. Allowing this lawsuit to proceed in Dallas needlessly duplicates proceedings, wasting judicial resources.

Even if a judgment were entered against Legacy here, Texas law would require the Plaintiff Lawyers to go to Harris County Probate Court No. 2 to enforce it. When a judgment has been entered by a court against a receiver in its official capacity, the enforcement action must be referred to the court that appointed the receiver. *Campbell*, 811 S.W.2d at 756; Tex. Civ. Prac. & Rem. Code §64.055.

## Conclusion

This Court should transfer venue of the lawsuit to Harris County. Probate Court No. 2. Defendant Legacy Trust Company, N.A., respectfully requests that this Court (1) grant the Motion to Transfer Venue in all respects; (2) transfer the above numbered and styled cause to Harris County Probate Court No. 2, and (3) grant Legacy such other and further relief as it may show itself justly entitled to receive.

[This space intentionally left blank.]

9

0050733

Respectfully submitted,

MACINTYRE MCCULLOCH STANFIELD
& YOUNG, LLP

By: _____

      **W. Cameron McCulloch**
      State Bar No. 00788930
      **Adri Graves**
      State Bar No. 24049999
      2900 Weslayan, Suite 150
      Houston, TX 77027
      (713) 572-2900
      (713) 572-2902 (FAX)
      Cameron.McCulloch@mmlawtexas.com
      Adri.Graves@mmlawtexas.com

Attorneys For Defendant Legacy Trust Company,
as Court-Appointed Receiver of the Article IV Trust
under the Last Will and Testament of Katherine
Pillot Lee Barnhart

10

0050733

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent to the following via United States Certified Mail, return receipt requested, via e-serve, and/or via facsimile on this the _____ day of May, 2016:

Mr. Marc S. Culp
Culp & Dyer, LLP
222 E. McKinney Street, Suite 210
Denton, Texas 76201
(940) 484-4436

Mr. Thomas A. Zabel
Zabel Freeman
1135 Heights Blvd.
Houston, Texas 77008
(713) 802-9114 (Fax)

Mr. Daniel J. Sheehan
Mr. John M. Phalan, Jr.
Mr. M. Patrick McShan
Daniel Sheehan & Associates, LLP
2501 North Harwood, Suite 1280
Dallas, Texas 75201
(214) 468-8803 (Fax)

Mr. John W. Porter
Ms. Keri Brown
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
(713) 229-1522 (Fax)

_____
W. Cameron McCulloch
Adri A. Graves

11

0050733

**EXHIBIT "1"**

DALLAS COU
4/20/2016 1:25:3
FELICIA PI
DISTRICT CL
David Hernande

CAUSE NO. DC-16-04570 _____

TOM THOMAS, DAN SHEEHAN and §
MARC CULP, individually, and §
as successors to the interests §
of Thomas, Sheehan & Culp, L.L.P., §
     Plaintiffs, §
 §
 §
v. §
 §
 §
 §    COURT OF
LEGACY TRUST COMPANY, N.A., §
 in its capacity as RECEIVER FOR THE §
ARTICLE IV TRUST created by §
the Last Will and Testament of Katherine Pillot §
Lee Barnhart, Deceased, §
     Defendant. §    DALLAS COUNTY, TEXAS

IN THE 162nd DISTRICT

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE COURT:

Plaintiffs, Tom Thomas, Dan Sheehan, and Marc Culp, individually, and as successors to the interests of Thomas, Sheehan & Culp, L.L.P. ("TSC") (collectively, "**Plaintiffs**"), through its undersigned counsel, brings this action primarily for the recovery of Plaintiffs' property in the possession of Defendant, Legacy Trust Company, N.A., in its capacity as Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, deceased (hereinafter the "**Receiver**," "**Legacy**," or "**Defendant**"), and in addition or in the alternative, for a money judgment against Defendant, and in support alleges:

### DISCOVERY CONTROL PLAN

1.    The amount in controversy exceeds the minimum jurisdictional limits of this Court. Plaintiffs intend to conduct discovery under Level 3 of T.R.C.P. 190.

## PARTIES AND SERVICE

2. Plaintiff, Tom Thomas, is an individual residing in Dallas, Dallas County, Texas.

3. Plaintiff, Dan Sheehan, is an individual residing in Dallas, Dallas County, Texas.

4. Plaintiff, Marc Culp, is an individual residing at Lake Kiowa, Cooke County, Texas.

5. At all times relevant to the matters placed at issue by this suit, Thomas, Sheehan and Culp each have been duly licensed attorneys authorized to practice law in the State of Texas.

6. At all times during the trial of the Lee v. Lee Litigation (defined below), Thomas, Sheehan, and Culp were the only three partners in TSC.

7. Defendant, Receiver is a National Trust Bank, which is a non-depository trust company operating under and subject to the control of the Office of the Comptroller of the Currency.

8. Receiver has its principal place of business in Houston, Harris County, Texas, and it may be served with process by serving its registered agent for service of process, CT Corporation System at 811 Dallas Avenue, Houston, Texas 77002.

## JURISDICTION AND VENUE

### Summary of Claim

9. By this action, Plaintiffs bring claims and request various relief against the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, deceased ("**Article IV Trust**") for failing to deliver money and other property in its possession collected from the judgment entered in the case styled Susan C. Lee, et al. v. Ronald E. Lee, et al., which was finally adjudicated in the Probate Court No. 2 of Harris County, Texas (the "**Probate Court**"), cause no. 137506-402. ("**Lee v. Lee Litigation**").

10. As specified more particularly below, this suit is brought against Defendant in the capacity noted, because it now serves as the Receiver for the Article IV Trust.

11.    Pursuant to the terms of that certain letter agreement dated March 30, 1995 (the "**Contingent Fee Agreement**" or "**CFA**"), six percent (6%) of the money and other property collected from the judgment entered in the Lee v. Lee Litigation was assigned to TSC and is now owned by Plaintiffs.

12.    Defendant has failed and refused to turn over that property to its true owners.

13.    Attached as **Exhibit "A"** is a true and correct copy of the Contingent Fee Agreement.

## Control of Article IV Trust

14.    From inception of the Article IV Trust through approximately February, 2002, Ronald Lee was trustee of the Article IV Trust.

15.    From and after approximately February, 2002 through June 18, 2015, Susan Lee served as trustee of the Article IV Trust.

16.    On June 16, 2015, Ronald Lee filed a motion with the Probate Court seeking to remove Susan Lee as trustee and to appoint a receiver for the Article IV Trust.

17.    On June 18, 2015, the judge of the Probate Court signed an order removing Susan Lee as trustee of the Article IV Trust and appointing Legacy as receiver for the Article IV Trust ("**June 18, 2015 Order**").

18.    Attached as **Exhibit "B"** is a true and correct copy of the June 18, 2015 Order.

19.    Pursuant to paragraph 3 of the June 18, 2015 Order, the Receiver was authorized and directed to conduct a variety of business on behalf of the Article IV Trust, including, but not limited to: (i) exercising all rights, powers and duties of the Trustee as authorized under the terms of the Article IV Trust or the Texas Trust Code; (ii) marshalling and taking custody of all trust assets; (iii) managing and directing all business and financial affairs; (iv) paying, compromising and settling all trust debts; and (v) prosecuting, defending or settling all legal proceedings.

## Summary of Article IV Trust Judgment

20.     On October 25, 1996, the Probate Court entered a multi million dollar monetary judgment against Ronald Lee in favor of the Article IV Trust.

21.     Pursuant to the terms of the CFA, TSC served as lead counsel for Plaintiffs through entry of a final judgment in the Probate Court.

22.     But for TSC's efforts, expertise and hard work the favorable Trial Court Judgment would not have been obtained.

23.     Attached as **Exhibit "C"** is a true and correct copy of the final judgment entered by the Probate Court. (**"Trial Court Judgment"**).

24.     TSC was the only law firm representing Plaintiffs during the trial of the Lee v. Lee Litigation and through entry of the Trial Court Judgment.

25.     Thomas, Sheehan and Culp also each served in various roles when providing legal representation through the lengthy appellate process that followed.

26.     Following completion of an appellate process that began in the Houston Court of Appeals, an appellate opinion and mandate was issued increasing the amount of the Trial Court Judgment. (**"Article IV Trust Judgment"**).

27.     Attached as **Exhibit "D"** is a true and correct copy of the Houston Court of Appeals opinion. (**"Appellate Opinion in Lee v. Lee"**).

28.     Attached as **Exhibit "E"** is a true and correct copy of the mandate issued in relation to that appellate opinion. (**"Appellate Mandate"**).

29.     At the time Legacy was appointed to serve as receiver for the Article IV Trust in 2015, the Article IV Trust Judgment was still outstanding.

## Overview of Assets Recovered on Article IV Trust Judgment

30. On January 25, 2016, Legacy filed an application seeking approval of the Probate Court to settle the Article IV Trust Judgment by Ronald Lee.

31. Attached as **Exhibit "F"** is a true and correct copy of Legacy's "Application to Approve Settlement Agreement" filed with the Probate Court. (**"Legacy's Application to Approve Settlement Agreement"**).

32. Following an evidentiary hearing, the Probate Court entered an order granting Legacy's Application to Approve Settlement Agreement.

33. Attached as **Exhibit "G"** is a true and correct copy of the order. (**"Order Granting Application to Approve Settlement Agreement"**).

34. Attached as Exhibit "A" to Legacy's Application to Approve Settlement Agreement is a copy of the settlement agreement approved by that order. (**"Legacy Settlement Agreement"**).

35. At pages 2, 3, paragraph 7, the Legacy Settlement Agreement recites that the Article IV Trust Judgment, "constitutes a debt owed to the Trust and an asset of the Article IV Trust."

36. At page 3, paragraph 8, the Legacy Settlement Agreement further recites that, "Mr. Lee has made payment for the benefit of the Article IV Trust on the Judgment, including a payment of $8 million in 2015." (**"$8 Million Cash Payment"**).

37. Additionally, under the terms of the Legacy Settlement Agreement, paragraphs 15, 16, and 19, Ronald Lee was obligated to deliver, among other things, a $4 million promissory note (**"$4 Million Promissory Note"**).

38. On information and belief, Ronald Lee has delivered and the Article IV Trust has accepted the $8 Million Cash Payment, the $4 Million Promissory Note, and other consideration recited in the Legacy Settlement Agreement in partial satisfaction of the Article IV Trust Judgment.

39. Despite Plaintiffs' assigned ownership interest in and to 6% of the recoveries under the Article IV Trust Judgment, the Article IV Trust has failed and refused to deliver to Plaintiffs their assigned portion of the consideration so received and accepted in payment of the Article IV Trust Judgment.

**Appeal from Probate Court Order Approving Legacy Settlement Agreement**

40. Following entry of the Order Granting Application to Approve Settlement Agreement, Legacy, on or about March 28, 2016, filed a document in the Probate Court entitled, "Satisfaction of Judgment."

41. In that document, Legacy represents that the Article IV Judgment "has been fully paid, satisfied and discharged" based upon the terms of the Legacy Settlement Agreement.

42. Prior to Legacy's filing of the Satisfaction of Judgment, Susan Lee, on March 22, 2016, filed a notice of appeal seeking appellate review of the Probate Court's Order approving the Legacy Settlement Agreement ("**Susan Lee Appeal**")

43. As of the filing of this suit, the Susan Lee Appeal remains pending.

44. On information and belief, Plaintiffs anticipate that Susan Lee will contend in her appeal, among other things, that the Legacy Settlement Agreement did not fully pay and satisfy the Article IV Trust Judgment.

45. This lawsuit only seeks relief as to recoveries received by the Article IV Trust through the time of the trial of this case, expressly reserving the right to seek further enforcement of the CFA if subsequent recoveries upon the Article IV Trust Judgment are received including, but not limited to, any recoveries subsequently obtained as a result of the Susan Lee Appeal.

## Jurisdictional Basis for Suit

46. This Court has subject matter jurisdiction over this case, because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

## Basis for Venue in Dallas County

47. Pursuant to section 64.052(b) of the Civil Practices & Remedies Code ("CPRC"), venue over this case is properly vested in Dallas County, Texas, because Thomas and Sheehan reside in Dallas County, Texas and this is a suit against a receiver holding property belonging to Thomas and Sheehan.

48. Pursuant to CPRC section 15.002(a)(1), venue over this case also is properly vested in Dallas County, Texas, because the contractual relationship placed at issue by this suit was formed and performed in material respects in Dallas County, Texas, and more generally, a substantial part of the events giving rise to the claims raised by this suit occurred in Dallas County, Texas. More specifically, the Contingent Fee Agreement was negotiated by means of telephone discussions, telefax transmittals and mailings to and from Dallas, Texas, the CFA was signed by TSC in Dallas, Texas, all billings for work performed under the CFA originated from Dallas, Texas, all payments for such invoiced work were received in Dallas, Texas, much of the communication related to the performance of the CFA emanated from Dallas, Texas, and a substantial amount of the worked performed under the terms of the CFA was performed in Dallas, Texas.

49. Pursuant to CPRC section 15.003(a), venue over this case also is properly vested in Dallas County, Texas, because joinder of one or more of the Plaintiffs is proper under the Texas Rules of Civil Procedure ("TRCP"), venue as to each Plaintiff in Dallas County does not unfairly prejudice another party to the suit, there is an essential need to have each Plaintiff's claim tried in

Dallas County, and Dallas County is a fair and convenient venue for each Plaintiff and all persons against whom this suit is brought.

FACTUAL ALLEGATIONS SUPPORTING CLAIMS

**The Contingent Fee Agreement**

50. In the spring of 1995, TSC took over lead counsel responsibility for handling litigation brought by a sister, Susan Lee, against her brother, Ronald Lee.

51. The dispute arose over Ronald Lee's administration of an estate of their grandmother, Katherine Pillot Lee Barnhart ("**Katherine Barnhart**"), and certain related trusts, including the Article IV Trust.

52. At the time of suit filing, Ronald Lee was the executor of the estate and the trustee of the Article IV Trust.

53. Ronald Lee and Susan Lee were the only beneficiaries under the terms of the Article IV Trust.

54. Before TSC accepted the engagement, the Contingent Fee Agreement was entered into by and between TSC, Susan Lee, her daughter, Susan Gibson, and Donna Kline.

55. Susan Gibson was a beneficiary of another trust established under the terms of Katherine Barnhart's will.

56. Donna Kline was a duly licensed attorney authorized to practice law in the State of Texas, who had been involved in the representation of Susan Lee and Susan Gibson in the Lee v. Lee Litigation before TSC was retained.

57. Sheehan, Kline, Susan Lee, and Susan Gibson each signed the Contingent Fee Agreement on or about March 30, 1995.

58. Pursuant to the terms of the CFA, TSC was to be compensated for handling the Lee v. Lee Litigation through payment of fees based upon reduced regular hourly rates plus 6% of all recoveries obtained.

59. TSC was fully paid all hourly fees charged under the terms of the CFA.

60. The contingent fee agreed to be paid expressly included any recovery obtained on behalf of the Article IV Trust; however, neither Susan Lee nor Susan Gibson would be personally liable for any such fee related to any such recovery obtained for such trust.

61. Instead, both Susan Lee and Susan Gibson agreed to support TSC's right to its contingent fee interest in any recovery obtained on behalf of the Article IV Trust.

62. Susan Lee and Susan Gibson support the claims brought by this suit.

**Outcome of the Lee v. Lee Litigation**

63. Beginning in March 1995 through the end of that year, TSC expended hundreds of hours in preparation diligently prosecuting the case and preparing it for trial, including the conduct of a jury trial for several days in the fall of 1995 before a mistrial was granted.

64. On January 3, 1996, a second jury trial was started in the Lee v. Lee Litigation.

65. Following an aggressive prosecution of the case in a trial lasting well over a week, a favorable jury verdict was obtained on behalf of Susan Lee, Susan Gibson and the Article IV Trust.

66. Following nine more months of briefing and argument addressing various post trial motions, the Trial Court Judgment was entered.

67. Under the terms of the Trial Court Judgment, the Article IV Trust was granted a monetary judgment against Ronald Lee for:

    a. $840,002.00 for Ronald Lee's breach of fiduciary duty related to the Knollwood Development, the River Bend Farm, and the Cap Rock Ranch;

b. $659,506.50 for payment to Ronald Lee of an unreasonable executor fee;

c. $919,702.12 for prejudgment interest related to the payment of the unreasonable executor fee, plus accruing per diem interest at the rate of $180.69;

d. $163,550.00 for unreasonable office expenses; and

e. $157,969.90 for prejudgment interest related to the unreasonable office expenses, plus accruing per diem interest at the rate of 44.81.

68. In total, the Article IV Trust was granted a principal monetary judgment recovery against Ronnie Lee in the amount of $1,663,058.50, plus prejudgment interest at 10% per annum, bringing the total judgment amount against Ronald Lee to $2,758,770.52. ("**Principal Trial Court Judgment Amount**").

69. The Trial Court Judgment also provided for post judgment interest on the Principal Trial Court Judgment Amount at the rate of 10% per annum, compounded annually.

70. The Trial Court Judgment also expressly denied requested relief to remove Ronald Lee as Trustee of the Article IV Trust.

71. But for TSC's diligent and expert handling of the Lee v. Lee Litigation, the Article IV Trust would not have obtained the large monetary sum awarded in the Trial Court Judgment.

72. All parties appealed from the Trial Court Judgment.

73. On May 17, 2001, the Appellate Opinion in Lee v. Lee was issued and reported at 47 S.W.3d 767.

74. After the Texas Supreme Court refused petitions for review, the Houston Court of Appeals issued the Appellate Mandate.

75. The appellate process lasted from October, 1996 through issuance of the Appellate Mandate in February, 2002, a total of approximately 5 years and 4 months.

76.     Thomas, Sheehan and Culp provided legal representation in this case throughout the appellate process.

77.     Pursuant to the Appellate Mandate, the Article IV Trust's judgment against Ronald Lee was increased materially.

78.     Under the terms of the Article IV Trust's judgment against Ronald Lee as modified by the Appellate Mandate, the Article IV Trust was granted an additional principal monetary judgment against Ronald Lee in the amount of $1,538,843.50 for claims related to the payment of an excessive executor's fee.

79.     The Appellate Mandate also modified the Trial Court Judgment by: (i) rendering an additional principal monetary judgment against Ronald Lee in the amount of $1,500,000.00 based upon the conclusion that the Article IV Trust should not have been directed to reimburse Ronald Lee for attorney's fees incurred when defending the Lee v. Lee Litigation; (ii) removing Ronald Lee as trustee of the Article IV Trust; (iii) revising the calculation of prejudgment interest awards; and (iv) directing Ronald Lee to pay all costs of the appeal.

80.     In sum and as most material to this case, the Appellate Mandate reformed the Trial Court Judgment to increase the principal amount of the monetary judgment awarded to the Article IV Trust against Ronald Lee from $1,663,058.50 to $4,701,902.00, it revised calculations of prejudgment interest, and it confirmed the award of post judgment interest on all of the foregoing sums at 10% per annum, compounded annually. ("**Final Monetary Sum Awarded the Article IV Trust**").

81.     But for the diligent and expert handling of the appeal by Thomas, Sheehan and Culp, the Article IV Trust would not have obtained such a favorable outcome in the appeal.

## The Donna Kline Litigation

82. Before the Lee v. Lee Litigation proceeded to trial, Susan Gibson sent a letter to Donna Kline demanding that Kline withdraw from her representation in the Lee v. Lee Litigation.

83. Kline honored the demand and withdrew from the representation in the fall of 1995.

84. Kline subsequently intervened in the Lee v. Lee Litigation to recover unpaid legal fees arising in connection with work performed on two separate lawsuits, including the Lee v. Lee Litigation. ("**Kline Litigation**").

85. The bulk of Kline's claim pertained to representation provided in the Lee v. Lee Litigation under the terms of the Contingent Fee Agreement.

86. On June 27, 1996, the Probate Court signed an order severing the Kline Litigation from the Lee v. Lee Litigation.

87. In the Severance Order, the Probate Court directed the Kline Litigation to proceed forward under Cause No. 137,506-403.

88. The Kline Litigation proceeded to a jury trial beginning on July 15, 1997.

89. That trial produced a jury verdict favoring Kline.

90. Attached as **Exhibit "H"** is a true and correct copy of the jury verdict rendered in the Kline Litigation. ("**Kline Jury Verdict**").

91. Following receipt of the Kline Jury Verdict, the Probate Court entered judgment in favor of Donna Kline.

92. Attached as **Exhibit "I"** is a true and correct copy of the judgment rendered by the Probate Court in favor of Donna Kline and against Susan Lee, individually and as trustee for Susan Gibson, and Susan Gibson, individually. ("**Kline Judgment**").

93. Among other things, the Kline Judgment awarded Donna Kline a monetary recovery of $114,207.21 for unpaid hourly fees plus an additional $132,500.00 for attorney's fees incurred in prosecuting the case.

94. The Kline Judgment also granted Donna Kline declaratory relief, as follows: "Based upon the Jury's answer to Question 2, the Court makes declaratory judgment that Donna C. Kline has a good, valid and subsisting interest in any recovery by Susan Camille Lee, individually and as trustee for Susan C. Gibson, and Susan C. Gibson individually, pursuant to her contingent fee contract of March 30, 1995."

95. The reference to the contingent fee contract of March 30, 1995 is the same Contingent Fee Agreement placed at issue in this case.

96. Susan Lee and Susan Gibson appealed the Kline Judgment to the Houston Court of Appeals.

97. On January 13, 2000, the Houston Court of Appeals issued its final decision on rehearing.

98. Attached as **Exhibit "J"** is a true and correct copy of the Houston Court of Appeals Decision in the Kline Litigation. (**"Appellate Opinion in Kline Litigation"**).

99. As material to this case, the Appellate Opinion in the Kline Litigation made the following rulings related to the Contingent Fee Agreement:

a. In addition to agreements to pay both Kline and TSC at hourly rates specified, "Defendants also expressly agreed to pay a 10% contingency fee on any 'recovery.'" (Appellate Opinion in Kline Litigation, at *1);

b. "It was further agreed that 40% of the 10% contingency fee would be paid to Kline and that the remaining 60% would be paid to Thomas, Sheehan & Culp." (*Id.*);

c. Based upon the jury verdict, the Probate Court in its judgment, "found that Kline possesses 'a good, valid and subsisting interest in any recovery by [Defendants] pursuant to her contingent fee contract . . . .'" (*Id.* at *2);

d. In response to contentions that the Contingent Fee Agreement was unfair and invalid as to Kline, the Houston Court of Appeals reached the following factual conclusions – (i) the CFA provided for the payment of hourly fees plus "'*ten percent (10%) of all Recovery, if any.'* (emphasis added)."; (ii) the CFA, "further provided that '[c]ontingency fees will be divided between us, sixty percent (60%) to Thomas, Sheehan & Culp, L.L.P., *and forty percent (40%) to Donna C. Kline.'* (emphasis added)."; and (iii) "The record shows that the agreement [CFA] was executed by both Defendants." (*Id.*);

e. "The record in this case is replete with competent evidence to rebut the presumption of unfairness concerning the contingent fee agreement [CFA]." (*Id.* at *3);

f. "Indeed, the evidence in the record supports the inference that the agreement was entered into freely and voluntarily by Defendants based upon their full understanding of the affect of the contingent fee agreement [CFA]." (*Id.*);

g. "Defendants assert that the trial court erred in entering its declaratory judgment which decreed that Kline possesses a 'valid and subsisting' contingent interest in

any recovery obtained by Defendants in the underlying estate case, pursuant to the contingent fee agreement of March 30, 1995 [CFA]." (*Id.* at 7);

h. "The trial court's declaratory judgment merely decrees that the parties' contingent fee contract is valid." (*Id.*);

i. "'A trial court may construe a contract in a declaratory judgment suit either before or after a breach occurs.'" (*Id.*);

j. "As to the effect of any potential dispute between the parties in this case, a `declaratory judgment may be entered if it serves a useful purpose in resolving a controversy between the parties, *even if actual or potential disputes remain.*' .... [citations omitted](emphasis added)." (*Id.* at 8);

k. "We note that the trial court did not enter a monetary award to Kline based upon the contingent fee contract because the amount of Defendants' recovery in the underlying estate has not been finally adjudicated. .... [footnote omitted noting that Lee v. Lee Litigation is currently on appeal]." (*Id.*); and

l. "We hold, therefore, that the trial court did not err in granting a declaratory judgment, which decreed that Kline's contingent fee interest in Defendants' monetary recovery is valid." (*Id.*).

100. Following issuance of the Appellate Opinion in the Kline Litigation, the Kline Judgment became final.

101. On information and belief, the monetary judgment awarded to Kline was paid in full.

## Monetary Recoveries Received and Accepted by the Article IV Trust

102. On information and belief based upon evidence currently available to Plaintiffs, Ronald Lee has made or is making three separate sets of monetary payments toward satisfaction of the Final Monetary Sum Awarded the Article IV Trust.

103. Plaintiffs only learned of the first and second payments during the course of proceedings related to Legacy's Application to Approve Settlement Agreement in 2016.

104. As to the first monetary payment, Legacy presented evidence during hearings on Legacy's application that Ronald Lee paid the Article IV Trust the sum of $2,816,213.60 on January 9, 1997. ("**January, 1997 Payment**").

105. Sheehan first learned of this payment in February, 2016, and Thomas and Culp only learned of that payment about six weeks later.

106. The January, 1997 Payment was made roughly 2 ½ months after entry of the Trial Court Judgment in October of 1996.

107. At the time of the January, 1997 Payment, Ronald Lee was the trustee of the Article IV Trust.

108. Susan Lee did not become the trustee of the Article IV Trust until roughly 5 years later when the Appellate Mandate was issued.

109. As to the second monetary payment, Legacy attached to its Application to Approve Settlement Agreement a copy of the proposed settlement agreement between Receiver and Ronald Lee.

110. At page 3, paragraph 8 of the recitals, the Legacy Settlement Agreement states, "Mr. Lee has made payment for the benefit of the Article IV Trust on the Judgment [Final Monetary Sum

Awarded the Article IV Trust], including a payment of $8,000,000.00 in 2015." ("**$8 Million Payment**").

111.    This is the first occasion that Sheehan learned of this payment, and Thomas and Culp only learned of that payment roughly one month before filing this litigation.

112.    On information and belief, the third and final series of monetary payments are those currently being made by Ronald Lee to the Article IV Trust pursuant to the terms of the $4 Million Promissory Note.

113.    Pursuant to the assignment in the CFA, Plaintiffs now own 6% of all such monies currently in the hands of the Receiver.

**Non Monetary Recoveries Received and Accepted by the Article IV Trust**

114.    Above and beyond the additional payments still to be made to the Article IV Trust by Ronald Lee pursuant to the terms of the $4 Million Note, the Legacy Settlement Agreement reflects two other valuable, non monetary considerations received by the Article IV Trust.

115.    First, at pages 5 and 6, paragraph 19 of the Legacy Settlement Agreement, Ronald Lee releases specified alleged claims that Ronald Lee has against the Article IV Trust.

116.    Six percent of the value of these releases constitutes part of the recovery assigned to and now owned by Plaintiffs under the terms of the CFA. ("**Release Value**").

117.    Second, at page 4, paragraph 15, Lee is obligated to execute a deed conveying his interest in the River Bend Farm to the Article IV Trust. ("**River Bend Property**").

118.    Six percent of the River Bend Property constitutes part of the recovery assigned to and now owned by Plaintiffs under the terms of the CFA.

## CLAIMS

### Breach of Contract

119. Plaintiffs incorporate Paragraphs 1 - 118, as if set forth fully here.

120. There is a valid, enforceable contract by and between TSC, Susan Lee, Susan Gibson and the Article IV Trust to provide legal services under the terms of the Contingent Fee Agreement.

121. In addition or in the alternative to the above allegations, the Article IV Trust later adopted and accepted the CFA when Susan Lee was acting as the trustee for the Article IV Trust.

122. In addition or in the alternative to the above allegations, the Article IV Trust ratified the CFA before and/or after the time that Susan Lee was acting as the trustee for the Article IV Trust.

123. More specifically, Susan Lee entered into the CFA on behalf of the Article IV Trust, with and/or without authority to do so, and the Article IV Trust approved the CFA after acquiring full knowledge of the terms and provisions of the CFA with the intention of giving validity to Susan Lee's agreement to bind the Article IV Trust to the terms of the CFA.

124. In addition or in the alternative, the Article IV Trust ratified and is now bound to honor the CFA, because it received and accepted benefits generated from the performance of the CFA with full knowledge of TSC's assigned interest and contingent fee rights to monetary and other recoveries obtained as a result of work performed by TSC under the terms of the CFA.

125. Under the terms of the CFA, TSC is the owner of 6% of every form of consideration received and accepted in full, or alternatively, partial satisfaction of the Article IV Trust Judgment.

126. Plaintiffs are the successors in interest of TSC and they are the proper parties now entitled to enforce the terms of the CFA.

127. TSC fully and/or substantially performed, tendered performance or was excused from continued performance under the terms of the CFA.

128. In accepting recoveries under the terms of the CFA without paying Plaintiffs their 6% assigned, contingent fee interest, the Article IV Trust has dishonored the terms of the CFA and is now wrongfully withholding Plaintiffs' right to full use and enjoyment of property Plaintiffs own.

129. More specifically, Plaintiffs seek an order directing the Receiver to turn over 6% of all cash sums accepted in payment of the Article IV Trust Judgment, including, but not necessarily limited to, 6% of the January, 1997 Payment and the $8 Million Payment, totaling $648,972.81 plus interest at the highest rate allowed by law from date of receipt of each such payment until delivery of the wrongfully possessed funds.

130. Additionally, Plaintiffs seek an order directing the Receiver to turn over 6% of all cash sums accepted in payment of the $4 Million Promissory Note plus interest at the highest rate allowed by law from date of receipt of each payment until delivery of the wrongfully possessed funds.

131. In the alternative, Plaintiffs seek the recovery of a monetary judgment against the Article IV Trust for the damage suffered by reason of its breach of the CFA equal to 6% of the January, 1997 Payment, the $8 Million Payment and the payments received on the $4 Million Promissory Note plus interest at the highest rate allowed by law from date of receipt of each payment until delivery of the wrongfully possessed funds.

132. Additionally, Plaintiffs seek an order directing the Receiver to turn over 6% ownership of the $4 Million Note, or alternatively, a monetary judgment against the Article IV Trust for damages suffered by reason of the Article IV Trust's breach of the CFA equal to 6% of the value of the $4 Million Note.

133. Additionally, Plaintiffs seek an order directing the Receiver to turn over a 6% interest in the River Bend Farm, or alternatively, a monetary judgment against the Article IV Trust for

damages suffered by reason of the Article IV Trust's breach of the CFA equal to 6% of the value of the River Bend Farm.

134. Additionally, Plaintiffs seek a monetary judgment against the Article IV Trust for damages suffered by reason of the Article IV Trust's breach of the CFA equal to 6% of the Release Value.

135. Plaintiffs also seek and are entitled to recover all reasonable and necessary attorney's fees arising from work performed to prosecute this suit, including any and all appeals, in an amount to be determined at trial.

136. Plaintiffs further seek and are entitled to the recovery of pre-judgment interest at the highest rate authorized by law.

137. Plaintiffs further seek and are entitled to the recovery of post-judgment interest on all of the monetary awards obtained from and after entry of this Court's final judgment until paid in full at the highest rates authorized by law.

138. All conditions precedent to recovering the relief sought herein have occurred, will occur or have been waived, including, but not limited to, the giving of all proper notices and demands.

139. Based upon the doctrines of claim and issue preclusion, Defendant is barred from denying any of the facts and/or claims established in the Kline Litigation, including, but not limited to, those expressly recited in paragraph 99 above.

## PRAYER

140. WHEREFORE, Plaintiffs request that, on final trial, they have and recover the relief sought in Claim 1, whether alleged primary or in the alternative, pre-judgment and post-judgment interest on all monetary awards to the extent legally permitted at the highest rate allowed by law, and

all other and further relief, legal or equitable, general or special, to which Plaintiffs may show themselves to be justly entitled, including, but not limited to, recovery of all court costs and any other recoverable costs of this suit.

141. Plaintiffs demand trial by jury. Plaintiffs will remit the necessary fees and notices accordingly.

Respectfully submitted,

CULP & DYER, L.L.P.
222 E. McKinney Street, Suite 210
Denton, Texas 76201
Telephone: (940) 484-2236
Telecopier: (940) 484-4436


By: /s/ Marc S. Culp
Marc S. Culp
State Bar No. 05212700
mculp@cdhllp.com

ATTORNEY FOR PLAINTIFFS

# EXHIBIT "A"

THOMAS, SHEEHAN & CULP, L.L.P.

ATTORNEYS AND COUNSELORS
2300 THANKSGIVING TOWER
1601 ELM STREET
DALLAS, TEXAS 75201-4768
(214) 963-0000

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

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

FAX (214) 963-1500
FAX (214) 963-4048

TOM THOMAS
DANIEL J. SHEEHAN, JR. *
MARC E. CULP **
DENISE A. SMETTKE
DEBRA YAVRICK

OF COUNSEL:
FRED KOLODEY

March 30, 1995

TEXAS BOARD OF LEGAL SPECIALIZATION
* BOARD CERTIFIED - CIVIL TRIAL LAW
** BOARD CERTIFIED - CIVIL APPELLATE LAW

Ms. Susan C. Lee
11 Pine Hill Lane
Houston, TX 77019

Ms. Susan C. Gibson
c/o Pine Manor College
P.O. Box 131
Chestnut Hill, MA 02167

Re:   No. 137,506-402
      Susan C. Lee, et al. v. Ronald E. Lee, et al.
      In the Probate Court No. 2
      Harris County, Texas

Dear Ms. Lee and Ms. Gibson:

This letter is to set forth the terms upon which we and Donna C. Kline have agreed to represent Susan C. Lee and Susan C. Gibson's interests in litigation against Ronald E. Lee, Jr., Steven Cochran and various other related entities and persons.

We will investigate your claims, file suit on your behalf, prepare the case, try the case, appeal as necessary, and take such other action as is necessary to protect and pursue your interests. It is our intent to support the Will of Katherine Pillot Lee Barnhart.

Our fee will be the sum of: (a) reasonable hourly rates including Donna Kline at the rate of $225 per hour and members of Thomas, Sheehan & Culp, L.L.P. who work on the case with Tom Thomas' rate at $300 per hour and Dan Sheehan's rate at $250 per hour, plus (b) ten percent (10%) of all Recovery, if any. The term "Recovery" means all value received on your behalf, directly or indirectly, whether by settlement, trial, or otherwise. It is possible that you could recover assets other than cash, and in that event, our ten percent (10%) fee shall be payable in kind. We will receive cash only to the extent that our percentage applies to cash which you recover. By execution below, you hereby sell, transfer and assign ten percent (10%) of all of such claims to Thomas, Sheehan & Culp, L.L.P. and Donna C. Kline as part of this agreement.

EXHIBIT "A"

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/5/2016
Stan Stanart, County Clerk
Harris County, Texas



_____ Deputy

Mr. Susan C. Lee
Mr. Susan C. Gibson
March 30, 1995
Page 2



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

The Recovery may include the following:

(a) Damages for injuries suffered personally by either of you, such as amounts which should have been distributed under the Will of Katherine Pillot Lee Barnhart (the "Will") or related trusts or estates (the "Trusts") (the "Clients' Recovery") and lost income therefrom;

(b) Damages for injuries suffered by the Estate of Katherine Pillot Lee Barnhart (the "Estate") or the Trusts, such as damages for mismanagement of the Estate's assets or for excess fees (the "Estate/Trust's Recovery"); and

(c) Interest on the above amounts.

The Recovery shall not include amounts which are merely reallocated between the Estate and Trusts or between the Trusts themselves.

The contingent part of the fee shall be computed separately for the Clients' Recovery and the Estate/Trust's Recovery, and you shall only be personally liable for contingent fees computed on the Clients' Recovery. We will look to the Estate or Trust, respectively, for payment of any contingent fee owing on the Estate or Trust's Recovery, and such contingent fee interest shall not be deducted from Clients' Recovery. You agree to support our request for payment thereof in all respects.

If attorneys' fees are awarded by the court, whether under Section 149C of the Texas Probate Code, Section 114.064 of the Texas Property Code, or other common law or statutory entitlement, such fees shall not be included in the computation of Recovery.

Contingency fees will be divided between us, sixty percent (60%) to Thomas, Sheehan & Culp, L.L.P., and forty percent (40%) to Donna C. Kline.

We bill monthly for hourly charges and expenses. In order to facilitate our prompt billing and your prompt payment, we require that you deposit and then maintain a balance in our trust account of $35,000, against which we will bill and render our monthly statements. In addition, you will be responsible for the payment of all out-of-pocket expenses and will, as requested by us, pay such charges direct so that we will have no responsibility or obligation to advance out-of-pocket expenses in connection with the litigation, although we may do so from time to time and bill you for those expenses.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/5/2016
**Stan Stanart, County Clerk**
Harris County, Texas



_____Deputy

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

Daniel Sheehan or Tom Thomas, at our election, shall be lead counsel for Susan Lee at trial and Donna Kline shall be lead counsel for Susan Gibson. In terms of day-to-day management of the case, counsel shall be co-counsel in the litigation. The firm of Thomas, Sheehan & Culp, L.L.P., shall have primary responsibility for preparation of the case for trial, but the attorneys shall advise and consult with each other.

We will not agree to a settlement of the case without your consent. Additionally, we will not make any material agreements without your consent.

You may terminate this agreement at any time, and in the event you choose to do so, you shall be responsible for hourly charges and expenses only through the time of such termination; however, the assignment to us of ten percent (10%) of the claims shall survive such termination to the extent allowed by law.

We may voluntarily terminate this agreement at any time but if we do so and withdraw from your representation prior to obtaining a Recovery, we shall not be entitled to 10% of any Recovery later received. We will be entitled to payment for all hourly fees and expenses incurred as of the date of termination.

If this letter accurately sets forth our agreement, please sign the original and return it to us.

Sincerely,

Daniel J. Sheehan, Jr.
Thomas, Sheehan & Culp, L.L.P.

Donna C. Kline
Donna C. Kline, Attorney at Law

DJS/mbs

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/5/2016
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

Mr. Susan C. Lee
Mr. Susan C. Gibson
March 30, 1995
Page 4

$\overline{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}$

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

AGREED:

_Susan Camille Lee_
Susan Camille Lee

_____
Susan C. Gibson

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 4/5/2016
**Stan Stanart, County Clerk**
Harris County, Texas



_____ Deputy

# EXHIBIT "B"

Estate of Katherine Pillot Lee §
Barnhart, Deceased §
§
§
Ronald E. Lee, Jr., §
§
    Plaintiff, §
§
v. §
§
Susan Camille Lee, individually, and §
as Trustee of the Article IV Trust §
created by the last will and testament §
of Katherine Pillot Lee Barnhart, §
Deceased, and as Executor of the §
Estate of Katherine Pillot Lee §
Barnhart, Deceased, §
§
    Defendant. §

PROBATE COURT #
In the Probate Court

No.

Harris County, Texas



**Order Removing Trustee and Appointing Receiver**

On this date, the Court considered Ronald E. Lee, Jr.'s ("Mr. Lee") Motion to Remove Trustee Pursuant to Tex. Trust Code §113.082, and to Appoint Receiver Pursuant to Tex. Trust Code §114.008 (the "Motion"). The Court, having reviewed the evidence presented, finds as follows:

1.    The Court has jurisdiction over this case and venue is proper in this County.

2.    All necessary parties interested in this matter have appeared.

3.    The Trust was created under Article IV of the Last Will and Testament of Katherine Pillot Lee Barnhart, which was admitted to probate in this Court under Cause Number 137,506 ("the Will").

4906135v1

4. Since 2001, Susan Camille Lee ("Ms. Lee") has served as the sole trustee of the Trust.

5. Section 113.082 of the Texas Trust Code provides that "a court may remove a trustee" if the trustee "violated or attempted to violate the terms of the trust," the trustee "fail[ed] to make an accounting required by law or the terms of the trust," or in instances where the court finds "other cause for removal." Tex. Trust Code §113.082.

6. Section 114.008 of the Texas Trust Code provides that "[a] court may appoint a receiver to take possession of trust property and administer the trust to remedy a breach of trust that has occurred or might occur." The Court is also authorized to appoint a receiver "in any case in which a receiver may be appointed under the rules of equity." Tex. Civ. Prac. & Rem. Code §64.001(a)(6).

7. Mr. Lee, as a current income beneficiary of the Trust, is an interested person.

8. Mr. Lee made a proper demand on Ms. Lee for an accounting under Tex. Trust Code §113.151 on July 3, 2015. Despite this demand, Ms. Lee has provided no accounting, in breach of the Will and the Texas Trust Code.

9. There is the risk of imminent further harm to the Trust by reason of the failure of Ms. Lee to manage the assets and liabilities of the Trust or provide an accounting for them, exemplified by the failure of Ms. Lee as Trustee timely to pay the real estate taxes on Trust property, the failure to protect the interests of the Trust in property that has been the subject of condemnation proceedings, the absence of any distributions of a portion of the Trust's income to Mr. Lee and Katherine Lee Stacy over a period of approximately 14 years despite the mandatory distribution provisions of the Will creating the Trust, and the failure to provide the

- 2 -

requested accounting for the Trust under Tex. Trust Code §113.151. Such actions and inactions by Ms. Lee constitute a breach of fiduciary duty, violate the terms of the Trust, and violate the Texas Trust Code.

10. The Court's removal of Ms. Lee as Trustee is necessary for the continued administration and management of the Trust and to avoid the threat of imminent further harm to the Trust.

11. Ms. Lee's breaches of fiduciary duty, her violation of the terms of the Trust, and her violation of the Texas Trust Code justify removal under Texas Trust Code §113.082(a)(1, 3, and 4), and dictate that it is fair, reasonable, and equitable for a Receiver to be appointed to act on behalf of the Trust.

12. Legacy Trust Company, N.A. ("Legacy") is qualified to serve as and should be appointed as Receiver of the Trust.

13. Mr. Lee is entitled to recover his reasonable attorneys' fees incurred in connection with the Motion under Texas Trust Code §114.064 from the Trust.

It is therefore ordered that:

1. Ms. Lee is removed as Trustee pursuant to Tex. Trust Code §113.082.

2. Legacy is hereby appointed, pursuant to Tex. Trust Code §114.008, as Receiver of the Trust, effective immediately and continuing until further Order of this Court.

3. The Receiver is authorized and directed to:

a. Exercise all rights, powers and duties of the Trustee of the Trust created under Article IV of the Will, and all powers granted to trustees under the Texas Trust Code;



- 3 -

4986135v1

b. Marshal and take custody, control, and possession of all assets of the Trust, wherever situated, including the income and profit therefrom, to insure such assets against hazards and risks, and to attend to the maintenance of such assets;

c. Manage and direct the business and financial affairs of the Trust and any asset or entity owned or controlled by the Trust;

d. Retain or remove, as the Receiver deems necessary or advisable, any officer, director, independent contractor, employee, or agent of the Trust (including retained professionals);

e. Obtain, by presentation of this Order, all records pertaining to the assets, liabilities, income, and expenses pertaining to the Trust belonging to the Trustee of the Trust from Ms. Lee or wherever they may be found;

f. Collect all income from Trust property held by Ms. Lee as Trustee or otherwise;

g. Make such ordinary and necessary transfers, payments, distributions, and disbursements as the Receiver deems advisable or proper for the maintenance and preservation of Trust assets or compliance with the obligations of the Trustee for the Trust;

h. Pay, compromise, or settle all debts of the Trustee pertaining to Trust property, including but not limited to taxes, penalties, and interest owed by the Trustee with respect to Trust property;

i. Collect, compromise, or settle all debts owed to the Trust;

- 4 -

4986135v1



j. Pay the reasonable attorneys' fees incurred by Mr. Lee in connection with the Motion and the proceedings thereon;

k. Employ attorneys, accountants, investigators or other appropriate agents to assist in the identification of Trust assets and the collection of debts owed to the Trust;

l. Prosecute, defend, and/or settle all legal proceedings (including lawsuits and arbitrations) brought by or against the Trustee of the Trust, including but not limited to lawsuits for the condemnation of real property in which the Trust has an interest, *HISD v. Susan Camille Lee, Executor/Trustee of the Estate of Katherine Pillot Lee Barnhart, et al*, No. 1038351, Harris County Court at Law No. 3, and take all steps necessary or appropriate for the prosecution, defense, or settlement of such legal proceedings, including the employment of counsel, expert witnesses, and consultants;

m. Institute such legal proceedings as the Receiver deems necessary or advisable to obtain constructive or actual possession of assets of the Trust or to recover damages suffered by the Trust; provided however, that the Receiver shall have discretion not to pursue litigation against Ms. Lee that is undertaken by beneficiaries of the Trust for the benefit of the Trust;

n. Employ appraisers to appraise the value of real property of the Trust; and

- 5 -



4986135v1

o. Take any and all actions reasonably necessary and appropriate to exercise the powers, duties, and responsibilities set forth herein.

4. It is further ordered that the Receiver:

a. Shall, within sixty days of this Order, provide an inventory of all Trust property that the Receiver has identified to the beneficiaries of the Trust. If the Receiver subsequently identifies or comes into possession of additional property, then it shall provide a supplemental inventory as soon as practical; and

b. Shall have the general right to reimbursement from the property of the Trust that a trustee has under Article IV of the Will and under §114.063 of the Texas Trust Code; and shall be compensated for its services at an annual fee of 35 basis points on the fair market value of Trust assets, billed monthly, plus an hourly fee of $90.00-$250.00 (depending on personnel involved) for work conducted in the identification and tracing of assets, and the determination of amounts due to or due from beneficiaries.

5. It is further ordered:

a. Receiver, its officers, directors and employees shall have the same rights to exoneration and reimbursement provided to a Trustee of the Trust created under Article IV of the Will and §§114.062-63 of the Texas Trust Code.

b. Receiver shall have no liability for any breach of trust committed by Ms. Lee unless Receiver becomes aware of the breach of trust

- 6 -



4986135v1

and (a) improperly permits it to continue thereafter; or (b) fails to make a reasonable effort to compel Ms. Lee to deliver property of the Trust; and

Receiver shall have no liability for the loss or devaluing of property of the Trust that occurs (1) prior to the date this Order is signed by the Court, or (2) prior to the Receiver having actual notice of the existence of the property as Trust property and the ability to exercise control over that property, whichever is later.

6. It is further ordered that Ms. Lee shall:

a. Within seven days of the date of this Order, provide copies of records in her possession, custody, or control sufficient to identify all real and personal property owned by the Trust or by Ms. Lee as Trustee of the Trust at any time while she served as Trustee of the Trust to the Receiver;

b. Within seven days of the date of this Order, provide records sufficient to identify all distributions and expenditures of Trust funds and assets during the time she served as Trustee of the Trust to the Receiver;

c. Within seven days of the date of this Order, provide all financial institutions and other third parties in the possession of assets or records of the Trust or Ms. Lee as Trustee with a copy of this Order and provide written instructions for them to cooperate with

-7-

4986135V1

the Receiver and provide non-privileged information requested by the Receiver directly to the Receiver;

d. Within seven days of the date of this Order, provide written instructions to all attorneys and accountants employed by her in her capacity as Trustee of the Trust to provide non-privileged information requested by the Receiver regarding these matters;

e. Provide copies of the instructions described in subparagraph (c) and (d) above to the Receiver at the same time they are provided to the financial institutions, other third parties, attorneys, and accountants; and

f. Cooperate with the Receiver's requests for additional information regarding the Trust and its assets, liabilities, income, expenses, and transactions.

SIGNED this ___ day of _____, ____.

_____
Judge Presiding

- 8 -

4996135V1

82015:1516:P0026

**Agreed as to form and substance:**

**PORTER HEDGES LLP**

/s/ Eric M. English

Neil Kenton Alexander
Texas Bar No. 00996600
kalexander@porterhedges.com
William B. Rasmussen
Texas Bar No. 24027765
wrasmussen@porterhedges.com
Eric M. English
Texas Bar No. 24062714
eenglish@porterhedges.com
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6612
Facsimile: (713) 228-1331

*Attorneys for Plaintiff Ronald E. Lee, Jr.*

**BAKER BOTTS LLP**

/s/ John W. Porter

John W. Porter
Texas Bar No. 16149990
Keri D. Brown
Texas Bar No. 24055223
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1597
Facsimile: (713) 229-2797
John.porter@bakerbotts.com

*Attorneys for Intervenor Katherine Lee Stacy*

-9-

4986135v1

UNOFFICIAL COPY

# EXHIBIT "C"

 882995 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

NO. 137,506

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN PROBATE COURT NO. 2 |
| | § | |
| KATHERINE PILLOT LEE BARNHART, | § | |
| | § | |
| DECEASED | § | |

NO. 137,506-402

| | | |
|---|---|---|
| SUSAN CAMILLE LEE, et al. | § | |
|     Plaintiffs and | § | |
|     Counter-Defendants | § | OF |
| | § | |
| VS. | § | |
| | § | |
| RONALD E. LEE, JR., et al. | § | |
|     Defendants and | § | |
|     Counter-Plaintiffs | § | |
| | § | |
| VS. | § | |
| | § | |
| KATHERINE LEE, | § | |
|     Intervenor. | § | HARRIS COUNTY, TEXAS |

## FINAL JUDGMENT

On the 3rd day of January, 1996, came on to be heard the above-styled and numbered cause. The Plaintiffs, Susan Lee individually, ("Susan C. Lee") and derivatively on behalf of the Estate of Katherine P. Barnhart (the "Estate") and the Article IV Trust contained in the Last Will and Testament of Katherine P. Barnhart (the "Article IV Trust"), Susan Lee as Trustee for the Article V Trust contained in the Last Will and Testament of Katherine P. Barnhart ( the "Will") for the benefit of Susan C. Gibson (the "Article V Trust") and derivatively on behalf of the Estate and the Article IV Trust, and Susan C. Gibson, individually and derivatively on behalf of the Estate and the Article IV Trust, (hereinafter collectively referred to as the "Plaintiffs") and the Defendant, Ronald E. Lee, Jr., individually ("Ronald E. Lee, Jr."), as the Independent Executor of the Estate, as Trustee for the Article IV Trust, and as Trustee for the Article V Trust contained in the Will for the benefit of Katherine Lee, and Katherine Lee, individually, as intervenor, announced ready for trial. A jury



EXHIBIT "A"

having been demanded, a jury of 12 qualified jurors was duly empaneled, and the case proceeded to trial. At the conclusion of the evidence, the Court submitted questions of fact in the case to the jury. A verdict was returned by the jury and accepted by the Court. The jury was excused.

On the 8th and 9th days of April, 1996, came to be heard the Motion by the Plaintiffs for Judgment on the Verdict and the Motion by the Defendant for Judgment *Non Obstante Veredicto* and to Disregard Jury Findings; and came the parties personally and by and through their attorneys of record; and the Court, having considered the arguments, found that each of said Motions should be granted in part and denied in part.

Based upon the jury's answers to question numbers 1(c) and 4, this Court finds that the Article IV Trust is entitled to judgment against Ronald E. Lee, Jr. in the total amount of $840,000 arising from his breach of fiduciary duty related to the Knollwood Development.

Based upon the jury's answers to question numbers 1(c) and 4, this Court finds that the Article IV Trust is entitled to judgment against Ronald E. Lee, Jr. in the total amount of $1 arising from his breach of fiduciary duty related to the River Bend Farm.

Based upon the jury's answers to questions numbers 1(d) and 4, this Court finds that the Article IV Trust is entitled to judgment against Ronald E. Lee, Jr. in the total amount of $1 arising from his breach of fiduciary duty related to the Cap Rock Ranch.

Based upon the jury's answers to question numbers 2(a) and 5(a), this Court finds that the Article IV Trust is entitled to judgment against Ronald E. Lee, Jr. in the total amount of $659,506.50 (which consists of the $2,198,355 of unreasonable executor fees found by the jury less the tax savings realized by the Estate from the deduction of such fees on the Estate's estate tax return) plus prejudgment interest at the rate of 10% per annum, computed as simple interest. As of August 6,

-2-

1996, the amount of prejudgment interest that has accrued on these damages is $919,702.12 and is accruing thereafter at the per diem rate of $180.69 as shown in Exhibit "A" attached hereto.

Based upon the jury's answers to question numbers 2(b) and 5(b), the Court finds that the Article IV Trust is entitled to judgment against Ronald E. Lee, Jr. for unreasonable office expenses in the amount of $163,550 plus prejudgment interest at the rate of 10% per annum, computed as simple interest. As of August 6, 1996, the amount of prejudgment interest that has accrued on these damages is $157,969.90 and is accruing thereafter at the per diem rate of $44.81 as shown in Exhibit "B" attached hereto.

Based upon the stipulation of the counsel for the parties and the undisputed or admitted facts, the Court finds that i) Susan C. Lee's attorneys were paid reasonable and necessary fees of $1,000,000.00 for the prosecution of this action; ii) attorneys representing Susan C. Gibson, individually, and Susan C. Lee as Trustee of the Article V Trust for Susan C. Gibson, were paid reasonable and necessary fees of $500,000.00 for the prosecution of this action; iii) Ronald E. Lee, Jr.'s attorneys were paid reasonable and necessary fees of $1,500,000.00 for the defense of this action; and iv) Ronald E. Lee, Jr.'s attorneys' fees of $1,500,000.00 have already been paid by or reimbursed from the Estate and/or Article IV Trust, as previously authorized by the Court, and he is therefore not entitled to any additional attorney's fees for the trial of this action. The Court further finds that Plaintiffs are entitled to judgment directing and authorizing the Executor of the Estate and Trustee of the Article IV Trust to reimburse Susan C. Lee, individually and Susan C. Lee as Trustee of the Article V Trust for Susan C. Gibson for the aforesaid attorneys' fees from the assets of the Estate and/or the Article IV Trust, and after such payment or reimbursement, Plaintiffs are not entitled to any additional attorneys' fees for the trial of this action.

-3-

Based upon the stipulation of the parties and the undisputed or admitted facts, the Court finds that reasonable and necessary attorneys' fees for an appeal by either Plaintiffs or Defendant to the Court of Appeals are $300,000.00 and that reasonable and necessary attorneys' fees for an appeal by either Plaintiffs or Defendant to the Texas Supreme Court are $100,000.00. The Court further finds that both Plaintiffs and Defendant are entitled to payment of such additional attorneys' fees from the Article IV Trust in the event that appeals are taken from this judgment.

Based upon the findings and conclusions set forth above, the Court finds that the Article IV Trust is entitled to judgment against Ronald E. Lee, Jr., in the total sum of $1,663,058.50, plus prejudgment interest at the rate of 10% per annum, computed as simple interest, on each payment set forth on Exhibit "A" attached hereto and incorporated herein for all purposes, relating to the executor's fee, from the date of each such payment until the date of judgment, plus prejudgment interest at the rate of 10% per annum, computed as simple interest, on each payment set forth on Exhibit "B" attached hereto and incorporated herein for all purposes, relating to the office expenses, from the date of each such payment until the date of judgment. Based upon the findings and conclusions set forth above, the terms of the Last Will and Testament of Katherine P. Barnhart, the Court concluded that the office expenses in the amount of $163,550 and all prejudgment interest are allocable to income and that the other damages awarded against Ronald E. Lee, Jr. in the amount of $1,499,508.50 are allocable to principal.

A Final Judgment was previously signed by this Court on August 21, 1996. However, because that Final Judgment contained an error with respect to prejudgment interest, this Court has vacated and set aside the Final Judgment dated August 21, 1996.

IT IS, THEREFORE:

-4-

ORDERED, ADJUDGED and DECREED that Plaintiffs' Motion for Judgment on the Verdict is GRANTED as to the following Jury Questions: 1c, 1d, 1e, 2a, 2b, 4, 5a, 5b and 9; that Plaintiffs' Motion for Judgment on the Verdict is DENIED as to the following Jury Questions: 1a, 1b, 3a, 3b, and 8; that Defendant's Motion for Judgment *Non Obstante Veredicto* is DENIED; that Defendant's Motion to Disregard Jury Findings is GRANTED as to the following Jury Questions: 1a, 1b, 3a, 3b, and 8; and that Defendant's Motion to Disregard Jury Findings is DENIED as to the following Jury Questions: 1c, 1d, 1e, 2a, 2b, 4, 5a, 5b and 9; it is further

ORDERED, ADJUDGED and DECREED that the Trustee, on behalf of the Article IV Trust, have and recover judgment against Ronald E. Lee, Jr., individually, in the amount of $1,663,058.50 together with i) prejudgment interest at the rate of 10% per annum, computed as simple interest, on each payment set forth on Exhibit "A" attached hereto and incorporated herein for all purposes, relating to the executor's fee, from the date of each such payment until the date of judgment, plus ii) prejudgment interest at the rate of 10% per annum, computed as simple interest, on each payment set forth on Exhibit "B" attached hereto and incorporated herein for all purposes, relating to the office expenses, from the date of each such payment until the date of judgment, plus iii) post-judgment interest on such total amount of $2,758,770.52 at the rate of 10% per annum, compounded annually, accruing from and after the date of this judgment until paid in full; it is further

ORDERED, ADJUDGED and DECREED that the Executor of the Estate and Trustee of the Article IV Trust are authorized and directed to immediately pay Susan C. Lee, individually, the amount of $1,000,000 in reimbursement of attorneys' fees; it is further

ORDERED, ADJUDGED and DECREED that the Executor of the Estate and Trustee of the Article IV Trust are authorized and directed to immediately pay Susan C. Lee as Trustee of the Article V Trust for Susan C. Gibson, the amount of $500,000, in reimbursement of attorneys' fees; it is further

-5-

ORDERED, ADJUDGED and DECREED that the payments by Ronald E. Lee, Jr., as Executor of the Estate and/or as Trustee of the Article IV Trust, from the assets of such Estate and Trust of his attorneys' fees in the amount of $1,500,000 for his defense of this action are hereby authorized; it is further

ORDERED, ADJUDGED and DECREED that the Trustee of the Article IV Trust is authorized and directed to pay $200,000.00 to Susan C. Lee, individually, and $100,000.00 to Susan C. Lee, as Trustee of the Article V Trust for Susan C. Gibson, in the event that there is an appeal to the Court of Appeals; it is further

ORDERED, ADJUDGED and DECREED that the Trustee of the Article IV Trust is authorized and directed to pay $300,000.00 to Ronald E. Lee, Jr., individually, in the event that there is an appeal to the Court of Appeals; it is further

ORDERED, ADJUDGED and DECREED that the Trustee of the Article IV Trust is authorized and directed to pay $67,000.00 to Susan C. Lee, individually, and $33,000.00 to Susan C. Lee as Trustee of the Article V Trust for Susan C. Gibson, in the event of an appeal to the Texas Supreme Court; it is further

ORDERED, ADJUDGED and DECREED that the Trustee of the Article IV Trust is authorized and directed to pay $100,000.00 to Ronald E. Lee, Jr., individually, in the event there is an appeal to the Texas Supreme Court; it is further

ORDERED, ADJUDGED and DECREED that the Plaintiffs' request to remove Ronald E. Lee, Jr. as the Independent Executor of the Estate is DENIED; it is further

ORDERED, ADJUDGED and DECREED that the Plaintiffs' request to remove Ronald E. Lee, Jr., as the Trustee of the Article IV Trust is DENIED.

-6-

PLAINTIFFS' ORIGINAL PETITION - Page 043

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

All writs shall issue at the appropriate time as provided by law. Costs are taxed against Ronald E. Lee, Jr., individually.

ALL OTHER RELIEF NOT EXPRESSLY GRANTED HEREIN IS DENIED.

SIGNED this 25 day of October, 1996.

_____
JUDGE PRESIDING

-7-

# EXHIBIT "D"

47 S.W.3d 767
Court of Appeals of Texas,
Houston (14th Dist.).

Susan Camille LEE, Individually, and as Trustee
of the Article V Trust for the Benefit of Susan C.
Gibson, and Derivatively on Behalf of the Article
IV Trust and the Estate of Katherine Pillot Lee
Barnhart, and Susan C. Gibson, Individually, and
Derivatively on Behalf of the Article IV Trust and the
Estate of Katherine Pillot Lee Barnhart, Appellants,

v.

Ronald E. LEE, Jr., Individually, as Trustee of the
Article IV Trust, and the Article V Trust for the
Benefit of Katherine Lee, and as Executor of the
Estate of Katherine Pillot Lee Barnhart, Appellee.

No. 14–97–00162–CV.
|
May 17, 2001.
|
Rehearing Overruled May 17, 2001.

Beneficiaries brought action against executor of estate who also served as trustee of trust for breach of fiduciary duty and for charging excessive executor fees. The Probate Court, Harris County, Mike Wood, J., granted judgment for executor. Beneficiaries appealed. The Court of Appeals, Hudson, J., held that: (1) evidence was sufficient to support finding that executor earned approximately $600,000 in fees; (2) evidence was insufficient to support finding that executor failed to diversify the assets of the estate; (3) executor's alleged misconduct in administering estate was material, warranting his removal; (4) no evidence existed that trustee's defense of beneficiaries' suit against him was in bad faith; and (5) executor was entitled to reimbursement of attorney fees in defense of suit.

Affirmed in part, reversed and rendered in part.

West Headnotes (49)

**[1]** **Executors and Administrators**
⟜ Evidence

Evidence was sufficient to support finding that executor earned approximately $600,000 in fees, but not $2.8 million in fees that executor charged estate, for administering estate valued at $12.8 million; although one expert testified that executor was not entitled to any fee because he did not give beneficiaries an accounting for 13 years, did not keep proper records, and spent $750,000 on experts to develop tract of land but did not develop it, and another expert testified that a $2.8 million fee was reasonable due to the size and difficulty of administering estate.

Cases that cite this headnote

**[2]** **Executors and Administrators**
⟜ Proceedings and order for allowance

Applicability of personal representative compensation statute to determine executor's compensation could not be considered on appeal in beneficiaries' suit against executor for excessive executor fees, where executor had not raised issue of applicability of statute as ground for his motion for judgment notwithstanding the verdict at trial level. V.A.T.S. Probate Code, § 241.

Cases that cite this headnote

**[3]** **Executors and Administrators**
⟜ Amount and Computation of Compensation

Estate tax deduction of $1.5 million for executor fees could not be used to offset jury finding that executor charged estate $2.2 million more than he should have, although Internal Revenue Service (IRS) could no longer assess additional taxes to estate following executor's reimbursement of excess fees; it was more appropriate for estate to obtain benefit of windfall than to let executor keep $1.5 million in fees the jury found were excessive and unreasonable.

1 Cases that cite this headnote

**[4]** **Executors and Administrators**
⟜ Forfeiture or deprivation of compensation

Executor fees could not be forfeited as equitable remedy for executor's alleged breach of fiduciary duty in administration of estate, where beneficiaries had not requested forfeiture of executor's fee in any pleading.

5 Cases that cite this headnote

[5]  **Appeal and Error**
 ⬥ Verdict

When a "no evidence" challenge is raised, an appellate court may only consider the evidence and inferences supporting the jury's verdict, disregarding all contrary evidence.

Cases that cite this headnote

[6]  **Evidence**
 ⬥ Sufficiency to support verdict or finding

If there is more than a scintilla of evidence to support the finding, a no evidence challenge must fail.

Cases that cite this headnote

[7]  **Evidence**
 ⬥ Sufficiency to support verdict or finding

A "scintilla of evidence" exists when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence.

Cases that cite this headnote

[8]  **Appeal and Error**
 ⬥ Total failure of proof

An appellate court should find there is no evidence if reasonable minds cannot differ from the conclusion that the evidence offered to support the existence of a vital fact lacks probative force.

Cases that cite this headnote

[9]  **Appeal and Error**
 ⬥ Conclusiveness in General

An appellate court may not second-guess the jury unless only one inference may be drawn from the evidence.

Cases that cite this headnote

[10]  **Appeal and Error**
 ⬥ Extent of Review

When deciding factual sufficiency questions, an appellate court considers all of the evidence.

Cases that cite this headnote

[11]  **Appeal and Error**
 ⬥ Sufficiency of Evidence in Support

A court may set aside a factual finding only if the evidence is so weak as to be clearly wrong and manifestly unjust.

Cases that cite this headnote

[12]  **Executors and Administrators**
 ⬥ Evidence

Evidence was insufficient to support finding that executor failed to diversify the assets of estate by rejecting offers to purchase property in beneficiaries' suit against him for breach of fiduciary duty, although executor received two offers to purchase the property, but rejected them; unaccepted offers to purchase property were too uncertain to serve as proof and no testimony was offered to determine if prospective purchasers were willing to meet executor's terms of sale.

6 Cases that cite this headnote

[13]  **Executors and Administrators**
 ⬥ Appeal and error

Executor did not invite or waive error on issue of whether measure of damages for alleged wrongful failure to sell property was sale proceeds plus interest in beneficiaries' suit against him for breach of fiduciary duty, although executor offered expert testimony that proper measure of damages for alleged wrongful failure to sell property was sale proceeds plus interest, where offer was made to counter

WESTLAW  2016 Thomson Reuters. No claim to original U.S. Government Works.

beneficiaries' proposal for damages to include potential profits.

Cases that cite this headnote

[14] **Executors and Administrators**
    Appeal and error

Executor's counsel's response to jury question did not invite error in jury's determination of damages for executor's alleged breach of fiduciary duty for failure to optimize profit on estate property by failure to sell it when he had the opportunity to do so, although executor's counsel's position was that jury had to determine the day, month, and year of when property should have been sold, where judge told jury that they had to make the less specific determination of month and year when property should have been sold.

Cases that cite this headnote

[15] **Executors and Administrators**
    Appeal and error

Executor did not waive error by failing to object to question put to jury on ground of insufficient evidence in suit against executor for alleged breach of fiduciary duty for failure to optimize profit on estate property, where executor's motion for judgment notwithstanding the verdict alleged that evidence supporting the jury's findings was legally insufficient. Vernon's Ann.Texas Rules Civ.Proc., Rule 279.

Cases that cite this headnote

[16] **Judgment**
    Where there is no evidence to sustain verdict

A trial court may disregard a jury's finding if there is no evidence to support the jury's finding.

Cases that cite this headnote

[17] **Appeal and Error**
    Judgment

When reviewing the grant of a motion for judgment notwithstanding the verdict, the reviewing court must review all testimony in a light most favorable to the finding, considering only the evidence and inferences that support the finding and rejecting the evidence and inferences contrary to the finding.

Cases that cite this headnote

[18] **Appeal and Error**
    Extent of Review Dependent on Nature of Decision Appealed from

If there is more than a scintilla of competent evidence to support the jury's finding, then the judgment notwithstanding the verdict will be reversed.

Cases that cite this headnote

[19] **Evidence**
    Amount for which property will sell; offers

Unaccepted offers to purchase property are no evidence of market value of property.

8 Cases that cite this headnote

[20] **Executors and Administrators**
    Grounds in general

Executor's alleged misconduct was material in his administration of estate, warranting his removal, although damages to estate were only $1.00 for failure to sell and diversify assets and jury did not find that executor's actions constituted gross negligence, where executor was found to have breached his fiduciary duty in numerous respects and damages associated with executor's breach of duty totaled $3 million. V.A.T.S. Probate Code, § 149C.

Cases that cite this headnote

[21] **Appeal and Error**
    Abuse of discretion

A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles.

6 Cases that cite this headnote

[22] **Executors and Administrators**
⬥ Grounds in general

Although a trial judge is given discretion by executor removal statute to determine whether an executor's actions rise to the level of gross misconduct, this discretion is not unlimited; an abuse of discretion occurs when the trial court makes a legally unreasonable determination given the factual-legal context in which it was made. V.A.T.S. Probate Code, § 149C.

2 Cases that cite this headnote

[23] **Appeal and Error**
⬥ Abuse of discretion

A trial court's determination is legally unreasonable if the court failed to consider a fact shown in the evidence that was legally relevant.

Cases that cite this headnote

[24] **Appeal and Error**
⬥ Conduct of trial or hearing in general

The trial court's decision whether to submit a particular instruction or definition to the jury is reviewed for an abuse of discretion.

4 Cases that cite this headnote

[25] **Trial**
⬥ Definition or explanation of terms
**Trial**
⬥ Construction and Effect of Charge as a Whole

To determine whether an alleged error in the charge is reversible, the reviewing court must consider the pleadings, the evidence, and the charge in its entirety; as to instructions and definitions, the essential question is whether the instruction aids the jury in answering the questions.

2 Cases that cite this headnote

[26] **Trial**
⬥ Matters of law

**Trial**
⬥ Pleadings and Issues
**Trial**
⬥ Facts and Evidence

An instruction is proper if it assists the jury, is supported by the pleadings or evidence, and accurately states the law.

Cases that cite this headnote

[27] **Appeal and Error**
⬥ Cases Triable in Appellate Court

Whether terms are properly defined or the instruction is properly worded in a definition or instruction submitted to the jury is a question of law reviewable de novo.

3 Cases that cite this headnote

[28] **Appeal and Error**
⬥ Failure or refusal to submit issues

**Appeal and Error**
⬥ Failure or refusal to charge

Error is reversible only if, when viewed in light of the totality of the circumstances, the refusal to submit a question or instruction to the jury probably caused the rendition of an improper judgment.

Cases that cite this headnote

[29] **Trusts**
⬥ Proceedings

Issue of removal of trustee under trustee removal statute was valid theory raised by pleadings and evidence in beneficiaries' suit to remove trustee for breach of fiduciary duty, where beneficiaries pled removal of trustee under trustee removal statute, and presented evidence of conduct that jury found to be breaches of fiduciary duty. V.T.C.A., Property Code § 113.082.

1 Cases that cite this headnote

[30] **Trusts**
⬥ Mismanagement or misconduct in execution of trust

Trustee's breach of fiduciary duty and jury's award of damages for breach of fiduciary duty each constituted a basis for removal of trustee in beneficiaries' suit against trustee for breach of fiduciary duty. V.T.C.A., Property Code § 113.082.

3 Cases that cite this headnote

[31] **Trusts**
⟜ Mismanagement or misconduct in execution of trust

A breach of a fiduciary duty can constitute a material violations of a trust for the purpose of establishing a basis for removal of a trustee. V.T.C.A., Property Code § 113.082.

Cases that cite this headnote

[32] **Trusts**
⟜ Mismanagement or misconduct in execution of trust

A jury award of damages for breach of a fiduciary duty can constitute a material financial loss to the trust for the purpose of establishing a basis for the removal of a trustee. V.T.C.A., Property Code § 113.082.

1 Cases that cite this headnote

[33] **Trusts**
⟜ Grounds

Alleged conflict arising from trustee's opposition to beneficiaries' motion for judgment and his attempt to reduce trust's judgment in action for breach of fiduciary duty did not require his removal; such a conflict could arise any time a beneficiary brought suit for damages against a trustee.

Cases that cite this headnote

[34] **Trusts**
⟜ Evidence

No evidence existed to support jury's finding that trustee's defense of beneficiaries' suit against him for breach of fiduciary duty was in bad faith, despite evidence that trustee did not give the

beneficiaries an accounting for 13 years, he did not keep proper records, and he spent $750,000 on experts to develop a tract of land in the estate but he did not develop it. V.T.C.A., Property Code § 114.064; V.A.T.S. Probate Code, § 149C.

Cases that cite this headnote

[35] **Executors and Administrators**
⟜ Application and proceedings thereon

Executor could recover attorney fees from estate in defense of beneficiaries' attempt to remove him, despite evidence regarding executor's breach of duty, where there was no evidence showing that executor's defense against removal was made in bad faith.

1 Cases that cite this headnote

[36] **Executors and Administrators**
⟜ Custody and Management of Estate

An executor acts in good faith when he or she subjectively believes his or her defense is viable, if that belief is reasonable in light of existing law.

4 Cases that cite this headnote

[37] **Trusts**
⟜ Proceedings
**Trusts**
⟜ Costs

Trustee was required to reimburse trust for attorney fees and costs incurred by beneficiaries at trial and on appeal in beneficiaries' suit against trustee for breach of fiduciary duty and removal, although attorney fees and costs could not be recovered against him under probate code's attorney fee statute for his removal in his role as trustee, where prosecution of claim to remove trustee was inextricably intertwined with prosecution of beneficiaries' claims against him for breach of fiduciary duty and removal in his role as executor. V.A.T.S. Probate Code, § 245.

Cases that cite this headnote

[38] **Stipulations**

◆ Construction and Operation in General

Stipulation between parties as to reasonable and necessary attorney's fees incurred by beneficiaries' in their suit and appeal in action against executor for breach of fiduciary duty and removal negated requirement in attorney fee statute in probate code that party seeking recovery present evidence to enable jury or court to determine what fees are recoverable by estate. V.A.T.S. Probate Code, § 245.

3 Cases that cite this headnote

[39] **Costs**
◆ Form and requisites of application in general

A party is not required to segregate attorney fees unless the party asserts multiple claims, some of which entitle the party to recovery of attorney fees and some of which do not.

Cases that cite this headnote

[40] **Costs**
◆ Form and requisites of application in general

There is an exception to the duty to segregate attorney fees when the attorney's fees are rendered in connection with claims arising out of the same transaction and when the claims are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts.

1 Cases that cite this headnote

[41] **Trusts**
◆ Judgment and relief

Damages award was required to be paid to the trust, and not to beneficiary directly, in beneficiaries' suit against trustee for breach of fiduciary duty, where beneficiary was not entitled to gross income, and was instead entitled to "current net income" under will, which meant any trust income, minus expenses. V.T.C.A., Property Code § 113.111.

1 Cases that cite this headnote

[42] **Interest**
◆ Compound interest

Prejudgment interest was properly computed as simple interest, not interest compounded daily, in beneficiaries' suit against executor for breach of fiduciary duty; claim for prejudgment interest was based upon common law since suit did not fall within any of the prejudgment interest statutes.

2 Cases that cite this headnote

[43] **Executors and Administrators**
◆ Appeal and error

Neither award of prejudgment interest, nor accrual date of that interest, required executor to make point of error to preserve those issues for appellate review in beneficiaries' suit against executor for breach of fiduciary duty, although executor had not raised those issues either at trial level nor in his brief on appeal, where Court of Appeals' award of prejudgment interest was new award of damages and was of automatic legal consequence since appellants pled for prejudgment interest.

2 Cases that cite this headnote

[44] **Appeal and Error**
◆ Effect of Failure to Assign Particular Errors

A point of error not preserved is not before the appellate court for review.

Cases that cite this headnote

[45] **Appeal and Error**
◆ Contentions other than those made on the hearing

An assignment of error raised for the first time in an appellate motion for rehearing is too late to be considered by an appellate court.

6 Cases that cite this headnote

[46]  **Interest**

◆― Prejudgment Interest in General

"Prejudgment interest" is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment.

1 Cases that cite this headnote

[47]  **Interest**

◆― Prejudgment Interest in General

The two legal sources for an award of prejudgment interest are general principles of equity, and an enabling statute.

2 Cases that cite this headnote

[48]  **Interest**

◆― Particular cases and issues

Beneficiaries were entitled to prejudgment interest from date they filed their petition against executor for breach of fiduciary duty to date preceding entry of judgment on $1.5 million judgment, not from date of executor's alleged breach, where first date executor received notice of beneficiaries' claim that executor fees paid to him were excessive and unreasonable was date suit was filed.

1 Cases that cite this headnote

[49]  **Executors and Administrators**

◆― Representation of creditors and distributees

An executor owes a duty to disclose all material facts affecting the beneficiaries' rights.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*772**  Thomas A. Zabel, Houston, Daniel J. Sheehan, Marc S. Culp, Dallas, for appellants.

Adam P.Schiffer, Thomas B. Greene, D. Gibson Walton, Marie R. Yates, R. Glen Rigby, Houston, for appellants.

Panel consists of Justices ANDERSON, HUDSON, and Senior Chief Justice MURPHY.\*

**\*773  CORRECTED OPINION**

HUDSON, Justice.

This is an appeal from a judgment in a probate case in which appellants sought removal of the executor/trustee and sought damages for breaches of fiduciary duty and for excessive executor fees. After granting appellee's motion for judgment notwithstanding the verdict and disregarding several jury findings, the trial court rendered judgment: (1) refusing to remove appellee as executor and trustee, and (2)awarding $2.8 million in damages and prejudgment interest to the Article IV trust. Appellants raise eight issues and appellee brings three cross-points. In our corrected opinion of February 8, 2001, this court affirmed in part and reversed and rendered in part.

Appellants have filed a third motion for rehearing. We now withdraw our corrected opinion of February 8, 2001, and issue this corrected opinion, affirming in part and reversing and rendering in part.

**Background**

When Katherine Barnhart died in 1975, her will provided that the bulk of her estate was to pass to a trust (the "Article IV Trust"). Barnhart's two children, appellant Susan Lee, and her brother, appellee Ronald Lee, were each entitled to one-sixth of the income from the Article IV Trust, and so much of the remaining two-thirds as necessary for their health, support and maintenance, considering the "availability of funds from other sources." The remaining income was to go into separate trusts for each of the grandchildren (the "Article V Trusts"). The Article V Trusts were to distribute income to the grandchildren to the extent necessary to provide for their health, support and maintenance, also considering the "availability of funds from other sources."

As provided in the will, appellee was appointed executor of the will (and trustee of the trusts) and began administration in 1976. Appellee filed the estate's inventory reflecting a date of death value of $12.8 million. After negotiations that continued until 1992, appellee and the IRS agreed upon a

PLAINTIFFS' ORIGINAL PETITION - Page 052

taxable value of the estate assets of $12 million. By this time, federal and state inheritance taxes totaled approximately $7 million. Because the majority of the estate's assets were raw land, the estate was unable to pay the taxes it owed and the trusts could not be funded.

In February 1980, appellee reached an agreement with the IRS regarding the estate taxes due. The total amount due was $2.8 million, and the interest on that amount as of February 1980 was approximately $475,000 (for a total debt to the IRS of approximately $3.5 million). The estate also owed the State of Texas approximately $800,000 in inheritance taxes. Because the estate had little available cash, appellee continued to request extensions on these debts. Other debts continued to amass, including ad valorem taxes on the various parcels of real estate.

In December 1980, appellee accepted an unsolicited offer to purchase 61 acres of a large tract on Westheimer Road for $19.5 million. The contract provided for payment in four annual installments. Appellee funded the Article IV Trust in 1982 with a deposit of $4 million. Appellant, Susan Lee, received her first distribution from the Article IV Trust in January 1983 in the amount of $15,784.

Appellee testified that, by the time he funded the Article IV Trust, he had taken more than $1 million in executor fees. By December of 1983, appellee had taken a total of $2,836,000 in fees. Although the IRS initially disputed the amount of this fee, they ultimately allowed the deduction of $1.5 million of appellee's fee.

*774 In December 1985, appellee received a letter from Susan Lee's attorney stating that she had never received an accounting and demanding one at the earliest possible date. This letter also asked about appellee's plans and expected distributions. Appellee did not produce an accounting in response to this request. In 1988, Susan Lee's attorney sent appellee a certified letter requesting an accounting from November 1975 to the present under section 149A of the Probate Code. This letter demanded receipt of the accounting by December 17, 1988, and requested copies of all income tax returns filed for the estate and any trusts. Appellee did not produce the accounting on the deadline and appellants filed suit several days later.

Appellee did not list the remaining Westheimer property or the Pasadena property for sale. Although he received an unsolicited offer to sell the remaining Westheimer tract,

appellee did not respond to this offer because he found it to be a bad proposal in that the offeror required high-density sewer capacity and would not pay for the portion of the property within the flood plain. In 1984, appellee had received another unsolicited offer to buy the Pasadena property for $2.3 million, which he did not accept because it was not a cash deal. Appellee did not make counteroffers to either of these offerors. In 1984, appellee had also received a contract offering $12,500 per acre for the Pasadena property. This was not a cash offer and appellee did not make a counteroffer.

Two family ranches were also in the estate: Cap Rock Ranch and River Bend Ranch. These ranches increased the estate's debts because they incurred taxes and were unprofitable. In 1990, River Bend Farm was leased for $20,000 per year. Appellee did not believe he could sell the family ranch because he and Susan Lee owned it jointly. Appellee discussed the possibility of partitioning with Susan Lee's attorney, but this never occurred.

During 1990–91, appellee considered developing the remaining Westheimer property into a residential subdivision to be called "Knollwood Trails." The development never received a loan and was ultimately abandoned. By 1991, appellee had spent more than $700,000 on Knollwood.

In April 1994, K–Mart bought a 21 acre parcel of the Westheimer tract for $8 million. The trial court ordered that these sale proceeds along with other estate assets be transferred to the Article IV trust. A year later, appellee funded the Article V trust.

Susan Lee brought suit individually and as trustee of the Article V Trust for the benefit of her daughter, Susan Gibson, and derivatively on behalf of the Article IV Trust and the Estate. Her daughter, Susan Gibson, was also a named plaintiff. Although the original suit was for an accounting and for removal of appellee as executor and trustee, additional claims included breaches of fiduciary duty, conversion, fraudulent concealment, constructive fraud and/or fraud, negligence, and gross negligence.

The case was tried to a jury and the jury found that appellee had breached fiduciary duties, that he charged unreasonable fees and expenses to the estate, that his fees and expenses were unreasonable by approximately $2.2 million, that the breaches of fiduciary duty resulted in damages, and that appellee defended against removal in bad faith. The jury also found that the breaches of fiduciary duty were not committed

with gross negligence. Appellee filed a motion for judgment notwithstanding the verdict and to disregard jury findings. The trial court granted this motion in part, disregarding the jury's findings of breach of duty and damages for the *775 failure to sell the Westheimer and Pasadena property, the bad faith defense finding, and found the following:

(1) the Article IV trust was entitled to judgment against appellee in the amount of $840,000 (amount found by jury) for breach of fiduciary duty relating to the Knollwood development;

(2) the Article IV Trust was entitled to judgment against appellee in the amount of $1.00 (amount found by jury) for the breach of fiduciary duty relating to River Bend Farm;

(3) the Article IV Trust was entitled to judgment against appellee in the amount of $1.00 (amount found by jury) for the breach of fiduciary duty relating to Cap Rock Ranch;

(4) the Article IV trust was entitled to judgment against appellee in the amount of $659,506.50 (consisting of the $2.2 million of unreasonable executor fees less the tax savings realized by the Estate from the deduction of such fees on the Estate's estate tax return) plus prejudgment interest of 10% per annum, computed as simple interest; and

(5) the Article IV trust was entitled to judgment against appellee in the amount of $163,550 for unreasonable office expenses.

The judge also awarded appellants' attorneys reasonable and necessary attorney's fees of $1.5 million and awarded appellee's attorneys fees of $1.5 million, all reimbursable from the Estate (plus additional amounts for appeal).

## Excessive Executor Fee

[1] Appellants first challenge the trial court's reduction of the excessive executor fee finding. The jury found that the $2.8 million executor fee taken by appellee was unreasonable and excessive by approximately $2.2 million. The trial court reduced the jury's finding by $1.5 million, stating in the judgment that he was awarding appellee $659,506.50, which represented the jury finding of $2.2 million "less the tax savings realized by the Estate from the deduction of such fees on the Estate's estate tax return...."

Appellants contend the impact of the court's deduction is to allow appellee to reap $1.5 million for his wrongful conduct as long as the fee results in a tax deduction. Citing *Anderson v. Armstrong*, 132 Tex. 122, 120 S.W.2d 444 (1938), appellants contend the remedy for excessive fees is return of the entire amount with interest at the highest legal amount.

Appellee responds with three arguments: (1) the Probate Code supports the trial court's exercise of discretion to determine the amount of the fee; (2) *Burrow v. Arce*, 997 S.W.2d 229 (Tex.1999)[1] supports a trial court determination of fee forfeiture; and (3) the "tax benefits rule" authorizes the trial court to deduct the amount of tax savings realized.

[2] We turn first to appellee's claim that section 241 of the Probate Code supports the trial court's decision to reduce the jury's award. Section 241 concerns compensation for personal representatives. This section provides that executors and other representatives are entitled to receive a commission of five percent of the gross fair market value of the estate. *See* TEX. PROB.CODE ANN. § 241 (Vernon Supp.2000). This statutory amount has been held to represent a fair and reasonable compensation. *See* *776 *In re Roots' Estate*, 596 S.W.2d 240, 243 (Tex.App.—Amarillo 1980, no writ). The last sentence of section 241 provides that the "court may, on application of an interested person or on its own motion, deny a commission allowed by this subsection in whole or in part if: (1) the court finds that the executor or administrator has not taken care of and managed estate property prudently...." *Id.* at § 241(a)(1).

Because the will provides for a reasonable fee for the executor, both parties agree that section 241 is inapplicable as it concerns the amount of compensation appellee may be paid for his role as executor. This interpretation is supported by case law. *See, e.g., Stanley v. Henderson*, 139 Tex. 160, 162 S.W.2d 95 (1942). Despite the inapplicability of the subsection setting executor compensation, appellee argues another subsection of this same statute applies, and gives the trial court discretion to reduce an executor's fee where there is a finding of imprudent management. Appellants, on the other hand, claim that where, as here, the will sets compensation, no part of the statute applies. In support of this argument, appellants cite *Stanley*.

We do not find *Stanley* dispositive on the question whether the last sentence of section 241(a) applies to this issue. First, when the *Stanley* opinion issued, the last sentence of the present version of section 241(a) was not yet part of the

statute. Second, *Stanley* does not address the issue presented here, whether the last sentence of section 241(a) applies on appeal to support a trial judge's decision to reduce a jury finding of damages for charging an excessive fee.

Because it provides for a standard fee, section 241 applies in situations where the will does not set compensation, and the executor seeks compensation in the statutory amount or for a greater amount. *See, e.g., Weatherly v. Martin,* 754 S.W.2d 790, 793–94 (Tex.App.—Amarillo 1988, writ denied). Therefore, this section is available for an executor to seek the statutory five percent or may be used by an opponent, or the trial court on its own motion, to deny the executor a fee, in whole or in part. These applications of the statute, however, are not relevant to this case because the will set compensation.

First, appellee did not raise a section 241 objection to the fee questions on the ground that the questions were within the trial court's discretion. Appellee also did not base his objection to the jury's finding on section 241. Instead, appellee argued in his motion for judgment notwithstanding the verdict that there was no evidence to support the jury's finding. Appellee cited to the testimony of his expert accountant, Greg Bardnell, who testified that, when tax benefits and interest savings to the estate are considered, the $2.8 million in fees actually cost the estate only $850,000. Citing *In re Garvin's Will,* 256 N.Y. 518, 177 N.E. 24 (1931), appellee claimed the amount of tax savings must be considered. Appellee further argued that, even if legally sufficient evidence supported the jury's finding of unreasonableness, appellants could only recover the actual cost to the estate of the excessive fees. [2]

In addition to the absence of an objection under section 241, the trial court did not, on its own motion, apply section 241 to deny all or part of appellee's fee. Instead, the issue of unreasonableness of the fee was submitted to the jury. Furthermore, the trial court did not apply section 241 in granting the motion for judgment notwithstanding the verdict. In its final judgment, *777 the court specifically found that "the Article IV Trust is entitled to judgment against Ronald E. Lee, Jr. in the total amount of $659,506.50 (which consists of the $2,198,355 of unreasonable executor fees found by the jury less the tax savings realized by the Estate from the deduction of such fees on the Estate's estate tax returns)...." Because section 241 was not raised as a ground for appellee's motion for judgment notwithstanding the verdict, we may not consider it on appeal.

[3] The trial court also did not reduce the jury's finding because there was no evidence supporting it. Instead, the trial court specifically stated he was reducing the fees by deducting the amount of tax savings realized by the estate. Therefore, we must determine whether the trial court properly applied the "benefits rule" to reduce the jury's finding. Appellee claims the trial court properly applied the "benefits rule" under *Nelson v. Krusen,* 678 S.W.2d 918 (Tex.1984). [3]

*Nelson* addressed the question whether Texas should recognize a cause of action for wrongful life. 678 S.W.2d at 924. In reaching their decision to follow the majority of courts refusing to adopt such a cause of action, the Texas Supreme Court observed that one rationale for not allowing a cause of action for wrongful life is that, in awarding damages, the court must offset any special benefits to the plaintiff resulting from the negligence. *See id.* (with citation to RESTATEMENT (SECOND) OF TORTS § 920 (1979)). Section 920 of the Restatement of Torts allows consideration of the value of benefits to the interest of the plaintiff that was harmed, to the extent this is equitable. *See* RESTATEMENT (SECOND) OF TORTS § 920 (1979).

Section 920A, however, augments section 920, providing that "[p]ayments made to or benefits conferred on the injured party from *other sources* are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." *Id.* at 920A (emphasis added). This section of the Restatement is the basis for the long-recognized "collateral source rule," which precludes a tortfeasor from obtaining the benefit of payment conferred upon the injured party from sources other than the tortfeasor. *See Castillo v. American Garment Finishers Corp.,* 965 S.W.2d 646, 650 n. 2 (Tex.App.—El Paso 1998, no writ). In Texas, the collateral source rule has been held to apply in cases where the injured party received insurance benefits, *see Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 934 (Tex.1980), general fringe benefits, *see McLemore v. Broussard,* 670 S.W.2d 301, 303 (Tex.App. —Houston [1st Dist.] 1983, no writ), gratuitous services, *see Oil Country Haulers, Inc. v. Griffin,* 668 S.W.2d 903, 904 (Tex.App.—Houston [14th Dist.] 1984, no writ), and worker's compensation benefits. *See Lee–Wright, Inc. v. Hall,* 840 S.W.2d 572, 582 (Tex.App.—Houston [1st Dist.] 1992, no writ).

Because the estate received a tax deduction from the IRS, a source other than the tortfeasor in this case, it would initially appear that the collateral source rule should prevent

appellee from obtaining the benefit of this deduction. More on point, however, are the cases regarding tax benefits. *778 Appellants cite *LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 697 (Tex.App.—Dallas 1992, writ denied), in which the court, in dicta, notes its agreement with a Supreme Court case, *Randall v. Loftsgaarden*, 478 U.S. 647, 106 S.Ct. 3143, 92 L.Ed.2d 525 (1986). In *Randall*, the Court held that tax benefits may not offset a party's recovery. Appellee attempts to distinguish *Randall* on the grounds that it "(1) dealt with income (not estate) taxes; (2) turned on construction of securities fraud statutes; and (3) disallowed consideration of income tax benefits because of the statutory intent to punish and deter and because the tax benefit was speculative." Appellee claims the jury in this case found no culpable mental state calling for punishment or deterrence, the savings by the estate tax deduction is not speculative, and the IRS can no longer assess additional estate taxes or disallow the deduction because the time for doing so has passed.

*Randall* involved allegations of securities fraud. *See* 478 U.S. at 650, 106 S.Ct. 3143. Petitioners asserted claims under § 10(b) of the Securities Exchange Act of 1934 and § 12(2) of the Securities Act of 1933. *See* 478 U.S. at 651, 106 S.Ct. 3143. Respondents argued petitioners' damages should be reduced by the amount of tax benefits received from the security, comparing tax benefits to the section 12(2) deduction for income received. *See id.* at 652, 106 S.Ct. 3143. The court found that tax deductions or credits are not taxable events and cannot be classified as income. *See id.* at 657, 106 S.Ct. 3143. The court further observed that, although one purpose of the section 12(2) rescission remedy is to restore plaintiff to his position prior to the fraud, another purpose is to deter fraud and encourage full disclosure. *See id.* at 659, 106 S.Ct. 3143. The court observed it was more appropriate to allow the defrauded party to have the benefit of a windfall than to let the fraudulent party benefit. *See id.* at 663, 106 S.Ct. 3143 (citing *Janigan v. Taylor*, 344 F.2d 781 (1st Circuit)), *cert. denied*, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). Because any recovery would be taxable as ordinary income, the court believed arguments about a windfall were greatly overstated. 478 U.S. at 663–64, 106 S.Ct. 3143.

Although *Randall* did involve construction of securities fraud statutes, the damages allowed by the statutes included rescission and out-of-pocket damages. The rescission damages encompassed the consideration paid (with interest) less the amount of income received on the security. 478 U.S.

at 655, 106 S.Ct. 3143 (citing 15 U.S.C. § 77*l* (2)). The out-of-pocket damages included the difference between the fair value received and the fair value of what the defrauded party would have received had there been no fraudulent conduct. *Id.* at 661–62, 106 S.Ct. 3143 (citing 15 U.S.C. § 78bb(a)). Although the court held that rescission adds an additional measure of deterrence as compared to a purely compensatory measure of damages, much of the reasoning supporting their ultimate conclusion is applicable to non-securities cases.

Although it involves a breach of contract claim, *Powers v. Powers*, 714 S.W.2d 384 (Tex.App.—Corpus Christi 1986, no writ), addresses an argument analogous to the one made by appellee in this case. In *Powers*, a woman sued her ex-husband for breach of an agreement to pay monthly alimony. *See id.* at 386. The trial court rendered judgment for the ex-wife for payment of the arrearage, costs, attorney's fees, and post-judgment interest. *See id.* On appeal, the ex-husband claimed the trial court erred in entering judgment against him because his ex-wife failed to offer any evidence by which to calculate her alleged damages. *See id.* at 388. *779 More particularly, the ex-husband claimed the measure of damages "should have been the amount of unpaid alimony less the tax savings she realized on her non-alimony income as a result of his failure to pay the entire amount of alimony due under the contract." *See id.* In other words, the ex-husband argued that his ex-wife's tax burden increased proportionately by the amount of alimony she received in a year, and the less alimony he paid, the more of a tax savings she realized. *See id.*

The court presumed the ex-husband's complaint went to mitigation of damages, in that he sought an offset for any tax savings realized by appellee. *See id.* at 389. First observing that the burden of proving the amount of damages that would have been mitigated was on the breaching party, the court concluded that they were "unaware of any principle or authority which would allow an offset to the party who has breached a contract for a 'tax savings' the non-breaching party 'realized' as a result of the breach." *Id.*

Only two other state courts have addressed deductibility of tax benefits from damages. In *DePalma v. Westland Software House*, 225 Cal.App.3d 1534, 276 Cal.Rptr. 214 (1990), the appellant challenged the trial court's refusal to admit evidence of tax benefits. Appellant asserted that, by not admitting this evidence, the trial court applied the collateral source rule and may have given the respondent a compensatory award exceeding statutory limitations. *See* 225 Cal.App.3d at 1538, 276 Cal.Rptr. 214. The court first held that the collateral

source rule has never been extended to breach of contract and it was within the trial court's discretion to deny the appellant collateral source credit. *See id.* at 1539, 276 Cal.Rptr. 214. In addition to denying application of the collateral source rule, the court asserted three reasons for refusing to consider tax consequences as a mitigating factor in compensatory damage calculations in breach of contract cases. *See id.* at 1540, 276 Cal.Rptr. 214. First, the court found that the federal tax benefits rule would cancel out most windfalls to plaintiffs in that the government may recapture past tax benefits awarded to a taxpayer if in a later year an event occurs which changes the basis of the premise upon which the deduction was originally based. *See id.* at 1540–41, 276 Cal.Rptr. 214. Second, the court observed that estimating tax consequences is speculative, time consuming, and confusing. *See id.* at 1541–42, 276 Cal.Rptr. 214. Finally, the court determined that public policy was better served if the breaching party was responsible for the full amount of compensatory damages. *See id.* at 1545, 276 Cal.Rptr. 214. The court felt so strongly about public policy that it stated it would reject appellant's argument even if there were no tax benefit rule. *See id.* The court cited to the Supreme Court's holding in *Randall,* in which the court had held it more appropriate to give the defrauded party the benefit of a windfall, and stated that the court likewise "favors parties who honor their promises, not those who breach them." *See id.* at 1546, 276 Cal.Rptr. 214.

The Supreme Court of Montana reached a similar result in a suit by a partnership of doctors against an accounting firm for failing to note the adverse impact the recommended reorganization and liquidation of a corporation would have on the partnership's industrial revenue bond financing. *See Billings Clinic v. Peat Marwick Main & Co.,* 244 Mont. 324, 797 P.2d 899 (1990). On appeal, the accounting firm claimed it was entitled to an offset for the tax benefits the individual doctors received by proceeding with reorganization. *See* 797 P.2d at 912. The district court refused to allow evidence of tax benefits. *See id.* at 913. The supreme court found no entitlement *780 to an offset for tax benefits because the objective of compensatory damages is to restore the damaged party to the position the party would have attained had the tort or breach not occurred. *See id.* The court added that, had the accounting firm done its job, the clinic would have had the benefit both of the tax benefits arising from the reorganization, and the lower cost of the favorable tax-exempt status of industrial revenue bonds. *See id.* The failure of this bond financing resulted in a higher interest cost for the loans required for construction of an addition to the clinic. *See id.* Thus, the court reasoned there would be no equity in reducing

that higher cost by the tax benefits to which the clinic was otherwise by law entitled. *See id.*

In response to these cases, appellee cites to *Geeslin v. McElhenney,* 788 S.W.2d 683 (Tex.App.—Austin 1990, no writ), for the proposition that, in determining the amount of fee to which the executor is entitled, the trial court should balance the value of the executor's services against the harm done to the beneficiaries' interests. In *Geeslin,* the court found the trial court acted within its authority under section 241 of the Probate Code in reducing Geeslin's fee to 2.5% of the gross estate. *See id.* at 687. Although the court stated the reduced amount could reasonably be viewed as commensurate with the value of Geeslin's services balanced against the harm done to the interests of the beneficiaries, *Geeslin* did not involve a tax benefit offset. Accordingly, we find *Geeslin* distinguishable.

In the instant case, there was evidence of the deduction the estate took for the fee, the interest accrued from the delay in filing the return, the reduction in interest based on the fee deduction, and the accounting fees incurred during the years preceding final settlement of the estate tax debt. The jury obviously considered this evidence and decided that, regardless of the deduction afforded the estate, $2.2 million of the total fee taken was excessive and unreasonable.

Based on our review of case law and the record, we find the trial court erred in deducting $1.5 million from the jury's finding. First, no authority supports an offset for tax benefits. We are unpersuaded by appellee's argument that the trial court's offset should be upheld because the IRS can no longer assess additional estate taxes. Our concern is with the parties before this court. Furthermore, we agree with the policy discussed in *Randall* and *DePalma.* As the Supreme Court stated "... it is more appropriate to give the defrauded party the benefit even of windfalls than to let the fraudulent party keep them." 478 U.S. at 663, 106 S.Ct. 3143. Under the facts of this case, it is more appropriate for the estate to obtain the benefit of a windfall than to let appellee keep $1.5 million in fees the jury found was unreasonable.

[4] We next turn to appellee's argument that the *Arce* case supports the trial court's ruling. The Texas Supreme Court has recently affirmed, in part, this court's opinion in the *Arce* case, recognizing fee forfeiture as a remedy for breach of fiduciary duty in the lawyer-client relationship. *See Burrow v. Arce,* 997 S.W.2d 229 (Tex.1999). Appellants argue that *Arce* is inapplicable because it concerns a remedy for breach

of fiduciary duties other than the duty not to take an excessive fee, but we do not read such a limitation in *Arce*. Instead, we find that *Arce* applies to any breach of fiduciary duty case where the plaintiff pleads the equitable remedy of fee forfeiture. *See id.* at 246. A review of the petition in this case, however, reveals no specific pleading of the remedy of fee forfeiture. Instead, appellants sought actual damages in the form of excessive fees *781 taken by the executor. Neither side mentioned forfeiture in the trial court. Appellee did not argue that the claim of excessive fees was one within the trial court's discretion and did not cite any case law regarding the equitable remedy of forfeiture either during the charge conference or in his motion for judgment notwithstanding the verdict. During the charge conference, appellee did not object to the questions concerning the excessive fee and damages. In his motion for judgment notwithstanding the verdict, appellee argued the evidence was legally insufficient to support the finding or, alternatively, the estate did not suffer damages in the amount found by the jury.

Even a liberal reading of the petition does not reveal a request for a partial or total forfeiture of the executor's fee. Appellants clearly claimed that the taking of an unreasonable fee was in itself a breach of fiduciary duty. Because there was no pleading for the equitable remedy of forfeiture, we hold that *Arce* does not apply to this case.

Having found in favor of appellants on their first issue, we turn to appellee's first cross-point, claiming that the evidence is legally and factually insufficient to support the jury's finding of $2.2 million in unreasonable executor fees. In his argument, appellee considers the evidence relating to the factors articulated in *Arce* for use by the judge in determining the amount of fee to be disgorged. Because we have found *Arce* inapplicable to the facts of this case, we will not utilize these factors, but will instead review the record for evidence supporting the jury's finding that $2.2 million of the fee taken by appellee was unreasonable.

[5] [6] [7] [8] [9] Because the burden of proof was on appellants to show that the fee was unreasonable and excessive, appellee must show either that no evidence supports the jury's finding, or that factually insufficient evidence supports the jury's finding. When a "no evidence" challenge is raised, an appellate court may only consider the evidence and inferences supporting the jury's verdict, disregarding all contrary evidence. *See Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996). If there is more than a scintilla of evidence to support the finding, a no evidence

challenge must fail. *See General Motors v. Sanchez*, 997 S.W.2d 584, 588 (Tex.1999). A scintilla of evidence exists when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). In application, we should find there is no evidence "if reasonable minds cannot differ from the conclusion that the evidence offered to support the existence of a vital fact lacks probative force." *Id.* An appellate court may not second-guess the jury unless only one inference may be drawn from the evidence. *See Ross v. Green*, 135 Tex. 103, 118, 139 S.W.2d 565, 572 (1940).

Appellants offered expert testimony from James P. Bevans, a certified property manager for 25 years and former regional manager of the Trust Department at NationsBank. Bevans testified that, to properly evaluate fees, he considered the size of the estate, the diversity of assets, and the complexity of administration, including tax considerations. Bevans observed that, based on his experience with comparable estates, an approximate fee of $300,000 would have been reasonable. After reviewing the estate and appellee's actions, Bevans concluded appellee was not entitled to any fee. In support of his opinion, Bevans offered the following: (1) appellee did not give the beneficiaries an accounting for 13 years; (2) appellee did not keep proper records; (3) 80–90% of the estate's assets were non-productive real estate and *782 the farms and ranches were operated at a loss for 20 years; (4) appellee did not transfer property to a trust for 18–20 years; (5) appellee took his fee while there was a huge IRS debt with interest continuing to accrue; and (6) appellee spent $750,000 on experts regarding development of a Westheimer tract when he had no experience in development. The record shows that, although his mother died in 1975, appellee did not fully fund the Article IV trust until 1984 and did not fund the Article V trust until 1995. Bevans stated that the $2.8 million fee was unbelievable and outrageous.

This testimony is some evidence supporting the jury's finding that the fees taken were excessive. Accordingly, we find no merit to appellee's claim of legally insufficient evidence to support this finding.

[10] [11] Appellee also claims the evidence is factually insufficient to support the jury's finding. In deciding factual sufficiency questions, the appellate court considers all of the evidence. *See Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). The court may set aside the finding only if

the evidence is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

In addition to considering the testimony of Bevans, we must also consider the evidence presented by appellee. Appellee testified that, in taking his fee, he considered the will language, which allows him to take a just and reasonable fee, and he considered an unidentified insurance publication showing fees for similar estates in Texas and other jurisdictions. Appellee testified it was his decision to take a range of fees, rather than a percentage of the value of the estate. Appellee took his fee in a series of payments from 1981–83 ranging in amounts from $5,000–375,000. Appellee conceded he did not prepare a written analysis of how he determined his fee and he kept no time records of his efforts. Appellee also agreed that he did not consult an attorney or conduct legal research about customary fees. Although he took the fee in the early 1980s, appellee testified that he knew the estate administration would continue for a long time.

Appellee also produced several witnesses that testified about the tax and interest savings the estate realized as a result of appellee's taking the $2.8 million fee. Gregory Edward Bardnell, a CPA, testified that approximately $2 million of the fee was deductible, meaning that the estate effectively paid only $850,000 of appellee's fee. Bardnell also testified that, had appellee merely paid the estate taxes and not paid himself a fee, the estate would have saved only $85,000 in interest on the IRS debt. Bardnell had no opinion of the reasonableness of appellee's fee.

Milton L. Schultz, an accountant who performed work for the estate, testified that deducting the executor fee and other administration expenses was his idea. Schultz added that he believed the fee was reasonable in light of the size of the estate and the difficulties of administration, including the lack of liquidity. Schultz characterized appellee's administration and ability to pay the taxes and preserve the bulk of the estate as "nothing short of genius."

We find that the evidence supporting the jury's finding is not so weak that the finding is clearly wrong and manifestly unjust. Based on the evidence presented by Bevans, the jury could have determined that appellee was entitled to no fee. Instead, the jury determined that appellee was entitled to approximately $600,000, which is approximately 5% of the estate value at the time of Katherine Barnhart's *783 death. We refuse to second-guess the jury when there is ample

evidence of improper and unacceptable actions by appellee as executor. We overrule cross-point one.

### Failure to Sell Westheimer and Pasadena Properties

[12]    Appellants next challenge the trial court's decision to disregard the jury findings that appellee breached his fiduciary duties by failing to sell the Westheimer and Pasadena properties. By cross-point, appellee claims the evidence is legally and factually insufficient to support the jury's findings in questions 1(a)-(b) and 3.

Question 1(a) asked the jury whether appellee breached his fiduciary duty by failing to sell the Westheimer property. Question 1(b) asked whether appellee breached his fiduciary duty by failing to sell the Pasadena property. Question 3 asked the jury the date appellee reasonably should have sold the properties, the dollar amount of proceeds that would have been received from such a sale, and the dollar amount of proceeds that would be received if the property were sold today. In response to questions 1(a) and (b), the jury found that appellee breached his fiduciary duty by failing to sell the two properties. In response to question 3, the jury found the Westheimer property should have been sold in May 1981, the proceeds from such a sale would have been $42 million, and the proceeds if sold today would be $24.5 million. As to the Pasadena property, the jury found the property should have sold in July 1978, the proceeds from such a sale would have been $1.6 million, and the proceeds, if sold today, would be $2,485,500.

In his motion for judgment notwithstanding the verdict, appellee argued that there was no evidence to support the jury's findings in response to questions 1(a), 1(b), and 3. The trial court agreed with appellee's legal insufficiency argument and disregarded the answers to jury question 1(a)-(b) and 3.

[13]    Appellants first assert that appellee invited or waived error because appellee requested question 3, but we find nothing in the record indicating that appellee requested this question. Appellants next argue waiver because appellee's attorneys objected to the damages measure sought by appellants. Appellants sought a measure of damages that included potential profits had Appellee timely sold the properties and invested the sale proceeds in a diversified portfolio of stocks and bonds. Appellee disagreed with this measure, and argued the proper measure was sales proceeds plus interest.

Appellee's disagreement with appellants' measure of damages did not invite or waive the error complained of here. Appellee offered the testimony of Professor Johanson, who rejected appellants' proposed measure as improper and testified that the proper measure was sale proceeds plus interest. Appellee was not advocating sale proceeds as the proper measure of damages, but was countering appellants' proposal for damages to include lost profits. We do not find appellee's objection and offer of testimony to constitute invited error.

[14] Appellants also argue that appellee invited or waived error by statements made during jury deliberations. The jury sent a question to the trial judge regarding the part of question 3 asking the date appellee should have sold the Westheimer and the Pasadena properties. The jury asked whether "date" referred to year, or month and year. The trial judge told the parties he replied "month and year," and asked the attorneys if they had any objections to this reply. Appellee's attorneys objected and asked that the reply inform *784 the jury that they must give the day, month, and year. Rather than objecting to "month and year," appellants' attorneys stated: "We can take it from the end of the month if that's going to be their problem. I think that's narrowing in too specifically." The court decided to let the jury answer month and year.

The statement of appellants' counsel during this discussion indicates they acquiesced in the "month and year" reply. Furthermore, this discussion does not show that appellee's counsel requested "month and year." Rather, this was the suggestion of the trial judge. We do not find that appellee's counsel invited error by asking for more specificity than the judge.

[15] Likewise, appellee did not waive error by failing to object to question 3 on the ground of insufficient evidence. A party may challenge legal sufficiency for the first time after the verdict regardless of whether the submission of the question was requested by the complainant. See TEX.R. CIV. P. 279. By asserting in its motion for judgment notwithstanding the verdict that the evidence supporting the jury's findings was legally insufficient, appellee preserved this complaint for appellate review. See id.

[16] [17] [18] Having found no waiver or invited error, we turn to appellants' challenge to the disregarding of the jury answers. A trial court may disregard a jury's finding if there is no evidence to support the jury's finding. See Alm v. Aluminum Co. of America, 717 S.W.2d 588,

593(Tex.1986). In reviewing the grant of a motion for judgment notwithstanding the verdict, the reviewing court must review all testimony in a light most favorable to the finding, considering only the evidence and inferences that support the finding and rejecting the evidence and inferences contrary to the finding. See Navarette v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex.1986). If there is more than a scintilla of competent evidence to support the jury's finding, then the judgment notwithstanding the verdict will be reversed. See Mancorp v. Culpepper, 802 S.W.2d 226, 228 (Tex.1990).

Appellee claims questions 1 and 3 did not, as appellants suggest, ask whether he breached a duty to diversify assets, transform nonproductive assets into productive assets, and generate income, but instead, asked the jury whether appellee breached a duty to accept two specific offers. Appellee asserts there is no evidence supporting a finding that he had a duty to accept a May 1981 offer to purchase the Westheimer property or a July 1978 offer to purchase the Pasadena property. Appellee further argues there is no evidence that any sales pursuant to these two offers would have yielded the proceeds found by the jury.

Although the evidence reveals a number of unaccepted offers for the Pasadena and Westheimer properties, the jury's finding of breach in May 1981 for the Westheimer property relates to a May 1981 offer by a Mr. Carothers. The date found by the jury of July 1978 for the Pasadena property relates to the July 1978 offer for the Pasadena property made by U.S. Homes. By failing to object to the jury question requesting the month and year appellee should have sold the two properties, appellants acquiesced in the jury finding a date that related to specific offers.

The evidence showed the Westheimer property did not have high-density sewer capacity and appellee testified that he delayed the sale of this property because he knew it would be worth more if it had sewer capacity In May 1981, Mr. Carothers offered to purchase part of the Westheimer property for more than $40 million. *785 Appellee did not respond to this offer because he believed it was a poor proposal in that it required high-density sewer capacity and it included no payment for the portion of the property that was in the flood plain. Appellee conceded that he did not attempt to negotiate either offer. Neither Carothers nor his principal, Loh, testified whether they would have accepted a modified arrangement regarding the Westheimer property.

PLAINTIFFS' ORIGINAL PETITION - Page 060

The evidence further showed that, in July 1978, U.S. Homes offered $1.5 million for the Pasadena property, and later raised that offer to $1.64 million. Appellee testified he rejected this offer because it was not a cash offer. No representative from U.S. Homes testified. Therefore, there is no evidence that, had appellee negotiated, U.S. Homes would have accepted a modified arrangement regarding the Pasadena property. Appellants' expert, Lucian Morrison, testified that appellee should have responded to the offers and negotiated for different terms than those in the original offers. Morrison did not state that appellee should have accepted the original offers from U.S. Homes or Carothers.

[19]   Texas courts have long held that unaccepted offers to purchase property are no evidence of market value of property. *See Hanks v. Gulf, Colorado & Santa Fe Ry. Co.,* 159 Tex. 311, 320 S.W.2d 333, 336–37 (1959); *Southwestern Bell Tel. Co. v. Wilson,* 768 S.W.2d 755, 762 (Tex.App.—Corpus Christi 1988, writ denied). The courts have found this evidence uncertain and speculative. *See Hanks,* 320 S.W.2d at 337. Evidence of an unaccepted offer does not establish the good faith of the person making the offer. *See id.*

If unaccepted offers are too uncertain to serve as proof of the market value of a parcel of property, they are likewise too uncertain to serve as proof of the dollar amount of proceeds appellee would have obtained if he had sold the two properties on the dates found by the jury. Because the jury was advised to find a month and year when the properties should have been sold, the jury necessarily focused on the dates of specific offers and unaccepted offers are no evidence of the dollar amount of proceeds appellee would have received had he sold the properties. Accordingly, we find no error by the trial court in disregarding the jury's answers to questions 1(a), 1(b), 3(a), and 3(b). Having found no error in the trial court's actions, we need not reach appellee's cross-point.

## Removal of Appellee as Executor and Trustee

[20]   Appellants next challenge the trial court's refusal to remove appellee as executor and trustee. Appellants also complain of the trial court's refusal to submit requested questions relating to removal.

Appellants initially raise an issue of statutory construction. Appellants contend that, because the supreme court has construed section 113.082 of the Trust Code as mandatory in nature, we should likewise construe section 149C of the

Probate Code as mandatory because the language in these two statutes is similar. Section 149C of the Probate Code states that a trial court may remove an independent executor on the following grounds:

(1) the independent executor fails to return within ninety days after qualification, unless such time is extended by order of the court, an inventory of the property of the estate and list of claims that have come to his knowledge;

(2) sufficient grounds appear to support belief that he has misapplied or embezzled, or that he is about to misapply *786 or embezzle, all or any part of the property committed to his care;

(3) he fails to make an accounting which is required by law to be made;

(4) he fails to timely file the notice required by Section 128A of this code;

(5) he is proved to have been guilty of gross misconduct or gross mismanagement in the performance of his duties; or

(6) he becomes an incapacitated person, or is sentenced to the penitentiary, or from any other cause becomes legally incapacitated from properly performing his fiduciary duties.

TEX. PROB.CODE ANN. § 149C (Vernon Supp.2000).

Section 113.082 of the Property Code governs removal of a trustee. This section states a court may remove a trustee and deny part or all of the trustee's compensation if:

(1) the trustee materially violated or attempted to violate the terms of the trust and the violation or attempted violation results in a material financial loss to the trust;

(2) the trustee becomes incompetent or insolvent; or

(3) in the discretion of the court, for other cause.

TEX. PROP.CODE ANN. § 113.082(a) (Vernon 1995).

In reviewing a trial court's removal of a trustee under a prior version of section 113.082, the supreme court held that removal was not discretionary with the trial court, despite the use of the word "may." *See Akin v. Dahl,* 661 S.W.2d 911, 913 (Tex.1983). Because the supreme court has found removal mandatory under section 113.082,[4] appellants argue removal

should also be mandatory under section 149C. Absent any clear directive from the supreme court, however, we decline appellants' invitation to construe the clear language of section 149C to find that removal of an executor is mandatory.

### 1. Removal as Executor

[21] Appellants contend the trial court's decision not to remove appellee as executor constituted an abuse of discretion because the evidence shows appellee did not timely file an inventory, misapplied property committed to his care, failed to timely file a proper accounting, and was found to have breached his fiduciary duty in numerous respects. A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *See Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997).

Gross misconduct or gross mismanagement is a ground for removal of an executor. *See* TEX. PROB.CODE ANN. § 149C (Vernon Supp.2000). In *Geeslin v. McElhenney,* 788 S.W.2d 683 (Tex.App.—Austin 1990, no writ), the court reasoned that the statutory terms "gross mismanagement" and "gross misconduct" do not encompass ordinary negligence. Nonetheless, the court recognized that an executor owes the duties of a trustee:

> He holds property interests, not his own, for the benefit of others. He manages those interests under an equitable obligation to act for the others' benefit and not his own. He is a "fiduciary" of whom the law requires an unusually high standard of ethical or moral conduct in reference to the beneficiaries and their interests. His "duties" are more than the ordinary "duties" of the marketplace. They connote fair dealing, good faith, fidelity, and integrity. He may have additional *787 duties that he would not have in an ordinary business relation—a duty of full disclosure, for example, and a duty not to use the fiduciary relationship for personal benefit except with the full knowledge and consent of the beneficiaries. "It is against public policy to allow persons occupying fiduciary relations to be placed in positions in which there will be constant danger of a betrayal of trust by the vigorous operation of selfish motives."

Thus, the statutory criteria ("gross mismanagement" and "gross misconduct") are necessarily elastic. They must be sufficiently narrow to exclude ordinary negligence, yet sufficiently broad to include a fiduciary's breach of his

higher and additional duties, some of which might not even exist absent the fiduciary relationship.

*Id.* at 684–85. The court concluded that gross misconduct or mismanagement, at a minimum, includes: "(1) any willful omission to perform a legal duty; (2) any intentional commission of a wrongful act; and (3) any breach of a fiduciary duty that results in actual harm to a beneficiary's interest." *Id.* at 685 (emphasis omitted).

In determining whether the trial court abused its discretion, the *Geeslin* court held there were seven legally relevant factors to consider:

> (1) the higher quality of ethical and moral conduct implicit in Geeslin's fiduciary status;
>
> (2) the degree of harm sustained by the beneficiaries' interest, owing to Geeslin's conduct;
>
> (3) the public policy in favor of independent administration, due to the salutary purposes served by that method of administration;
>
> (4) the sufficiency of a bond to protect the beneficiaries' interest if a bond is given under section 149 of the Probate Code;
>
> (5) the complexity of the estate;
>
> (6) whether Geeslin's acts and omissions resulted from professional advice, or whether they occurred in the face of such advice; and
>
> (7) the distinction between willful conduct and inadvertent acts and omissions generally.

*Id.* In applying these factors, the *Geeslin* court upheld the trial court's removal of the executor because (1) Geeslin knew about an additional estate tax liability, and did not act to limit the interest and penalty, but paid himself commissions and paid other estate obligations; and (2) Geeslin used estate funds to pay pension-plan liabilities and used estate funds to make terminating distributions to pension-plan participants. *Id.* at 686–87. The court noted that Geeslin commingled funds despite warnings from his attorney and accountant that commingling might be prohibited. *See id.* at 687.

Appellee claims appellants misread *Geeslin* and that it does not hold the trial court may remove an executor for breach of a fiduciary duty that results in actual harm. Indeed, appellee argues that, because *Geeslin* does not so hold, the

trial court properly denied appellants' requested questions. Appellee reasons that if a breach of duty resulting in harm were sufficient to support removal, any minor breach could constitute gross misconduct. We disagree with appellee's reasoning. Although *Geeslin* does state that a breach of fiduciary duty resulting in actual harm to a beneficiary's interest may be sufficient to constitute gross misconduct, this holding is tempered by the application of seven factors for the court to consider in determining whether a breach of fiduciary duty resulting in harm should result in removal. *See id.* at 685. We believe appellee's fears *788 about removal for minor infractions are unfounded. Consideration of the seven factors would, in our opinion, allow a trial court to determine whether the breach of fiduciary duty is of sufficient magnitude to merit removal of the executor.

We also disagree with appellee's statement that the trial court denied appellants' requested question 11 because he disagreed with appellants' interpretation of *Geeslin*. Appellants submitted the following question: "Did Ronald Lee grossly mismanage any part of the property committed to his care as executor?" In refusing to submit these questions, the trial judge stated:

> THE COURT: The instructions and questions submitted as Plaintiff's A through F are denied. I will say on the record what I have said off the record, and that is that there's a finding of either gross negligence or a breach of fiduciary duty and damage. I would find that under the Probate Code to be grounds for removing the trustee, anyway. And so I don't think those questions, those particular ones, are necessary.

When denying appellants' requested question, the trial judge stated the question was unnecessary because the removal question could be answered from the jury's responses to questions regarding breach of fiduciary duty or gross negligence. The trial judge's statement is consistent with our interpretation of *Geeslin*.

Based on *Geeslin*, the trial court could have considered the jury's findings regarding breaches of fiduciary duty in making his decision regarding removal, either as executor or as trustee. The jury's failure to find gross negligence does not,

as appellee strongly argues, preclude removal, but we may consider it in reviewing the trial court's ruling.

The evidence showed, and appellee admits, he did not file an accounting in a timely manner. The jury found breaches of fiduciary duty by appellee in the failure to sell the Westheimer property, failure to sell the Pasadena property, in the mismanagement of the River Bend Farm and Cap Rock Ranch, and in the expenditure of estate funds on the attempted Knollwood development. Because we have upheld the trial court's decision to disregard the jury's findings relating to the Westheimer and Pasadena properties, the court could not consider these breaches of duty in considering whether to remove appellee as executor. As to the findings regarding River Bend Farm and Cap Rock Ranch, the jury only found damages to the estate of $1.00 for each. As to the expenditure of estate funds with respect to Knollwood, the jury found damages of $840,000. The jury also found unreasonable fees of $2.2 million.

Because there were findings of breaches of fiduciary duty and substantial actual damages, we must determine whether, in light of the seven *Geeslin* factors, the trial court abused its discretion in refusing to remove appellee as executor. We begin with the overall consideration that appellee's position as executor, being fiduciary in nature, requires that we hold appellee to a higher ethical and moral standard. This consideration must be tempered, however, by consideration of the public policy in favor of independent administration and the undisputed complexity of this estate. Of equal importance, are the substantial damages to the beneficiaries' interest. The damages for excessive fees and for the failed Knollwood development total more than $3 million. Appellee did not consult professionals with respect to the amount of fees he took, but he did consult some professionals concerning the Knollwood development. Indeed, many of the expenses involved with Knollwood are those *789 of professionals appellee consulted. Finally, we must consider whether appellee's actions were willful or inadvertent. The jury did not find that appellee's actions constituted gross negligence. Nonetheless, the evidence does not indicate that appellee's taking of an excessive fee or his excessive expenditures on the Knollwood development were merely inadvertent acts.

[22] [23] Although the trial judge is given discretion by statute to determine whether an executor's actions rise to the level of gross misconduct, this discretion is not unlimited. An abuse of discretion occurs when the trial court makes

a legally unreasonable determination given the factual-legal context in which it was made. *See Landon v. Jean-Paul Budinger, Inc.,* 724 S.W.2d 931, 939 (Tex.App.—Austin 1987, no writ). In other words, the trial court's determination is legally unreasonable if the court failed to consider a fact shown in the evidence that was legally relevant. *See id.* at 939-40.

In this case, we cannot say that the trial court necessarily failed to consider any of the *Geeslin* factors. While we may not have reached the conclusion the trial court made in light of the factors, this is not the standard. Having considered the statute, the *Geeslin* factors, and the evidence, we cannot say the trial court abused its discretion in refusing to remove appellee as executor.

### 2. Removal as Trustee

Grounds for removal of a trustee under section 113.082 include a material violation or an attempt to violate the terms of the trust that results in a material financial loss to the trust. *See* TEX. PROP.CODE ANN. § 113.082(a)(1) (Vernon 1995). Appellants requested a question (question 13) very similar to the language of the statute: "Did Ronald Lee grossly mismanage or materially violate the terms of the Article IV Trust resulting in a material financial loss to that trust?" The trial judge refused to submit appellants' requested question because the judge believed he could make the determination of mismanagement or material violations from the submitted questions regarding breaches of fiduciary duty and gross negligence.[5] Appellants claim the refusal to submit requested question 13 was reversible error.

[24] [25] [26] [27] [28] Rule 278 provides that the court must submit questions raised by the written pleadings and evidence. *See* TEX.R. CIV. P. 278. *See also Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992) (interpreting Rule 278 as a nondiscretionary directive). The decision whether to submit a particular instruction or definition is reviewed for an abuse of discretion. *See State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451 (Tex.1997). To determine whether an alleged error in the charge is reversible, the reviewing court must consider the pleadings, the evidence, and the charge in its entirety. *See Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986). As to instructions and definitions, the essential question is whether the instruction aids the jury in answering the questions. *See Harris v. Harris,* 765 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1989, writ

denied). *790 An instruction is proper if it assists the jury, is supported by the pleadings or evidence, and accurately states the law. *See Perez v. Weingarten Realty, Investors,* 881 S.W.2d 490, 496 (Tex.App.—San Antonio 1994, writ denied). Whether terms are properly defined or the instruction properly worded is a question of law reviewable de novo. *See M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 631 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Error is reversible only if, when viewed in light of the totality of the circumstances, the refusal to submit a question or instruction probably caused the rendition of an improper judgment. *See St. James Transp. Co. v. Porter,* 840 S.W.2d 658, 664 (Tex.App.—Houston [1st Dist.] 1992, writ denied); TEX.R.APP. P. 44.1(a)(1).

[29] [30] Because appellants pled for removal of appellee as trustee under section 113.082, and presented evidence of actions the jury found to be breaches of fiduciary duty, we hold that the issue of removal under the statute was a valid theory raised by the pleadings and evidence. Although appellants requested a question regarding a statutory ground for removal, appellee claims appellants "are not true to the record when they tell this Court that they asked the trial court to submit a question to the jury in language substantially identical to the specific statutory ground for removal of trustee under § 113.082...." Appellee argues that requested question 13 would have negated the statutory requirement of a material violation giving rise to a material financial loss by permitting the jury to answer "yes" if it found any breach of fiduciary duty resulting in harm or a material violation resulting in material harm. We disagree.

Requested question 13 asked the jury to determine whether appellee grossly mismanaged or materially violated the terms of the Article IV Trust resulting in a material financial loss to that trust. The instruction to that question stated: "You are instructed that 'gross mismanagement' means any breach of a fiduciary duty that results in actual harm to a beneficiary's interest." Rather than appellee's more tortured construction of this question, we read this question to allow the jury to answer "yes" if the jury found a material financial loss suffered by the trust as a result of either: (1) a breach of fiduciary duty that resulted in actual harm; or (2) a material violation of the Article IV Trust. In other words, we believe the question presents "gross mismanagement" and "material violation of the Article IV Trust" as the two types of actions by a trustee that could result in a material financial loss to the trust. Therefore, this question substantially tracks the language of section 113.082.

In reviewing appellee's brief, we note that some of appellee's defensive arguments tend to support appellants' claim that the trial court should have submitted the requested question 13. Appellee argues in his brief that "whether a breach of duty is a 'material violation' and whether a financial loss is 'material' are necessarily fact questions...." Appellee continues, "the finding that expenditures on Knollwood were $840,000 too much cannot substitute for the missing fact finding that those expenditures constituted a material violation resulting in a material loss." As to the executor's fee, appellee observed that fact issues as to materiality of the breach and the loss are not conclusively established. As to the late filing of the inventory or the delay in providing an accounting, appellee reasons that, even if these items were undisputed, they "cannot substitute for the missing fact finding that any such breaches constituted a material violation causing any material loss."

*791 [31] [32] Nonetheless, we believe the trial judge's reasoning was correct when he stated he could determine removal from jury answers regarding breach of fiduciary duty or gross negligence. We agree with the trial court that breaches of fiduciary duty can constitute material violations of the trust. Furthermore, we believe that jury awards of damages for breaches of fiduciary duty can constitute a material financial loss to the trust. Accordingly, we find no error by the trial court in refusing to submit requested question 13.

Even without submission of requested question 13, there are jury findings of breach of duty that the trial court should have found to be material violations of the trust. These include the jury's finding of breach of fiduciary duty with respect to the expenditures on the Knollwood development and the taking of an excessive fee. There are also jury findings of substantial damages, including $840,000 for Knollwood expenditures, and $2.2 million in excessive fees, that constitute, as a matter of law, material financial losses to the trust.

Appellants argue that removal is mandatory if there is a material violation resulting in a material financial loss to the trust. Indeed, the supreme court appears to hold that removal is not discretionary. See Akin v. Dahl, 661 S.W.2d 911, 913 (Tex.1983). Appellee rejects this interpretation of Akin and claims that Akin merely notes, in dicta, that removal is mandatory for an enumerated statutory ground. We are unpersuaded that we may ignore the court's holding as merely dicta.

In Akin, the trial court had removed the trustee pursuant to jury findings that the trustee had developed such hostility toward certain beneficiaries that his decisions as trustee in administering the trust funds would probably be influenced adversely to those beneficiaries' interests. 661 S.W.2d at 912. There was also a finding that the trustee had acted improperly with trust funds. See id. at 913. The court of appeals reversed, holding that removal was not warranted. See id. at 912. In the supreme court, a beneficiary argued that former section 39 of the Texas Trust Act (now section 113.082)[6] allowed removal of a trustee to be discretionary and that the appropriate standard of review was the "arbitrary and unreasonable" standard. See id.

Although the former statute provided (and the current statute continues to provide) that a trustee may be removed for a ground specified in the statute (material violation of trust resulting in material financial loss, incompetence, or insolvency) or "for other cause, in the discretion of the court having jurisdiction," the Akin court found that this statute "does not make removal of a trustee a discretionary act on the part of the trial court and hence subject upon review to the 'arbitrary and unreasonable' standard." See id. The court observed that the portion of the statute allowing removal for other causes "in the discretion of the court having jurisdiction," was meant to insure that the grounds of removal were not expressly limited to those enumerated, but may include others that the trial court, in its discretion, deems proper. See id.

Because no issue was submitted to the jury regarding improper conduct or mismanagement by the trustee, and such conduct was not established as a matter of law, the Akin court found that removal for mismanagement of trust funds was not *792 warranted. See id. As for the jury findings regarding trustee hostility, the court first noted that ill will or hostility, standing alone, was an insufficient ground for removal. See id. The court then stated:

> Article 7425b–39 [now section 113.082] of the Texas Trust Act sets out circumstances which warrant the removal of a trustee from office. Should the trier of fact affirmatively find that one of the enumerated circumstances has occurred, the trustee will be removed. Additionally, should the trier of fact find that hostility, ill

PLAINTIFFS' ORIGINAL PETITION - Page 065

will, or other factors have affected the trustee so that he cannot properly serve in his capacity, the trustee *will be removed.*

*See id.* at 914 (emphasis added). We understand this passage to mean that a trustee will be removed if the trier of fact finds the evidence shows the trustee has committed one of the enumerated acts or one of the acts, not enumerated, but which the trial court, in its discretion, deemed a proper ground for removal.

Although the jury in *Akin* had found the trustee's hostility "probably" would affect his performance, the supreme court held this finding was insufficient to support removal. *See id.* Instead, the court held that there had to be a finding that the trustee's hostility *does or will* affect his performance as a trustee. *See id.* Accordingly, the court's discussion of removal for an enumerated ground could be construed to be dicta. Nonetheless, the court also states that a trustee "will be removed" for hostility, a ground not enumerated, but found by the trial court in its discretion to be a proper ground for removal. *See id.*

By saying "will be removed," rather than "may be removed," the court construes the statute to be mandatory and not discretionary. Although the court's statement was unnecessary to the holding, we construe this statement to be judicial dictum deliberately made for guidance of the bench and bar and, therefore, binding on lower courts. *See Ex parte Harrison,* 741 S.W.2d 607, 609 (Tex.App.—Austin 1987, orig. proceeding). Although we disagree with the *Akin* court's construction because the plain language of the statute is discretionary in nature, we are constrained to follow supreme court precedent.

[33] Appellants also argue appellee has a conflict of interest that requires his removal. The alleged conflict arises from appellee's opposition to appellants' motion for judgment and his attempt to reduce the trust's judgment. Such a conflict could arise anytime a beneficiary brought suit for damages against a trustee. Therefore, we decline to find a conflict of interest under these circumstances. Because we find that the breaches of duty found by the jury and the total of $3 million in damages constitute a material violation of the trust resulting in a material financial loss, we hold the trial court had a mandatory duty to remove appellee as trustee. Accordingly, the trial court erred in refusing to remove appellee as trustee.

## Bad Faith Defense

[34] Appellants next claim the trial court erred in not requiring appellee to bear his own attorney's fees and costs because the jury found appellee defended the lawsuit in bad faith. Section 149C permits an independent executor to recover necessary expenses, including attorney's fees, if he or she defends an action for removal in good faith. TEX. PROB.CODE ANN. § 149C (Vernon 1980). In granting appellee's motion for judgment notwithstanding the verdict, the trial court disregarded the answer to question 8, finding that appellee defended the suit in bad faith. In a cross-point, appellee claims there was legally and factually insufficient *793 evidence to support the jury's finding that he defended this lawsuit in bad faith.

Appellee argues that, even if there is a finding of bad faith defense, an executor is entitled to attorney's fees where he prevails against attempted removal. In support of this argument, appellee cites *Miller v. Anderson,* 651 S.W.2d 726 (Tex.1983). In *Miller,* the court was construing section 243 of the Probate Code, which allows an executor to recover from the estate his necessary expenses, including reasonable attorney's fees, when the executor defends the will in good faith, and "with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not...." TEX. PROB.CODE ANN. § 243 (Vernon Supp.2000). The supreme court upheld the trial court's award of attorney's fees to the executor even though there was no affirmative finding of good faith. *See* 651 S.W.2d at 728. The court observed that in prior cases, where the wills were denied probate, a showing of good faith and just cause was necessary to show a benefit to the estate compensable under section 243. *See id.* (citing *Russell v. Moeling,* 526 S.W.2d 533 (Tex.1975) and *Huff v. Huff,* 132 Tex. 540, 124 S.W.2d 327 (Tex.1939)). The *Miller* court found that a benefit to the estate was proven when the will was admitted to probate.[7] 651 S.W.2d at 728.

Section 243 is phrased similarly to section 149C, which provides that an executor "who defends an action for his removal in good faith, whether successful or not, shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees...." TEX. PROB.CODE ANN. § 149C(c) (Vernon 1980). Although the language of the two statutes is somewhat similar, we are unconvinced that the holding in *Miller* applies to the facts of this case. In *Miller,* there was no finding of good faith and the

supreme court held that the lack of this finding did not prevent recovery of attorney's fees. 651 S.W.2d at 728. Holding that a finding of good faith is unnecessary under certain circumstances does not inescapably lead to the conclusion that an affirmative finding of bad faith should be ignored. We cannot say that, based on its holding in *Miller,* the supreme court would disregard an affirmative jury finding of bad faith. Although appellee was successful in avoiding removal as an executor, removal was a discretionary determination made by the trial judge. In addition to finding many breaches of fiduciary duty by appellee, the jury found that appellee had defended the lawsuit in bad faith.

[35] Although a trustee may also be removed under section 113.082 of the Property Code, there is no "good faith" requirement in the statute allowing recovery of fees. Section 114.064 provides that the court "may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just." TEX. PROP.CODE ANN. § 114.064 (Vernon 1995). Thus, the grant or denial of attorney's fees to a trustee is within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's judgment absent a clear showing that the trial court abused its discretion by acting *794 without reference to any guiding rules and principles. *See Lyco Acquisition 1984 Ltd. v. First Nat'l Bank,* 860 S.W.2d 117, 121 (Tex.App.—Amarillo 1993, writ denied). Because removal of a trustee does not require a good faith finding, the jury question in the instant case only concerns appellee's entitlement to recover attorney's fees as an executor.

As stated previously, a trial court may disregard a jury's finding if there is no evidence to support the jury's finding. *See Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986). In reviewing the grant of a motion for judgment notwithstanding the verdict, the reviewing court must review all testimony in a light most favorable to the finding, considering only the evidence and inferences that support the finding and rejecting the evidence and inferences contrary to the finding. *See Navarette v. Temple Indep. Sch. Dist.,* 706 S.W.2d 308, 309 (Tex.1986). If there is more than a scintilla of competent evidence to support the jury's finding, then the judgment notwithstanding the verdict will be reversed. *See Mancorp v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990).

In support of the jury finding of bad faith defense against removal, appellants cite generally to the five weeks of testimony regarding appellee's conduct, including the amount of the executor fee taken, the estate's need for cash at the time appellee took the fee, the failure to provide a proper accounting, the use of estate funds to pay personal expenses, and the failure to transfer the estate's assets to its beneficiary until 19 years after his mother's death. Although this testimony supports liability as to breach of fiduciary duty, it does not necessarily support a finding that appellee defended this lawsuit in bad faith. Rather, to support the jury's finding, there must be some evidence that appellee's defense against removal was in bad faith.

Although the jury charge phrased the "good faith" requirement negatively, we construe the jury's affirmative finding to be a finding that appellee did not defend against removal in good faith. The jury charge did not define "bad faith." The statute, which includes the "good faith" requirement, also contains no definition of "good faith." Furthermore, we have discovered no case law addressing the meaning of "good faith" under this statutory provision.

In different contexts, "good faith" can be a subjective or an objective standard. For example, under the Texas Business and Commerce Code, "good faith" is defined as honesty in fact. *See* TEX. BUS. & COM.CODE ANN. § 1.20(19) (Vernon Supp.2000). The Texas Supreme Court has held that the test for good faith is the actual belief of the party and not the reasonableness of that belief. *See La Sara Grain v. First Nat'l Bank,* 673 S.W.2d 558, 563 (Tex.1984); *Holeman v. Landmark Chevrolet Corp.,* 989 S.W.2d 395, 399 (Tex.App.—Houston [14th Dist.] 1999, writ denied). Unlike this subjective standard, the courts have adopted an objective standard where official immunity is asserted. *See City of Lancaster v. Chambers,* 883 S.W.2d 650, 656 (Tex.1994). The supreme court observed that this test, like the test under federal immunity law, is one of objective reasonableness, without regard to whether the official acted with subjective good faith. *See id.* This objective standard provides that an officer acts in good faith in a pursuit case if "a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit." *Id.*

Under other circumstances, a combination of subjective and objective standards has been found appropriate. In the context *795 of a whistle blower action, the supreme court considered the public and private concerns involved and the subjective and objective standards of "good faith," and decided on a combination of the two standards. *See*

*Wichita County v. Hart*, 917 S.W.2d 779, 784 (Tex.1996). The court held that "good faith" in the whistle blower context means that: "(1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Id.* In reaching this holding the court considered the United States Supreme Court's discussion of objective and subjective standards for "good faith" in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

In *Wood*, the Court addressed whether an objective or subjective standard should apply in a section 1983 action where the school official claimed immunity. *See id.* at 314–15, 95 S.Ct. 992. The court held:

> The disagreement between the Court of Appeals and the District Court over the immunity standard in this case has been put in terms of an "objective" versus a "subjective" test of good faith. As we see it, the appropriate standard necessarily contains elements of both. The official himself must be acting sincerely and with a belief that he is doing right, but an act ... can be no more justified by ignorance or disregard of settled, indisputable law ... than by the presence of actual malice.

*Id.* at 321, 95 S.Ct. 992.

The standards referenced in Rule 13 are particularly illuminating. Rule 13 provides that an attorney or party's signature on a pleading constitutes a certificate by them that "to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX.R. CIV. P. 13. Under this rule, courts presume pleadings are filed in good faith and will not impose sanctions absent good cause, the particulars of which must be set out in the order. *See id.* "Groundless," in the context of Rule 13, means "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.*

[36]   In the context of an action to remove an executor, we believe we must balance the interests of the beneficiaries with the public policy in favor of independent administration. We

must protect the beneficiaries' interest in the estate proceeds. At the same time, we must preserve an executor's ability to fulfill the obligations of the position, exercising judgment in handling the often complicated decisions involved in administration of an estate. Accordingly, we believe a fair balancing of these interests is achieved by adopting a standard of good faith that combines the subjective and objective tests. We hold that an executor acts in good faith when he or she subjectively believes his or her defense is viable, if that belief is reasonable in light of existing law. This standard should protect all but the plainly incompetent executors or those who willfully breach their fiduciary duties. [8]

The record contains much evidence regarding appellee's breaches of duty, but appellants do not point to, and we have not located, any evidence showing that appellee's *796 *defense* against removal was made in bad faith. We have located no evidence that appellee subjectively believed his defense was in bad faith and no evidence that his defense had no reasonable or arguable basis. Accordingly, the trial court properly disregarded the jury's finding of bad faith and allowed appellee to recover his attorney's fees.

### Refusal to Require Reimbursement for Appellants' Attorney's Fees

[37]   In a separate issue, appellants claim the trial court should have required appellee to reimburse the Article IV Trust for appellants' attorney's fees and costs incurred in the prosecution of this case. Section 245 of the Probate Code provides:

> When the personal representative of an estate or person neglects the performance of any duty required of him, and any costs are incurred thereby, or if he is removed for cause, he and the sureties on his bond shall be liable for costs of removal and other additional costs incurred that are not authorized expenditures, as defined by this code, and for reasonable attorney's fees incurred in removing him and in obtaining his compliance regarding any statutory duty he has neglected.

TEX. PROB.CODE ANN. § 245 (Vernon Supp.2000). The courts have held that this statute allows the beneficiaries to recover the attorney's fees they incurred in removing an executor in recovering the effects of an executor's neglect of his statutory duties. *See Barnett v. Barnett*, 985 S.W.2d 520, 535 (Tex.App.—Houston [1st Dist.] 1998, writ granted); *Lawyers Sur. Corp. v. Larson*, 869 S.W.2d 649, 653 (Tex.App.—Austin 1994, writ denied).

[38]    Appellee argues that appellants are not entitled to recovery of fees under section 245 because they requested no finding by the jury or the trial court as to what amount of attorney's fees were incurred in obtaining appellee's compliance with any statutory duty he neglected or in removing him as executor. Case law has held that a party seeking recovery under section 245 must present evidence to enable the court to determine what fees are recoverable by the estate. *See Larson*, 869 S.W.2d at 652; *Fillion v. Osborne*, 585 S.W.2d 842, 845 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). The parties stipulated to reasonable and necessary attorney's fees and thus, no request for a finding by the jury or trial court was required.

[39]    Appellants respond that neither evidence nor segregation of fees was required. A party is not required to segregate fees unless the party asserts multiple claims, some of which entitle the party to recovery of fees and some of which do not. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex.1997). Appellants argue that, because all of their claims concerned alleged mismanagement of the estate and sought removal of appellee as executor and trustee, there were no claims for which appellants were not entitled to recovery of fees.

The statute allows the estate to recover attorney's fees expended for the following two actions: (1) removing the executor, and (2) compelling compliance with statutory duties. *See* TEX. PROP.CODE ANN. § 245 (Vernon Supp.2000). Statutory duties include: (1) giving notices required by statute; (2) approving, classifying, paying, or rejecting claims against the estate; and (3) delivering to those entitled exempt property and allowances for support. *See id.* at § 146. An executor is also charged with the duty to use reasonable care in that he must care for the property of the estate as a prudent man would take of his own property. *See id.* at § 230.

*797    [40]    All of appellants claims for damages involved allegations of breach of fiduciary duty and, therefore, these were claims of violations of appellee's statutory duty of care. Appellants also sought appellee's removal as executor and as trustee. Although fees may not be recovered under section 245 for seeking removal of appellee as trustee, our review of the record shows that this effort and the facts supporting this claim were inextricably intertwined with the facts regarding removal as executor and for breaches of duty. There is an exception to the duty to segregate when the attorney's fees are rendered in connection with claims arising out of the same transaction and when the claims are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex.1991). Because we find the prosecution of the claim to remove appellee as trustee was inextricably intertwined with the prosecution of appellants' other claims, we find this case falls within the recognized exception to segregation. Therefore, the trial court erred in refusing to apply section 245 to require appellee to reimburse the estate for the fees incurred by appellants.

On rehearing, both parties ask that we also rule with respect to appellate attorney's fees. In the judgment, the trial court awarded both parties $300,000 in fees for appeal to the court of appeals and $100,000 for seeking review in the Texas Supreme Court. These fees were to be paid by the Trustee for the Article IV trust. Appellants ask that we hold that appellee must also reimburse the Article IV trust for the awards of appellate attorney's fees to appellants.

As discussed above, section 245 of the Probate Code provides that an estate may recover reasonable attorney's fees incurred in removing the executor and in obtaining the executor's compliance regarding any statutory duty he neglected. TEX. PROB.CODE ANN. § 245 (Vernon Supp.2000). Regarding appellate attorney's fees, appellee raises the same complaint he raised regarding trial court fees: Appellee claims that appellants did not segregate their fees between claims for which reimbursement is available under section 245 and claims for which reimbursement is not available. We have already held that segregation was not required because the claims were intertwined. This holding extends to appellate attorney's fees. Accordingly, we hold that, under section 245, appellee must reimburse the Article IV trust, and not appellants individually, for appellants' stipulated appellate attorney's fees.

Both parties agree that any award of attorney's fees should bear postjudgment interest at 10% per annum, compounded annually (a) from the date of judgment as to the stipulated

$1.5 million in trial court attorney's fees, (b) from the date of this courts' judgment as to fees for appeal to this court, and (c) from the date of the supreme court's ruling on petition for review as to the award for fees on appeal to the supreme court.

### Exclusion of Evidence of Appellants' Damages Model

Appellants next challenge the trial court's exclusion of evidence of appellants' damage model that was designed to illustrate what a prudent executor would have done with the sale proceeds from the U.S. Home and Carothers contracts. Because we have held that the evidence regarding the unaccepted offers by U.S. Homes and Carothers was speculative and constituted no evidence of damages for breach of fiduciary duty to sell the properties, we need not address this issue.

### *798 Refusal to Award Damages Directly to Susan Lee

[41] Appellants contend that, because Susan Lee has a $1/6$ beneficiary interest in the Article IV trust income, she was entitled to a recovery of $1/6$ of the judgment damages representing trust income. In support of this argument, appellants cite Comment H to section 282[9] of the Restatement of Trusts:

> ***Disposition of the Proceeds Recovered.*** Where the trust is of such a character that if the trustee had brought an action against the third person, the proceeds would be immediately payable to the beneficiary, the beneficiary is entitled to keep whatever he recovers from the third person under the rules stated in Subsection (2) and (3).

RESTATEMENT (SECOND) OF TRUSTS § 282 cmt. H (1959). Section 282, however, addresses when a beneficiary may maintain a suit against a third person. It does not concern suits by beneficiaries against the trustee. Accordingly, we do not find Comment H applicable.

Unless a trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary may only sue to compel the trustee to restore money to the trust. *See* RESTATEMENT (SECOND) OF TRUSTS § 198 & cmts. B–D (1959). Katherine Barnhart's will provided in Article IV that the trustee was to distribute equally to her children, and to the survivor between her children, "at least quarterly,

one-third (#) of the current net income of the trust, and to the extent such income is insufficient for the following purpose shall distribute currently such amounts from the remaining two-thirds ($2/3$) of such current net income as may be necessary and required to provide for the health, maintenance and support of [her children, or the survivor], taking into consideration the availability of funds from other sources." Thus, Susan Lee was entitled to one-half of the one-third (one-sixth), of current net income.

The statutory definition of income is the return derived from the use of principal. *See* TEX. PROP.CODE ANN. § 113.102(a) (Vernon 1995). Examples of income are rent on real property and interest on money lent. *See id.* Section 113.102 instructs the trustee to charge expenses against income in accordance with section 113.111. *See* TEX. PROP.CODE ANN. § 113.102(c) (Vernon 1995). Section 113.111 requires the trustee to charge against income all ordinary expenses incurred in administration, management, or preservation of trust property, reasonable allowances for depreciation on improvements, and, unless the court directs otherwise, court costs and fees on periodic judicial accountings and other judicial proceedings concerning the income interest. *See* TEX. PROP.CODE ANN. § 113.111 (Vernon Supp.2000).

The will gives appellant, Susan Lee, an interest in "current net income," not gross income. Therefore, she was entitled to any Article IV trust income, minus expenses as described in section 113.111. She was not entitled to trust income before deduction of expenses. Accordingly, the trial court properly awarded the damages to the Article IV trust and not to Susan Lee directly.

### Prejudgment Interest

#### 1. Simple or Compound Interest

[42] Appellants next complain that the trial court awarded prejudgment interest *799 at the rate of 10% per annum, computed as simple interest, when the award should be 10% per annum, compounded daily. Appellants contend that, because the claims in this case do not fall within any of the prejudgment interest statutes, the case is controlled by *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985), which provides for interest compounded daily.

Although we agree with appellants that prejudgment interest in this case is not controlled by statute, the case on which

appellants rely was overruled after appellants filed their brief. In *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 532 (Tex.1998), the supreme court held that prejudgment interest in cases controlled by common law is to accrue at the rate for postjudgment interest and it is computed as simple interest. Accordingly, the trial court properly computed the prejudgment interest in this case as simple interest.

**2. Accrual Date for Calculation of Prejudgment interest**

[43] In his first motion for rehearing, appellee claimed that prejudgment and postjudgment interest should be awarded on the $1.5 million in executor fees required to be reimbursed by appellee. Although appellee did not contest the imposition of prejudgment interest, he claimed that it should be awarded pursuant to *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex.1998). The parties disagreed on the date from which prejudgment interest should accrue. Appellants also complained that appellee had not preserved this issue for review because he did not raise this complaint either in the trial court or in his brief in this court.

[44] [45] We turn first to the preservation issue. A point of error not preserved is not before the appellate court for review. *Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex.1987). An assignment of error raised for the first time in an appellant's motion for rehearing is too late to be considered. *Washington v. Walker County*, 708 S.W.2d 493, 497 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

The trial court awarded prejudgment interest, according to the law in existence at that time, which held that prejudgment interest began to accrue six months from the date of the occurrence giving rise to the cause of action. *Cavnar*, 696 S.W.2d at 555. The prejudgment interest at issue here, however, does not concern the prejudgment interest on the trial court awards we have upheld. Instead, the prejudgment interest at issue here concerns interest on the $1.5 million this court is rendering in favor of appellants. An award of prejudgment interest on this new award of damages is an automatic legal consequence since appellants pled for prejudgment interest. Neither the award of prejudgment interest, nor the accrual date of this interest, required a point of error for preservation. Because the date of this new award implicates case law that succeeds *Cavnar*, we must consider whether the *Cavnar* rule regarding accrual of prejudgment interest applies.

[46] [47] "Prejudgment interest is 'compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment'." *Id.* at 528 (quoting *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985)). The two legal sources for an award of prejudgment interest are general principles of equity, and an enabling statute. *See Kenneco*, 962 S.W.2d at 528. Statutory provisions for prejudgment interest apply only to cases involving claims *800 of wrongful death, personal injury, property damage, and condemnation. *See* TEX. FIN.CODE ANN. §§ 304.102, 304.201 (Vernon Supp.2000). Because the claims in this case do not fall within the statutory provisions, an award of prejudgment interest in this case is governed by the common law. *See Kenneco*, 962 S.W.2d at 530.

[48] Appellants argue that prejudgment interest accrued from the dates Ronald Lee paid himself executor fees. Because Lee paid himself fees in a number of payments over a two-year period, appellants have provided a chart depicting the various payments and the amount of interest on each, with a total amount due of $2,051,311.79. Appellee disagrees with appellants' calculation and contends that appellants' argument is based on the approach described in the *Cavnar* case, in contravention to the more recent *Kenneco* case.

In *Kenneco*, the court held that, "under the common law, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed." *See id.* at 531. A " 'claim' is 'a demand for compensation or an assertion of a right to be paid'." *See id.* Appellee contends the first date he received notice of a claim with regard to executor fees paid, was the date suit was filed. We have not located in the record an earlier date of notice of a claim with respect to the executor fees.

[49] Appellants next argue that accrual of prejudgment interest under *Kenneco* would nullify appellee's duty of disclosure as a fiduciary. Appellants base this argument on the following premisses: (1) an executor owes a duty to disclose all material facts affecting the beneficiaries' rights, *see Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex.1996); and (2) courts have historically required breaching fiduciaries to pay prejudgment interest from the date the breaches occurred. *See, e.g., Ward v. Maryland Cas. Co.*, 140 Tex. 124, 166 S.W.2d 117, 119 (1942).

Despite the previous holdings that breaching fiduciaries must pay prejudgment interest from the date of breach, the *Kenneco*

court held that the rule it announced applied to all cases that do not fall within the statutory guidelines for prejudgment interest. *See* 962 S.W.2d at 531. By making no exception for breach of fiduciary claims, the supreme court impliedly overruled all cases contrary to *Kenneco.* Therefore, we are not persuaded to create an exception to the *Kenneco* rule in cases involving breaching fiduciaries.

We hold that the date of accrual of prejudgment interest on the $1.5 million award rendered by this court is July 28, 1993, the date of filing of Plaintiffs' First Amended Petition. The prejudgment interest on those trial court damage awards upheld by this court accrues as the trial court ruled, according to *Cavnar.*

The *Kenneco* court further held that prejudgment interest accrues at the rate for postjudgment interest and it is to be computed as simple interest. *See id.* at 532. The rate of interest is 10%. *See* TEX. FIN.CODE ANN. § 304.003 (Vernon Supp.2000).

Accordingly, we hold that appellants are entitled to prejudgment interest on the $1.5 million in excessive executor fees required to be reimbursed, at the rate of 10% per annum, computed as simple interest from the date of notice of the claim, July 28, 1993, to the day preceding entry of judgment, October 24, 1996. Appellants are entitled to postjudgment interest on this award calculated from the date of judgment, October 25, 1996.

### *801 Conclusion

We find the trial court erred: (1) in deducting $1.5 million from the jury's finding of excessive fees; (2) in refusing to remove appellee as trustee; and (3) in refusing to require appellee to reimburse the estate for appellants' attorney's fees. Accordingly, we (1) reverse the portion of the judgment awarding the Article IV trust $659,506.50 and render judgment that the Article IV trust recover $1,538,848.50

in excessive executor fees, in addition to the $659,506.50 previously awarded by the trial court, for a total award of $2,198,355.00 in excessive executor fees; (2) reverse the portion of the judgment denying plaintiffs' request to remove Ronald Lee as the Trustee of the Article IV trust and we render judgment removing Ronald Lee as Trustee of the Article IV trust; and (3) we order the following: (a) that Ronald Lee reimburse the Article IV trust for appellants' stipulated $1.5 million in trial court attorney's fees; (b) that Ronald Lee reimburse the Article IV trust for the appellants' stipulated $300,000 in appellate attorney's fees; (c) that, in the event either party appeals to the Texas Supreme Court, Ronald Lee shall reimburse the Article IV trust for appellants' stipulated $100,000 attorney's fees; (d) that the Article IV trust, on behalf of appellants, recover from appellee prejudgment interest on the $1,538,848.50 in excessive executor's fee awarded by this judgment at the rate of 10% per annum, computed as simple interest, from the date of notice of the claim, July 28, 1993, through the date preceding the day of entry of judgment, October 24, 1996; (e) that the Article IV trust, on behalf of appellants, recover postjudgment interest at the rate of 10% per annum, compounded annually, on the total of (i) the excessive executor fees awarded by this court ($1,538,848.50), (ii) the excessive executor fees awarded by the trial court ($659,506.50), and (iii) the prejudgment interest awarded on those amounts, from the date of the trial court's judgment, October 25, 1996; and (f) that appellee shall reimburse the Article IV trust for postjudgment interest at 10% per annum, compounded annually (i) from the date of the trial court's judgment as to appellants' $1.5 million in trial court attorney's fees, (ii) from the date of this court's judgment as to fees for appeal to this court, and (iii) from the date of the supreme court's ruling on petition for review as to the award for fees on appeal to the supreme court. We affirm the remainder of the judgment.

### All Citations

47 S.W.3d 767

Footnotes

\* Senior Chief Justice Paul C. Murphy sitting by assignment.

1 In his brief, appellee cited to *Arce v. Burrow,* 958 S.W.2d 239 (Tex.App.—Houston [14th Dist.] 1997, writ granted). Since submission of this case, the Texas Supreme Court has issued its opinion affirming in part, and reversing and remanding in part. *See Burrow v. Arce,* 997 S.W.2d 229 (Tex.1999).

2 This amount represents the estate tax cost of $660,000, less $144,087 the estate would have owed in interest if appellee had not paid himself $2.2 million of the total fee.

3   Appellee also cites *Deloitte & Touche v. Weller*, 1997 WL 572530 (Tex.App.—Amarillo 1997), *opinion withdrawn and superseded on rehearing*, 976 S.W.2d 212 (Tex.App.—Amarillo 1998, writ denied) The *Weller* opinion to which appellee cites was withdrawn on rehearing and the substitute opinion does not address the "benefits rule." *See Deloitte & Touche v. Weller*, 976 S.W.2d 212 (Tex.App.—Amarillo 1998, writ denied). Accordingly, we do not discuss this case.

4   We address the *Akin* holding in further detail later in this opinion.

5   In his response brief, appellee claims that the trial court "determined that 'cause' would exist to remove if the jury had found gross negligence." Appellee then states that appellants did not complain below and do not complain on appeal that gross negligence is not a legally valid basis for removal. Because the jury refused to find gross negligence, appellee reasons the trial court properly declined to remove appellee as trustee. Appellee misrepresents the trial court's determination. The trial court actually said he could find grounds for removal if there was a finding of *either* gross negligence or breach of fiduciary duty and damages.

6   The former statute has been rewritten upon codification to set out the grounds in an enumerated fashion; however, the language of the statute remains the same. *Compare* Act of April 14, 1993, 48th Leg., R.S., ch. 148, § 39, 1943 Tex. Gen. Laws 232, 246 (repealed) *with* TEX. PROP.CODE ANN. § 113.082 (Vernon 1995).

7   This holding seems to fly in the face of the plain language of the statute. The statute allows recovery of attorney's fees if the executor defends the will in good faith and with just cause, whether or not he or she is successful in admitting the will to probate. *See* TEX. PROB.CODE ANN. § 243 (Vernon Supp.2000). Although the recovery of fees is expressly not tied to success in admitting the will to probate, it is tied to good faith defense. By holding that a finding of good faith was inapplicable where the executor was successful in admitting the will to probate, the court ignored the statutory language and tied recovery of fees to success in admitting the will.

8   This is somewhat similar to the standard for official immunity, which has been held to protect "all but the plainly incompetent or those who knowingly violate the law." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir.1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

9   Appellants incorrectly cite to section 294, but 294 has no Comment H. Appellants apparently intended Comment H under section 282, which concerns suits in equity by beneficiaries.

---

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "E"

 

Est. K P L Barnhart, decd

137,506-402

597-70-20...

# MANDATE

## The Fourteenth Court of Appeals

### NO. 14-97-00162-CV

SUSAN CAMILLE LEE, INDIVIDUALLY, AND AS TRUSTEE OF THE ARTICLE V TRUST FOR THE BENEFIT OF SUSAN C. GIBSON, AND DERIVATIVELY ON BEHALF OF THE ARTICLE IV TRUST AND THE ESTATE OF KATHERINE PILLOT LEE BARNHART, AND SUSAN C. GIBSON, INDIVIDUALLY, AND DERIVATIVELY ON BEHALF OF THE ARTICLE IV TRUST AND THE ESTATE OF KATHERINE PILLOT LEE BARNHART, Appellants

V.

RONALD E. LEE, JR., INDIVIDUALLY, AS TRUSTEE OF THE ARTICLE IV TRUST, AND THE ARTICLE V TRUST FOR THE BENEFIT OF KATHERINE LEE, AND AS EXECUTOR OF THE ESTATE OF KATHERINE PILLOT LEE BARNHART, Appellee

Appeal from the Probate Court No. 2 of Harris County. (Tr. Ct. No. 137,506-402). Opinion delivered by Justice Hudson. Senior Chief Justice Murphy and Justice Anderson also participating. (Senior Chief Justice Paul C. Murphy sitting by assignment.)



TO THE PROBATE COURT NO. 2 OF HARRIS COUNTY, GREETINGS:

Before our Court of Appeals, on the 5th day of FEBRUARY, A.D. ..., the cause upon appeal to review or reverse your judgment was determined. Our Court of Appeals ... in ... these words:

This cause, an appeal from the judgment signed October 15, 1996, was heard on the transcript of the record. We have inspected the record and find the trial court erred as follows: (1) in deducting $1.5 million ... the jury's finding of excessive fees; (2) in refusing to reimburse appellants as Trustees ...; (3) in refusing to require appellee to reimburse the estate for appellants' attorney's ... We therefore order that that portion of the judgment is REVERSED and order ... and RENDER judgment that:

(1) the Article IV trust recover $2,196,... excessive executor fees;

(2) Ronald Lee is removed as Trustee of the Article IV trust;

(3) Ronald Lee reimburse the Article IV trust for appellants' stipulated $1.5 million in trial court attorney's fees.

Confidential information ... have been redacted from the document in compliance with the Public Information Act.

A Certified C...
Attest: 12/22/...
Stan Stanart, County Clerk
Harris County, ...

_____ Hastings
_____ Deputy



EXHIBIT A



(4) Ronald Lee reimburse the Article IV trust for the appellants' stipulated $1,500,000 in appellate attorney's fees.

(5) in the event either party appeals to the Texas Supreme Court, Ronald Lee shall reimburse the Article IV trust for appellants' stipulated $100,000 attorney's fees;

(6) the Article IV trust, on behalf of appellants, recover from appellee prejudgment interest on the $1,538,848.50 in excessive executor's fees awarded by this judgment at the rate of 10% per annum, computed in simple interest, from the date of notice of the claim, July 28, 1993, through the date preceding the day of entry of judgment, October 24, 1996;

(7) the Article IV trust, on behalf of appellants, recover prejudgment interest at the rate of 10% per annum, compounded annually, on the total of:

(a) the excessive executor fees awarded by this court ($1,538,848.50);

(b) the excessive executor fees awarded by the trial court ($659,506.30); and

(c) the prejudgment interest awarded on these amounts, from the date of the trial court's judgment, October 25, 1996;

(8) Ronald Lee shall reimburse the Article IV trust for postjudgment interest at 10% per annum, compounded annually;

(a) from the date of the trial court's judgment as to appellants' stipulated $1.5 million in trial court attorney's fees,

(b) from the date of this court's judgment as to fees for appeal to this court, and

(c) from the date of the supreme court's ruling on petition for review as to the award for fees on appeal to the supreme court.

Further, we find no error in the remainder of the judgment and order it AFFIRMED.

We order appellee, Ronald Lee Jr., individually, to pay all costs incurred by reason of this appeal.

We order this decision certified below for observance.

**WHEREFORE, WE COMMAND YOU** to observe the order of our said Court in this behalf and in all things have it duly recognized, obeyed and executed.

**WITNESS,** the HON. SCOTT BRISTER, Chief Justice of our Fourteenth Court of Appeals, with the Seal thereof affixed, at the City of Houston, _____ FEBRUARY – 8 2002 _____.

ED WELLS, Clerk

By _____

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest 12/22/2011
Stan Stanart, County Clerk
Harris County, Texas

Marisol Hastings
_____ Deputy

14TH Court of Appeals No. 14-97-00161-CV

Trial Court No. 137,506-401

Susan Candle Lee Et AL, Appellant

V.

Ronald K. Lee Et AL, Appellee

| BILL OF COSTS | AMOUNT | REMARKS |
|---|---|---|
| Filing Fee In Appellate Court | $ 50.00 | PAID |
| Clerk's Record Fee | 0.00 | UNKNOWN |
| Supplemental Clerk Record Fee | 0.00 | UNKNOWN |
| Reporter's Record Fee | 33,128.35 | UNKNOWN |
| Supplemental Reporter's Record Fee | | |
| TOTAL COSTS | 33,178.35 | |

I, ED WELLS, CLERK of the COURT OF APPEALS FOR THE FOURTEENTH SUPREME JUDICIAL DISTRICT of Texas, do hereby certify that the above and foregoing is a true and correct copy of the cost bill of this Court, showing the charges and payments, in the above numbered and styled cause, as same appears in this office.

IN TESTIMONY WHEREOF, witness my hand and seal of the COURT OF APPEALS FOR THE FOURTEENTH SUPREME JUDICIAL DISTRICT of Texas, at the City of Houston, this the 9th day of February 2011.

*Ed Wells*

ED WELLS, CLERK

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 2011
Stan Stanart, County Clerk
Harris County, Texas

*Marisol Hastings*

_____ Deputy



# EXHIBIT "F"

Cause No. 137506-403

| | | |
|---|---|---|
| Estate of Katherine Pillot Lee Barnhart, Deceased | § § § | In the Probate Court |
| | § | No. 2 of |
| Susan Camille Lee, et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | Harris County, Texas |
| Ronald E. Lee, Jr., et al, | § § | |
| Defendants. | § § | |

## APPLICATION TO APPROVE SETTLEMENT AGREEMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Applicant LEGACY TRUST COMPANY, in its capacity as the Court appointed Receiver of the Testamentary Trust created under Article IV of the Last Will and Testament of Katherine Pillot Lee Barnhart (hereinafter referred to as "Applicant"), and in support thereof would respectfully show unto the Court the following:

## BACKGROUND

1.     The Last Will and Testament of Katherine Pillot Lee Barnhart (hereinafter referred to as the "Will") created a Trust under Article IV of the Will (hereinafter referred to as the "Article IV Trust") for the benefit of Katherine Pillot Lee Barnhart's two children, Ronald Ellsworth Lee, Jr. (hereinafter referred to as "Mr. Lee") and Susan Camille Lee (hereinafter referred to as "Ms. Lee"), and Katherine Pillot Lee Barnhart's grandchildren.

2.     By order of this Court in *Lee v. Lee,* Case No. 137,506-403 dated June 18, 2015, (hereinafter referred to as the "June 18, 2015 Order"), the Court removed Susan Camille Lee as

1|Page

Trustee of the Article IV Trust and appointed Applicant to serve as a Receiver for the Article IV Trust pursuant to Section 114.038 of the Texas Property Code.

3.      The June 18, 2015 Order, among other things, ordered the following with regard to the Article IV Trust:

"3. The Receiver is authorized and directed to:

a. Exercise all rights, powers and duties of the Trustee of the Trust created under Article IV of the Will, and all powers granted to trustees under the Texas Trust Code;

. . .

i.      Collect, compromise, or settle all debts owed to the Trust;

. . .

m.      Institute such legal proceedings as the Receiver deems necessary or advisable to obtain constructive or actual possession of assets of the Trust or to recover damages suffered by the Trust; provided however, that the Receiver shall have discretion not to pursue litigation against Ms. Lee that is undertaken by beneficiaries of the Trust for the benefit of the Trust;

. . .

o.      Take any and all actions reasonably necessary and appropriate to exercise the powers, duties, and responsibilities set forth herein.

4.      A judgment was entered against Ronald E. Lee in *Lee v. Lee* (Case No. 137,506, Harris County Probate Ct. No. 2), as modified by the decision in *Lee v. Lee*, No. 14-97-00162-CV, 47 S.W.3d 767 (Tex. App. – Houston, 2001), and reflected in the Mandate issued by the Fourteenth Court of Appeals dated February 8, 2002 and the subsequent Order Granting Application for Writ of Scire Facias and to Revive Dormant Judgment from this Court under Cause No. 137,506-402 which was filed on December 7, 2012 (hereinafter collectively referred to as the "Judgment"). The Judgment included an award to the Article IV Trust of $1,538,848.50 representing excess executor fees which were previously collected by Mr. Lee, in his capacity as the Independent Executor from the Estate of Katherine Pillot Lee Barnhart, Deceased (which

2 | P a g e

reduced the amount that passed under the Barnhart Will to the Article IV Trust); legal fees of $1,900,000, and prejudgment interest of $499,177.16, totaling $3,938,025.66, plus post-judgment interest. The Judgment, together with all rights associated therewith - including but not limited to principal, attorneys' fees, interest, and court costs, constitutes a debt owed to the Article IV Trust, and is therefore an asset of the Article IV Trust.

5.      A controversy exists between Mr. Lee and the Article IV Trust regarding the amount, if any, that remains outstanding on the Judgment after all credits due Mr. Lee and payments made by Mr. Lee are applied.

6.      The Article IV Trust and Mr. Lee have each held undivided interests in property known as the River Bend Farm, consisting of approximately 640 acres in Wharton County, Texas.  Mr. Lee acquired a twenty-five percent undivided interest in this property from the estate of his father, Ronald Ellsworth Lee (Sr.).  The Article IV Trust acquired a fifty percent interest under the Barnhart Will.

7.      The Article IV Trust and Mr. Lee have each held undivided interests in property known as the Cap Rock Ranch, consisting of approximately 6,431 acres, in Real County, Texas.  Mr. Lee acquired a twenty-five percent undivided interest in this property from the estate of his father, Ronald Ellsworth Lee (Sr.).  The Article IV Trust acquired a fifty percent interest under the Barnhart Will.

8.      A controversy exists regarding the ownership, management, and accounting for revenues and expenses of River Bend Farm and Cap Rock Ranch between the Article IV Trust and Mr. Lee.

9.      Mr. Lee and Applicant, as Receiver of the Article IV Trust, desire to settle and compromise disputes between them so as to (1) facilitate cooperation between Applicant, as Receiver of the Article IV Trust, and Mr. Lee with respect to the continued administration of the

3 | Page

Article IV Trust; (2) reduce expenses otherwise likely to be incurred by both Applicant and Mr. Lee in conjunction with the claims and disputes which presently exist between them; (3) provide certainty in the management of the affairs of the Article IV Trust and Mr. Lee; (4) preserve and enhance the value of River Bend Farm and Cap Rock Ranch and provide for efficient and effective management of these valuable properties, and avoid partition of one or both properties which likely would impair the value of the properties to the detriment of the Article IV Trust and Mr. Lee; and (5) resolve any and all issues related to the Judgment.

10.     The proposed terms of settlement between Applicant and Mr. Lee are set forth in the Settlement Agreement and related settlement documents, all of which are collectively attached hereto as **Exhibit "A."** For reference purposes, the Settlement Agreement and related settlement documents (see attached Exhibit "A") will hereinafter be referred to as the "Settlement Agreement".

## REQUEST FOR AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT

11.     As set forth throughout Texas case law (and more specifically Section 64.004 of the Texas Civil Practice & Remedies Code), the rules of equity generally govern all matters regarding receiverships. *See Harrington v. Schuble*, 608 S.W.2d 253 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ) (expressing that the rules of equity govern receiverships and to conform with the rules of equity, the receiver should have applied to the court for authority to take action on the sale of real property); *see also* TEX. CIV. PRAC. & REM. CODE §64.004.

12.     Furthermore, Texas case law supports that a receiver obtain court approval prior to compromising or settling claims. *See Knox v. Damascus Corp.*, 200 S.W.2d 656, 659-60 (Tex. Civ. App.—Galveston, 1947, no writ) (although judgment appointing the receiver granted the power to "institute such suits as might be necessary to enforce his order, judgment and

4 | P a g e

decree," the court maintained that the receiver obtain express authority from the court prior to settling claims).

13. As detailed above, the June 18, 2015 Order expressly grants to Applicant, as Receiver of the Article IV Trust, the power to "Collect, compromise, or settle all debts owed to the Trust" and . . . "Institute such legal proceedings as the Receiver deems necessary or advisable to obtain constructive or actual possession of assets of the Trust or to recover damages suffered by the Trust; provided however, that the Receiver shall have discretion not to pursue litigation against Ms. Lee that is undertaken by beneficiaries of the Trust for the benefit of the Trust."

14. In an attempt to comply with the rules of equity, and in an abundance of caution, Applicant is filing this Application for Authority to Enter into Settlement Agreement for the purpose of obtaining the Court's approval of the Settlement Agreement. By and through the filing of this Application and a corresponding Notice of Hearing, Applicant hereby represents to the Court that it has provided appropriate notice regarding the Application to all parties in this matter.

15. For all of the reasons which are stated above, Applicant respectfully requests that the Court approve the terms of the Settlement Agreement, and authorize Applicant to enter into the Settlement Agreement on behalf of the Article IV Trust. In support of Applicant's request in this regard, Applicant alleges and thereon believes that the Settlement Agreement is in the best interests of the Article IV Trust.

WHEREFORE, PREMISES CONSIDERED, Applicant respectfully requests (i) that that the Court approve the terms of the Settlement Agreement; (ii) that the Court find that the Settlement Agreement is in the best interests of the Article IV Trust; (iii) that the Court grant Applicant, in its capacity as the Receiver of the Article IV Trust, the authority to enter into the Settlement Agreement on behalf of the Article IV Trust; and (iv) that Applicant have and recover

5 | P a g e

such other and further relief as it may show itself justly entitled to receive.

Respectfully submitted,

MACINTYRE MCCULLOCH STANFIELD
& YOUNG, LLP

By: _____

W. CAMERON McCULLOCH
State Bar Number 00788930
ADRI A. GRAVES
State Bar Number 24049999
2900 Weslayan, Suite 150
Houston, Texas 77027
(713) 572-2900
(713) 572-2902 (FAX)
Cameron.McCulloch@mmlawtexas.com
Adri.Graves@mmlawtexas.com

ATTORNEYS FOR APPLICANT LEGACY TRUST
COMPANY, IN ITS CAPACITY AS THE RECEIVER
FOR THE ARTICLE IV TRUST

6 | P a g e

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent to the following via United States Certified Mail, return receipt requested, and/or via facsimile on this the 25 day of January, 2016:

Mr. Eric M. English
Mr. Neil Kenton Anderson
Ms. Amy Tellegen
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
(713) 228-1331 (Fax)

Mr. Thomas A. Zabel
Zabel Freeman
1135 Heights Blvd.
Houston, Texas 77008
(713) 802-9114 (Fax)

Mr. Daniel J. Sheehan
Mr. John M. Phelan, Jr.
Mr. M. Patrick McShan
Daniel Sheehan & Associates, LLP
2501 North Harwood, Suite 1280
Dallas, Texas 75201
(214) 468-8803 (Fax)

Mr. John W. Porter
Ms. Keri Brown
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
(713) 229-1522 (Fax)

W. Cameron McCulloch
Adri A. Graves

7 | P a g e

# EXHIBIT "A"

## Settlement Agreement Between Ronald Ellsworth Lee, Jr. and Legacy Trust Company as Receiver for the Trust Created under Article IV of the Will of Katherine Pillot Lee Barnhart

### Recitals:

1. Under the Last Will and Testament of Katherine Pillot Lee Barnhart admitted to probate in Harris County, Texas under Cause Number 137,506 (the "Barnhart Will"), trusts were created for the benefit of her children and grandchildren. One of the trusts created was under Article IV of the Barnhart Will (the "Article IV Trust").

2. Ronald Ellsworth Lee, Jr. ("Mr. Lee") is the son of Katherine Pillot Lee Barnhart, and a beneficiary under the Article IV Trust. As such, he is entitled to mandatory distributions of a share of the income of the Article IV Trust

3. No distributions of income of the Article IV Trust have been made to Mr. Lee for more than ten years, notwithstanding the fact that the Trust had net income and in many years reported to the Internal Revenue Service that Mr. Lee had taxable income attributable to the Article IV Trust.

4. Mr. Lee filed suit against Susan Camille Lee ("Ms. Lee"), Trustee of the Article IV Trust, in *Lee v. Lee*, Case No. 137,506-403, Harris County Probate Court No. 2, seeking removal of Ms. Lee as Trustee, and damages suffered by Mr. Lee and the Article IV Trust for which Ms. Lee was responsible as Trustee, among other things ("Mr. Lee's Lawsuit").

5. By order of the Harris County Probate Court No. 2 in *Lee v. Lee*, Case No. 137,506-403 dated June 18, 2015, ("June 18, 2015 Order"), the court removed Ms. Lee as Trustee of the Article IV Trust and appointed Legacy Trust Company as Receiver for the Article IV Trust ("Legacy" or the "Receiver"). The June 18, 2015 Order, among other things, ordered:

"3. The Receiver is authorized and directed to:"

1

5168145

a. Exercise all rights, powers and duties of the Trustee of the Trust created under Article IV of the Will, and all powers granted to trustees under the Texas Trust Code;

c. Manage and direct the business and financial affairs of the Trust and any asset or entity owned or controlled by the Trust;

i. Collect, compromise, or settle all debts owed to the Trust;

m. Institute such legal proceedings as the Receiver deems necessary or advisable to obtain constructive or actual possession of assets of the Trust or to recover damages suffered by the Trust; provided however, that the Receiver shall have discretion not to pursue litigation against Ms. Lee that is undertaken by beneficiaries of the Trust for the benefit of the Trust;

o. Take any and all actions reasonably necessary and appropriate to exercise the powers, duties, and responsibilities set forth herein.

6. Mr. Lee, on his own behalf and that of his successors and assigns, and Legacy as Receiver of the Article IV Trust and on behalf of the Article IV Trust and Legacy's successors as Receiver and/or Trustee, are the parties to this Agreement.

7. A judgment was entered against Mr. Lee in *Lee v. Lee* (Case No. 137,506, Harris County Probate Ct. No. 2), as modified by the decision in *Lee v. Lee*, No. 14-97-00162-CV, 47 S.W.3d 767 (Tex. App. – Houston, 2001), and reflected in the Mandate issued by the Fourteenth Court of Appeals dated February 8, 2002 and the Order Granting Application for Writ of Scire Facias and to Revive Dormant Judgment of the Harris County Probate Court No. 2 in Cause No. 137,506-402, filed December 7, 2012 (the "Judgment"). The Judgment included an award to the Article IV Trust of $1,538,848.50 representing excess executor fees collected by Mr. Lee as

2

5168145

Independent Executor from the Estate of Katherine Pillot Lee Barnhart (which reduced the amount that passed under the Barnhart Will to the Article IV Trust); legal fees of $1,900,000, and prejudgment interest of $499,177.16, totaling $3,938,025.66, plus postjudgment interest. The Judgment and all rights associated therewith, including but not limited to principal, attorneys' fees, interest, and court costs, constitutes a debt owed to the Trust and an asset of the Article IV Trust.

8. Mr. Lee has made payment for the benefit of the Article IV Trust on the Judgment, including a payment of $8,000,000 in 2015.

9. Mr. Lee disputes whether any amount remains outstanding on the Judgment after crediting amounts that were due him from the Article IV Trust and his payments to the Article IV Trust.

10. A controversy exists between Mr. Lee and the Article IV Trust regarding the amount, if any, that remains outstanding on the Judgment after all credits due Mr. Lee and payments made by Mr. Lee are applied.

11. The Article IV Trust and Mr. Lee have each held undivided interests in property known as the River Bend Farm, consisting of approximately 640 acres in Wharton County, Texas. Mr. Lee acquired a twenty-five percent undivided interest in this property from the estate of his father, Ronald Ellsworth Lee (Sr.). The Article IV Trust acquired a fifty percent interest under the Barnhart Will.

12. The Article IV Trust and Mr. Lee have each held undivided interests in property known as the Cap Rock Ranch, consisting of approximately 6,431 acres, in Real County, Texas. Mr. Lee acquired a twenty-five percent undivided interest in this property from the estate of his

3

father, Ronald Ellsworth Lee (Sr.). The Article IV Trust acquired a fifty percent interest under the Barnhart Will.

13. A controversy exists regarding the ownership, management, and accounting for revenues and expenses of River Bend Farm and Cap Rock Ranch between the Article IV Trust and Mr. Lee.

14. Mr. Lee and Legacy as Receiver of the Article IV Trust desire to settle and compromise disputes between them so as to (1) facilitate cooperation between Legacy as Receiver of the Article IV Trust and as a fiduciary to Mr. Lee with respect to the Article IV Trust, (2) reduce expenses otherwise likely to be incurred by each of them associated with the claims and disputes between them, (3) provide certainty in the management of the affairs of Mr. Lee and of the Article IV Trust, (4) preserve and enhance the value of River Bend Farm and Cap Rock Ranch and provide for efficient and effective management of these valuable properties, and avoid partition of them which likely would impair the value of them to both Mr. Lee and the Article IV Trust; and (5) resolve any and all issues related to the Judgment.

Accordingly, Mr. Lee and Legacy as Receiver agree as follows:

## Agreements:

15. On the Closing Date (defined below), Mr. Lee will execute a deed to Legacy Trust Company as Receiver of the Article IV Trust to the River Bend Farm in Wharton County, Texas substantially in the form attached as Exhibit 1.

16. On the Closing Date, Mr. Lee will execute a Promissory Note to Legacy Trust Company as Receiver of the Article IV Trust substantially in the form attached as Exhibit 2 in the amount of $4,000,000.

4

5168145

17. On the Closing Date, Mr. Lee will execute the Agreement Respecting Certain Prospective Real Estate Acquisitions by Legacy Trust Company, substantially in the form attached as Exhibit 3.

18. Effective upon the Closing Date and in consideration of the transactions and releases described in Paragraphs 15, 16, 19, and 20, Legacy as Receiver of the Article IV Trust and on behalf of the Article IV Trust and Legacy's successors as Receiver and/or Trustee shall

a. sell and convey the Judgment, including but not limited to all principal, attorneys' fees, interest and court costs thereon and associated with the Judgment to Mr. Lee, and agrees to file a Satisfaction of Judgment in *Lee v. Lee* (Case No. 137,506, Harris County Probate Ct. No. 2) substantially in the form of Exhibit 4, acknowledging that the Judgment has been fully satisfied;

b. record in the deed records of all jurisdictions in which the Judgment has been abstracted a Bill of Sale substantially in the form attached as Exhibit 5;

c. agrees to indemnify and hold harmless Mr. Lee from all claims based upon the Judgment; and

d. releases Mr. Lee, his successors, and assigns from all liability under or related to claims for amounts due from Mr. Lee on account of his ownership of an undivided 25 per cent interest in River Bend Farm and an undivided 25 per cent interest in Cap Rock Ranch.

19. Effective upon the Closing Date and in consideration of the transactions and releases described in Paragraph 18, Mr. Lee on his own behalf and that of his successors and assigns releases Legacy as Receiver of the Article IV Trust and its successors as Receiver and/or Trustee of the Article IV Trust from the following claims:

a. Claims of Mr. Lee for his damages, interest, or other expenses because amounts due to him from the Article IV Trust for his share of income of the Article IV Trust with respect to the mandatory distribution of one-third of the Article IV Trust's net income for all periods prior to December 31, 2013, produced from revenue actually collected on a cash basis by the Trust prior to December 31, 2013 were or will be paid or credited to him untimely.

b. Claims of Mr. Lee for payments of income produced from revenue actually collected on a cash basis by the Trust prior to December 31, 2014 for his health, maintenance,

5

and support in excess of the mandatory distribution of one-third of the Article IV Trust's net income

c. Claims against the Article IV Trust for attorneys' fees incurred by Mr. Lee prior to June 30, 2015 not previously reimbursed by Legacy as Receiver.

d. Claims for trustee's fees and trustee's expenses due Mr. Lee prior to June 30, 2015.

e. Claims against the Article IV Trust for attorneys' fees incurred by Mr. Lee in connection with the Judgment or this Settlement Agreement.

f. Claims for expenses of the Trust incurred and paid by Mr. Lee prior to June 30, 2015 for which he has not been previously reimbursed.

g. Claims against the Article IV Trust related to the accounting treatment for the Trust and the allocation of trust receipts and expenses between principal and income prior to December 31, 2013; provided that Mr. Lee reserves his right to assert any claim or argument regarding allocation of any proceeds from the sale or disposition of real property occurring after such date.

h. Claims that the Judgment is dormant, lapsed, invalid, or unenforceable.

i. Claims to equitably reform or modify the Judgment based on the inequitable and improper accrual of interest.

j. Claims regarding calculation of the Judgment and interest thereon, including claims that interest should have been suspended and not charged following Mr. Lee's attempts to settle the Judgment and his request for a trust accounting in July 2014.

k. Claims for damages suffered on account of his twenty-five per cent interest in River Bend Farm.

20. For the avoidance of doubt, the parties agree that Mr. Lee by the releases described in Paragraph 19 does **not release and expressly retains**:

a. Any and all claims of Mr. Lee, individually, as trustee of any trust created under the Barnhart Will, as a beneficiary of the Article IV Trust, and on behalf of the Article IV Trust, against Susan Camille Lee, individually, and as trustee of any trust created under the Barnhart Will, including but not limited to Mr. Lee's right to pursue such claims and to obtain his share of the benefits therefrom.

b. Any and all claims of Mr. Lee, individually, as trustee of any trust created under the Barnhart Will, and as a beneficiary of the Article IV Trust to a share of any distribution for any reason from the Article IV Trust made on or after January 1, 2014.

6

5168145

PLAINTIFFS' ORIGINAL PETITION - Page 092

c. Any and all claims for his share of monies or compensation received by the Article IV Trust after December 31, 2013 in any manner even if it relates to events or obligations prior to December 31, 2013, including but not limited to (1) any recovery obtained by or on behalf of the Article IV Trust after December 31, 2013 from any person or entity by reason of events occurring or injuries suffered by the Article IV Trust at any time, and (2) any claim regarding allocation of any proceeds from the sale of real property of the Article IV Trust occurring after December 31, 2013.

21. Either party to this Agreement may require approval of Harris County Probate Court No. 2 to the terms hereof as a condition precedent to the obligations of Paragraphs 15-20 hereof. Legacy will file a motion seeking that approval to the terms hereof within fourteen days of the Effective Date of this Agreement. Mr. Lee agrees to support a motion to approve this Agreement.

22. The Closing Date shall be a mutually agreed-upon date that is less than thirty days after the ruling of the Probate Court approving this Agreement, unless otherwise agreed by the Parties.

23. The Effective Date of this Agreement is *January 13*, 2016.

*Ronald E. Lee*
Ronald E. Lee, Jr.

Legacy Trust Company as Receiver of the Article IV Trust under the Last Will and Testament of Katherine Pillot Lee Barnhart

By *[signature]*
Edward R. Naumes
President & Chief Executive Officer

7

6168145

# Index of Exhibits

1.     **Deed** to River Bend Farm in Wharton County, Texas to Legacy Trust Company as Receiver of the Article IV Trust

2.     **Promissory Note** from Lee to Legacy Trust Company as Receiver of the Article IV Trust

3.     **Agreement Respecting Certain Prospective Real Estate Acquisitions** by Legacy Trust Company on Behalf of the Article IV Trust

4.     **Satisfaction of Judgment** entered in *Lee v. Lee*, (Case No. 137,506, Harris County Probate Ct. No. 2), as modified by the decision in *Lee v. Lee*, 47 S.W.3d 767 (Tex. App. – Houston, 2001)

5.     **Bill of Sale of Judgment** from Legacy Trust Company as Receiver of the Article IV Trust under the Last Will and Testament of Katherine Pillot Lee Barnhart to Ronald E. Lee, Jr.

8.

5168145

*Exhibit I*

## DEED

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF WHARTON §

THAT RONALD ELLSWORTH LEE, JR., an individual ("*Grantor*") for and in consideration of the sum of Ten and No/100 Dollars ($10.00) cash in hand paid by LEGACY TRUST COMPANY, as Receiver of the Article IV Trust under the Last Will and Testament of KATHERINE PILLOT LEE BARNHART ("*Grantee*"), whose address is 600 Jefferson, Suite 300, Houston, TX 77002, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Grantor, HAS QUITCLAIMED unto Grantee all of Grantor's right, title, interest, claim, and demand in and to, and by these presents does QUITCLAIM that certain tract of real property situated in Wharton County, Texas, and described as follows:

See *Exhibit "A"* attached hereto and incorporated herein by reference.

together with all and singular Grantor's right, title, interest, claim, and demand in and to the rights, privileges, hereditaments, and appurtenances pertaining to such real property, including any and all improvements and fixtures currently attached to and located thereon (collectively, the "*Property*").

TO HAVE AND TO HOLD the above released rights, titles, interests, claims, and demands to said Property, to Grantee and Grantee's heirs, executors, administrators, legal representatives and assigns forever. Neither Grantor nor Grantor's heirs, executors, administrators, legal representatives, or assigns shall have, claim, or demand any right or title to the Property or any part of it.

[SIGNATURE ON FOLLOWING PAGE]

5157376

*Exhibit 1*

EXECUTED the ____ day of _____, 2016.

GRANTOR:

_____

RONALD ELLSWORTH LEE, JR.

THE STATE OF TEXAS            §

                             §

COUNTY OF HARRIS             §

This instrument was acknowledged before me on the ___ day of _____, 2016, by Ronald Ellsworth Lee, Jr., an individual.

[SEAL]

_____

Notary Public in and for the State of Texas

After recording please return to:

Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Attn: Neil Kenton Alexander

SIGNATURE PAGE TO QUITCLAIM DEED

5157376

EXHIBIT "A"

633.46 acres of land more or less, with improvements located thereon, with 633.460 acres being in Abstract 62, and 6.542 acres being in Abstract 348, for a total land area of 640.002 acres, Wharton County, Texas, being more particularly described by metes and bounds; also known locally as River Bend Farm.

5157376

*Exhibit 2*

## Promissory Note

$4,000,000.00                 Houston, Texas            As of [_____], 2016

1. Definitions

   a. *"Maker"* means Ronald Ellsworth Lee, Jr.

   b. *"Article IV Trust"* means the Katherine Lee Barnhart Trust Created under Article IV of the Last Will and Testament of Katherine Pillot Lee Barnhart.

   c. *"Payee"* means Legacy Trust Company, as Receiver for the Article IV Trust and any successor receiver or trustee of the Article IV Trust.

2. *In consideration of the agreements executed in writing contemporaneously with this Promissory Note,* Maker promises to pay to the order of Payee at its offices at 600 Jefferson, Suite 300, Houston, TX 77002, in lawful money of the United States of America, the principal amount of Four Million and No/100 Dollars. $4,000,000.00, plus such additional amounts as may be added to principal pursuant to the terms of this Promissory Note (this *"Note"*) or any of the Loan Documents (as defined below), together with interest on the principal balance from time to time remaining unpaid at the rate and upon the terms provided in this Note.

3. Interest Rate. The unpaid principal balance of this Note from time to time outstanding shall accrue interest from the date of this Note until maturity at an annual fixed rate of four percent (4.0%) per annum.

4. Payment Terms. Payments of principal and accrued interest shall be made quarterly in the amount of $500,000 principal, plus accrued interest, beginning 91 days from the date hereof, with a final payment of remaining principal and interest due two years from the date hereof.

5. Calculation of Interest. Interest will be calculated on the basis of actual number of days elapsed (including the first day but excluding the last day) during a calendar year consisting of 365 or 366 days, as the case may be.

6. Prepayment. Maker may prepay this Note in whole or in part at any time without being required to pay any penalty or premium for such privilege. All prepayments under this Note, whether designated as payments of principal or interest, shall be applied to the principal or interest of this Note or to expenses provided herein, or any combination of the foregoing, as directed by the Payee or the holder of this Note at its option and in its sole discretion.

5155684v7

7. <u>Maximum Rate</u>. Regardless of any provision in this Note, all other agreements, documents, and instruments in favor of Payee ever delivered in connection with or under this Note, and all renewals, extensions, amendments, modifications, supplements, restatements, and replacements of, or substitutions for, any of the foregoing (collectively, the "*Loan Documents*"), it is the intention of Maker and Payee that Payee not (a) contract for, charge, take, reserve, receive, or apply, as interest on all or any part of the principal of this Note any amount in excess of the Maximum Rate or an amount calculated based on the Maximum Rate (the "*Maximum Amount*"), or (b) receive any unearned interest, in violation of any applicable law. If any acceleration of the maturity of this Note or any payment under this Note or any other Loan Document produces a rate in excess of the Maximum Rate or if Payee shall for any reason receive any such unearned interest or if any transaction contemplated hereby or by any other Loan Document would otherwise be usurious under applicable law, then (i) the aggregate of all interest under applicable usury laws that is contracted for, charged, taken, reserved, received or applied under this Note, the other Loan Documents, or otherwise shall under no circumstances exceed the Maximum Amount, (ii) neither Maker nor any other individual, partnership, limited partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, syndicate, governmental authority or other entity or organization of whatever nature shall be obligated to pay the amount of such interest to the extent that it is in excess of the Maximum Amount, (iii) any excess or unearned interest shall be deemed to be and shall be treated as a partial prepayment or repayment of principal and any remaining excess or unearned interest will be refunded to Maker, and (iv) the provisions of this Note and the Loan Documents shall immediately be deemed reformed, without the necessity of the execution of any new document or instrument, so as to comply with all applicable usury laws. In determining whether interest paid or payable exceeds the Maximum Rate or the Maximum Amount, Payee shall, to the maximum extent permitted under applicable law (w) treat all advances under this Note and the other Loan Documents as a single extension of credit, (x) characterize any non-principal payment as an expense, fee or premium rather than as interest, (y) exclude voluntary prepayments or repayments and their effects, and (z) amortize, prorate, allocate and spread the total amount of interest throughout the entire contemplated term of this Note. However, if the Note is paid in full before the end of its full contemplated term, and if the interest received for its actual period of existence exceeds the Maximum Rate or the Maximum Amount, Payee shall refund any excess (and Payee may not, to the extent permitted by law, be subject to any penalties provided by any laws for contracting for, charging, taking, reserving or receiving interest in excess of the Maximum Amount). If the laws of the State of Texas are applicable for purposes of determining the "Maximum Rate" or the "Maximum Amount," the "Maximum Rate" may not exceed the "weekly ceiling" from time to time in effect under Chapter 303 of the Texas Finance Code, as amended and in effect from time to time.

2

5155684v7

8. Defaults. The term "*Default*" means the occurrence of any one or more of the following events:

    a. The failure of Maker to pay any part of the principal or interest under this Note when and as required to be paid.

    b. Maker (i) voluntarily seeks, consents to, or acquiesces in the benefit of Title 11 of the United States Code or any other applicable liquidation, conservatorship, bankruptcy, fraudulent transfer, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, suspension of payments, or similar debtor relief laws of the United States or other applicable jurisdictions from time to time in effect and affecting the rights of creditors generally ("*Debtor Relief Law*"), (ii) becomes a party to or is made the subject of any proceeding provided for by any Debtor Relief Law (other than as a creditor or claimant), and (A) the petition is not controverted within 10 days and is not dismissed within 60 days, or (B) an order for relief is entered under Title 11 of the United States Code, (iii) makes an assignment for the benefit of creditors, or (iv) fails (or admits in writing its inability) to pay its debts generally as they become due.

If a Default occurs, after the expiration of any applicable grace or notice and opportunity to cure periods, the holder of this Note shall be entitled to (i) declare the entire unpaid principal of, and all accrued and unpaid interest on, this Note immediately due and payable, without notice of intent to accelerate, notice of acceleration, any other notice, demand, or presentment, all of which are hereby waived, (ii) exercise its offset rights under Section 11, or (iii) proceed to protect, enforce, and exercise any other right or remedy to which the holder may be entitled by agreement, at law, or in equity.

9. No Waiver. No delay on the part of the holder of this Note in the exercise of any right or remedy available to the holder shall operate as a waiver of such right or remedy. No single or partial exercise of a particular right or remedy shall operate as a waiver of that particular right or remedy or any other right or remedy.

10. Waiver. Except as provided in this Note, Maker and any party which may be or become liable for the payment of any amounts due under this Note (including any surety, endorser, or guarantor) jointly and severally waive (to the extent permitted by law) all applicable exemption rights (whether arising by constitution, law, or otherwise), all valuation and appraisement rights, presentment and demand for payment, protest, notice of protest and nonpayment, notice of the intention to accelerate, and notice of acceleration and agree that their liability on this Note shall not be affected by any renewal or extension in the time of payment hereof, by any indulgences, or by any release or change in any security for the payment of this Note, and hereby consent to

3

any and all renewals, extensions, indulgences, releases, or changes, regardless of the number of such renewals, extensions, indulgences, releases, or changes.

11. <u>Set-Off Rights</u>. While a Default exists, Payee is hereby authorized at any time and from time to time, to the fullest extent permitted by law, to set off and apply any other debt or income at any time owing by Payee or the Article IV Trust to or for the credit or the account of Maker, against the outstanding principal amount of this Note, interest, and other amounts due under this Note (the "*Obligation*"), even if Payee has not made demand under this Note and the Obligation is unmatured. Payee agrees to promptly notify Maker after any such set off and application is made; *provided that* the failure to give such notice shall not affect the validity of such set off and application. The rights of Payee and the Article IV Trust under this Section 11 are in addition to other rights and remedies (including other rights of set off) that Payee and the Article IV Trust may have.

12. <u>Unsecured Obligation</u>. This Note, and Maker's performance of this Note, is an unsecured obligation of Maker.

13. <u>Applicable Law</u>. This Note shall be construed, and its performance enforced, in accordance with the laws of the State of Texas and, as applicable, the laws of the United States of America.

14. <u>Remedies of Payee</u>. Payee shall have all rights, remedies, and recourses granted in this Note and the Loan Documents and those available at law or equity and the same (a) shall be cumulative and concurrent, (b) may be pursued separately, successively, or concurrently against Maker or any other liable party or against any one or more of them in such order as Payee, in its sole discretion, shall determine, (c) may be exercised as often as occasion therefor shall arise, it being agreed by Maker and any other liable party that the exercise or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, remedy, or recourse, and (d) are intended to be, and shall be, nonexclusive.

15. <u>WAIVER OF JURY TRIAL</u>. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS NOTE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

16. <u>ENTIRE AGREEMENT</u>. THIS NOTE (AS AMENDED OR REPLACED FROM TIME TO TIME) AND THE OTHER WRITTEN LOAN DOCUMENTS EXECUTED BY MAKER AND PAYEE (OR BY MAKER FOR THE BENEFIT OF PAYEE) REPRESENT THE FINAL

4

AGREEMENT BETWEEN MAKER AND PAYEE AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BY MAKER AND PAYEE. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN MAKER AND PAYEE. THIS PARAGRAPH IS INCLUDED HEREIN PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, AS AMENDED FROM TIME TO TIME.

5

5155684v7

*Exhibit 2*

MAKER:

_____

Ronald Ellsworth Lee, Jr.

Signature Page to Unsecured Promissory Note

*Exhibit 3*

# Agreement Respecting Certain Prospective Real Estate Acquisitions by Legacy Trust Company on Behalf of the Article IV Trust

## *Recitals*

1.  Under the Last Will and Testament of Katherine Pillot Lee Barnhart admitted to probate in Harris County, Texas under Cause Number 137,506 (the "Barnhart Will"), trusts were created for the benefit of her children and grandchildren. One of the trusts created was under Article IV of the Barnhart Will (the "Article IV Trust").

2.  Ronald Ellsworth Lee, Jr. ("Mr. Lee") is the son of Katherine Pillot Lee Barnhart, and a beneficiary under the Article IV Trust.

3.  Susan Camille Lee is the daughter of Katherine Pillot Lee Barnhart, and a beneficiary under the Article IV Trust.

4.  By order of the Harris County Probate Court No. 2 in *Lee v. Lee*, Case No. 137,506-403 dated June 18, 2015, ("June 18, 2015 Order"), the court appointed Legacy Trust Company as Receiver for the Article IV Trust ("Legacy" or the "Receiver").

5.  The Article IV Trust and Mr. Lee have each held undivided interests in property known as the River Bend Farm, consisting of approximately 640 acres in Wharton County, Texas. Mr. Lee acquired a twenty-five percent undivided interest in this property from the estate of his father, Ronald Ellsworth Lee (Sr.). Susan Camille Lee also acquired a twenty-five percent undivided interest in this property from the estate of Ronald Ellsworth Lee (Sr.). The Article IV Trust acquired a fifty percent interest under the Barnhart Will.

6.  The Article IV Trust and Mr. Lee have each held undivided interests in property known as the Cap Rock Ranch, consisting of approximately 6,431 acres, in Real County, Texas. Mr. Lee acquired a twenty-five percent undivided interest in this property from the estate of his father, Ronald Ellsworth Lee (Sr.). Susan Camille Lee also acquired a twenty-five percent undivided interest in this property from the estate of Ronald Ellsworth Lee (Sr.). The Article IV Trust acquired a fifty percent interest under the Barnhart Will.

7.  The Article IV Trust owns property known as Rim Rock Ranch, consisting of approximately 1,200 acres in Real County, Texas adjoining Cap Rock Ranch.

8.  The First Codicil to the Last Will and Testament of Katherine Pillot Lee Barnhart provides in part:

> "3. Notwithstanding any provision of my Will and this First Codicil to the contrary, or seemingly to the contrary, during the lifetime of my daughter Susan Lee Gibson, no Executor, Trustee or Co-Trustee serving hereunder shall have the right or authority to sell, dispose or in any manner, partition or mortgage any of the

5217039

1

*Exhibit 3*

following properties without the prior written consent of my said daughter:

My interest in the 'River Bend Farm, Wharton County, Texas,' same being 640 acres of land, more ore less, situated in the A. Somerville Survey, Block 4, Abstract 62, Wharton County, Texas, and the 'Caprock Ranch' and the 'Rimrock Ranch,' said Ranches being situated in Real County, Texas, about twelve miles north of the town of Reagan Wells, Texas, containing 7,680 acres, more or less, and being situated in T.W.N.G.R.R.Co., Block No. 13, Real County Texas."

9. Mr. Lee and Legacy as Receiver of the Article IV Trust desire to preserve and enhance the value of River Bend Farm and Cap Rock Ranch and provide for efficient and effective management of these valuable properties, and avoid partition of them which likely would impair the value of them.

10. Mr. Lee has agreed to convey and Legacy as Receiver of the Article IV Trust and on behalf of the Article IV Trust has agreed to acquire Mr. Lee's interest in River Bend Farm, more particularly described in a Deed dated _____, 2016, as part of a Settlement Agreement between Mr. Lee and Legacy as Receiver.

11. Accordingly, Mr. Lee and Legacy as the Receiver agree as follows:

## Agreements

12. For and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) cash and other good and valuable consideration Mr. Lee hereby consents to the purchase by Legacy Trust Company as Receiver of the Article IV Trust and on behalf of the Article IV Trust of

   a. Susan Camille Lee's twenty-five percent (25%) in Cap Rock Ranch under customary conditions and for a gross purchase price not to exceed $3,400,000.00, provided however, that Susan Camille Lee also provides irrevocable written consent that any Receiver or Trustee of the Article IV Trust may sell, dispose of in any manner, partition or mortgage the properties known as Cap Rock Ranch and Rim Rock Ranch.

   b. Susan Camille Lee's twenty-five percent (25%) in River Bend Farm under customary conditions and at a price not greater than the appraised value of Susan Camille Lee's twenty-five percent interest as determined by a third party qualified appraiser, provide however, that Susan Camille Lee also provides irrevocable written consent that any Receiver or Trustee of the Article IV Trust may sell, dispose of in any manner, partition or mortgage the property known as River Bend Farm;

13. The Effective Date of this Agreement is _____, 2016.

5217039

*Exhibit 3*

---

Ronald E. Lee, Jr.

THE STATE OF TEXAS      §
                                      §

COUNTY OF HARRIS       §

       The foregoing instrument was acknowledged before me on this ____ day of _____, 2015, by Ronald Ellsworth Lee, Jr.

                                  NOTARY PUBLIC, in and for
                                  THE STATE OF TEXAS

Legacy Trust Company as Receiver of the Article IV Trust under the Last Will and Testament of Katherine Pillot Lee Barnhart

By _____
       Edward R. Naumes

THE STATE OF TEXAS      §
                                        §

COUNTY OF HARRIS       §

       The foregoing instrument was acknowledged before me on this ____ day of _____, 2016, by Edward R. Naumes as President of Legacy Trust Company.

                                  NOTARY PUBLIC, in and for
                                  THE STATE OF TEXAS

5217039

*Exhibit 4*

Cause No. 137506-402

| | | |
|---|---|---|
| Estate of Katherine Pillot Lee Barnhart, Deceased | § § § § | In the Probate Court |
| | § | No. 2 of |
| Susan Camille Lee, et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | Harris County, Texas |
| Ronald E. Lee, Jr., et al, | § § § | |
| Defendants. | § | |

## Satisfaction of Judgment

Legacy Trust Company, Receiver of the Article IV Trust under the Last Will and Testament of Katherine Pillot Lee Barnhart probated in this Court, notifies the Court that the original judgment in *Lee v. Lee* (Case No. 137,506, Harris County Probate Ct. No. 2), as modified by the decision in *Lee v. Lee*, No. 14-97-00162-CV, 47 S.W.3d 767 (Tex. App. – Houston, 2001), and reflected in the Mandate issued by the Fourteenth Court of Appeals dated February 8, 2002 and the Order Granting Application for Writ of Scire Facias and to Revive Dormant Judgment of the Harris County Probate Court No. 2 in Cause No. 137,506-402, filed December 7, 2012, a copy of which is attached hereto as Exhibit A (the "Judgment"), has been fully paid, satisfied, and is discharged.

Dated: _____

1

*Exhibit 4*

Respectfully submitted,

**Attorneys for Legacy Trust
Company as Receiver of the Article
IV Trust under the Last Will and
Testament of Katherine Pillot Lee
Barnhart**

2

*Exhibit 4*

# Certificate of Service

This is to certify that a true and correct copy of the foregoing document was served via email upon the following counsel of record for Defendant on _____, 2016:

Daniel J. Sheehan
dsheehan@dsa-law.com
John M. Phalen, Jr.
jphalen@dsa-law.com
M. Patrick McShan
pmcshan@dsa-law.com
Daniel, Sheehan & Associates, LLP
2501 N. Harwood Street, Suite 1280
Dallas, TX 75201

Thomas Zabel
Zabel Freeman
1135 Heights Boulevard
Houston, TX 77008
tzabel@zflawfirm.com

Eric M. English
eenglish@porterhedges.com
Neil Kenton Alexander
Porter Hedges LLP
1000 Main St., 36th Floor
Houston, TX 77002
kalexander@porterhedges.com

John W. Porter
Texas Bar No. 16149990
john.porter@bakerbotts.com
Keri D. Brown
keri.brown@bakerbotts.com
910 Louisiana Street
Houston, Texas 77002

3

5151537

*Exhibit 5*

<u>Bill of Sale</u>

THE STATE OF TEXAS§
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF HARRIS§

That Legacy Trust Company as Receiver and on behalf of the Article IV Trust created under the Last Will and Testament of Katherine Pillot Lee Barnhart admitted to probate in Harris County Probate Court No. 2, Cause No. 137,506, herein called "Seller", for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration to the undersigned paid by the Buyer herein named, the receipt of which is hereby acknowledged, has GRANTED, BARGAINED, SOLD AND CONVEYED, and by these presents does GRANT, BARGAIN, SELL AND CONVEY, unto Ronald Ellsworth Lee, Jr., of HARRIS County, Texas, herein called "Buyer", all of the following described property, to-wit:

> The Judgment in favor of the Article IV Trust entered in *Lee v. Lee*, (Case No. 137,506, Harris County Probate Ct. No. 2), as modified by the decision in *Lee v. Lee*, No. 14-97-00162-CV, 47 S.W.3d 767 (Tex. App. – Houston, 2001), as reflected in the Mandate issued by the Fourteenth Court of Appeals dated February 8, 2002 and the Order Granting Application for Writ of Scire Facias and to Revive Dormant Judgment of the Harris County Probate Court No. 2 in Cause No. 137,506-402, filed December 7, 2012, together with all principal, attorneys' fees, interest, and court costs on or associated with such Judgment.

TO HAVE AND TO HOLD the above described Judgment, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Seller, and unto Seller's successors and assigns forever; and Seller does hereby bind itself, its successors and assigns, to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said Buyer, Buyer's heirs, executors, administrators and assigns

5174443

*Exhibit 5*

against every person whomsoever lawfully claiming or to claim the same or any part thereof, by through or under Seller, but not otherwise.

EXECUTED this _____ day of _____, 2016.

SELLER:

Legacy Trust Company as Receiver and on Behalf of the Article IV Trust created under the Last Will and Testament of Katherine Pillot Lee Barnhart admitted to probate in Harris County Probate Court No. 2, Cause No. 137,506

By: _____
Name: Edward R. Naumes
Title: President and Chief Executive Officer

5174445

*Exhibit 5*

## Acknowledgement

THE STATE OF TEXAS     §
                             §

COUNTY OF HARRIS     §

Before me, _____, on this _____ day of _____, 2016, personally appeared Edward R. Naumes, President and Chief Executive Officer of Legacy Trust Company as Receiver and on Behalf of the Article IV Trust created under the Last Will and Testament of Katherine Pillot Lee Barnhart admitted to probate in Harris County Probate Court No. 2, Cause No. 137,506, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

[S E A L]

_____
Notary Public in and for the State of Texas

Printed Name of Notary: _____
My Commission Expires: _____

BUYER'S ADDRESS:

Ronald Ellsworth Lee, Jr.
3114 Mid Lane
Houston, TX 77027

5174445

*Draft – 1/11/2016*

# Agreement Respecting Conduct of the Litigation in *Lee v. Lee*, Case No. 137,506-403

## *Recitals*

1. Under the Last Will and Testament of Katherine Pillot Lee Barnhart admitted to probate in Harris County, Texas under Cause Number 137,506 (the "Barnhart Will"), trusts were created for the benefit of her children and grandchildren. One of the trusts created was under Article IV of the Barnhart Will (the "Article IV Trust").

2. Ronald Ellsworth Lee, Jr. ("Mr. Lee") is the son of Katherine Pillot Lee Barnhart, and a beneficiary under the Article IV Trust.

3. Katherine Lee Stacy ("Ms. Stacy") is the daughter of Mr. Lee and a beneficiary under a Trust established under the Barnhart Will that is a beneficiary of the Article IV Trust.

4. Mr. Lee filed suit against Susan Camille Lee ("Ms. Lee"), Trustee of the Article IV Trust, in *Lee v. Lee*, Case No. 137,506-403, Harris County Probate Court No. 2, seeking removal of Ms. Lee as Trustee, and damages suffered by Mr. Lee and the Article IV Trust during the trusteeship of Ms. Lee ("Mr. Lee's Lawsuit").

5. By order of the Harris County Probate Court No. 2 in *Lee v. Lee*, Case No. 137,506-403 dated June 18, 2015, ("June 18, 2015 Order"), the court removed Ms. Lee as Trustee of the Article IV Trust and appointed Legacy Trust Company as Receiver for the Article IV Trust ("Legacy" or the "Receiver"). The June 18, 2015 Order, among other things, ordered:

   "3. The Receiver is authorized and directed to:

   a. Exercise all rights, powers and duties of the Trustee of the Trust created under Article IV of the Will, and all powers granted to trustees under the Texas Trust Code;

   . . .

   c. Manage and direct the business and financial affairs of the Trust and any asset or entity owned or controlled by the Trust;

   . . .

   m. Institute such legal proceedings as the Receiver deems necessary or advisable to obtain constructive or actual possession of assets of the Trust or to recover damages suffered by the Trust; provided however, that the Receiver shall have discretion not to pursue litigation against Ms. Lee that is undertaken by beneficiaries of the Trust for the benefit of the Trust;

7. Mr. Lee intends to pursue the claims filed in Mr. Lee's Lawsuit. Ms. Stacy has intervened as an additional plaintiff in Mr. Lee's Lawsuit.

5238360v2

*Draft – 1/11/2016*

## Agreements

8. So as to avoid the duplication of expense and effort in connection with the claims asserted in Mr. Lee's Lawsuit, at least a portion of which may benefit the Article IV Trust, Mr. Lee and Ms. Stacy consent that Legacy shall have no obligation to them to file or prosecute a lawsuit asserting claims against Ms. Lee for breaches of her obligations while serving as Trustee of the Article IV Trust.

9. Legacy as Receiver agrees to reimburse Mr. Lee from the assets of the Article IV Trust for his reasonable and necessary attorneys' fees and litigation expenses (including but not limited to expert witness fees, expenses of attorneys, and court costs) incurred in connection with claims against Ms. Lee for breaches of her obligations to the Article IV Trust while she served as Trustee of the Article IV Trust in an aggregate amount up to $500,000. In the event Mr. Lee believes that additional reasonable and necessary attorneys' fees and litigation expenses should be incurred in excess of $500,000, he may request Legacy to approve in advance such additional expenditures, which approval Legacy will not unreasonably withhold.

10. So as to avoid the duplication of expense and effort in connection with the claims asserted in Mr. Lee's Lawsuit, the parties agree that counsel for Mr. Lee shall take the lead work responsibility in pursuing the claims in Mr. Lee's Lawsuit for which the Article IV Trust would be the principal beneficiary. Counsel for Ms. Stacy, while representing her interests professionally, will take secondary work responsibility for pursuing these claims and avoid duplicating work of Mr. Lee's counsel.

11. Legacy as Receiver agrees to reimburse Ms. Stacy from the assets of the Article IV Trust for her reasonable and necessary attorneys' fees and litigation expenses (including but not limited to expert witness fees, expenses of attorneys, and court costs) incurred in accordance with the terms of paragraph 10 hereof in an aggregate amount up to $100,000. In the event Ms. Stacy believes that additional reasonable and necessary attorneys' fees and litigation expenses should be incurred in excess of $100,000, she may request Legacy to approve in advance such additional expenditures, which approval Legacy will not unreasonably withhold.

12. Nothing in this Agreement relieves Legacy from whatever obligations it may have to provide information or otherwise cooperate with the beneficiaries of the Article IV Trust in pursuing claims against Ms. Lee for the benefit of the Article IV Trust, to adjust distributions to Ms. Lee by reason of monies Ms. Lee owes to the Article IV Trust, or to defend claims asserted by Ms. Lee against Legacy as Receiver of the Article IV Trust.

5238360v2

PLAINTIFFS' ORIGINAL PETITION - Page 114

*Draft – 1/11/2016*

13. The Effective Date of this Agreement is _____, 2016.


_____
Ronald E. Lee, Jr.


_____
Katherine Lee Stacy

Legacy Trust Company as Receiver of the Article IV Trust under the Last Will and Testament of Katherine Pillot Lee Barnhart


By_____
        Edward R. Naumes

*Draft – 1/11/2016*

# EXHIBIT "G"

Cause No. 137506-403

| Estate of Katherine Pillot Lee Barnhart, Deceased | § § § § | In the Probate Court<br>No. 2 of |
|---|---|---|
| Susan Camille Lee, et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | Harris County, Texas |
| Ronald E. Lee, Jr., et al, | § § § | |
| Defendants. | § | |

## ORDER GRANTING APPLICATION TO APPROVE SETTLEMENT AGREEMENT

On this day, came on to be considered the Application to Approve Settlement Agreement (hereinafter referred to as the "Application") which was filed in this proceeding by Applicant LEGACY TRUST COMPANY in its capacity as the Court appointed Receiver of the Testamentary Trust created under Article IV of the Last Will and Testament of Katherine Pillot Lee Barnhart (hereinafter referred to as "Legacy" or "Receiver"). After considering the Application, the Court finds that the Application is well taken and should be granted. It is therefore,

ORDERED, ADJUDGED, and DECREED, that the Settlement Agreement and related settlement documents, all of which are attached to the Application collectively as Exhibit "A", are hereby APPROVED. It is further,

ORDERED, ADJUDGED, and DECREED, that the Settlement Agreement is in the best interests of the Testamentary Trust created under Article IV of the Last Will and Testament of Katherine Pillot Lee Barnhart (hereinafter referred to as the "Article IV Trust"), and that the Receiver is hereby granted authority to enter into the Settlement Agreement, and to sign all

1 | P a g e



~~documents which are necessary to implement the Settlement Agreement, on behalf of the Article~~
~~IV Trust.~~

SIGNED on this _2_ day of _January_ , 2016.

_____
JUDGE PRESIDING

APPROVED:

MACINTYRE MCCULLOCH STANFIELD
& YOUNG, LLP

By:_____
W. CAMERON McCULLOCH
State Bar Number 00788930
ADRI A. GRAVES
State Bar Number 24049999
2900 Weslayan, Suite 150
Houston, Texas 77027
(713) 572-2900
(713) 572-2902 (FAX)
Cameron.McCulloch@mmlawtexas.com
Adri.Graves@mmlawtexas.com

ATTORNEYS FOR APPLICANT LEGACY TRUST COMPANY,
IN ITS CAPACITY AS THE RECEIVER FOR THE ARTICLE IV
TRUST

Approved as to form only:

_____, Counsel for Susan Lee

_____ Counsel for Kathrin Stacy

_____ Counsel for Ronald E. Lee, Jr.

FILED
2016 MAR -2 PM 5:49
COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT "H"




C83482          NO. 137,506-403

| ESTATE OF KATHERINE PILLOT BARNHART, DECEASED | § § § | IN THE PROBATE COURT NO. 2 |
| DONNA C. KLINE | § § | |
| V. | § § | OF |
| SUSAN CAMILLE LEE, Individually and as Trustee for SUSAN C. GIBSON | § § § | |
| and | § § | |
| SUSAN C. GIBSON | § | HARRIS COUNTY, TEXAS |

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have been previously given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1.      Do not let bias, prejudice, or sympathy play any part in your deliberations.

2.      In arriving at your answers consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court, that is what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations you will not consider or discuss anything that is not represented by the evidence in this case.

3.      Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4.      You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss or concern yourselves with the effect of your answers.

5.      You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the

- 1 -

  

number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6.     You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than 10 jurors. If the verdict and all the answers therein are reached by unanimous agreement, the Presiding Juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys, and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense which varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other definition or any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed.

A "Yes" answer must be based on a preponderance of the evidence, unless that question states specifically that a different standard should be used. In answering a question based on a preponderance of the evidence, if you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No."

The term "preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case.

In answering a question based on a preponderance of the evidence, a fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proven.



97 JUL 23 PM 3:24 FILED

-2-



In determining the amount of reasonable and necessary attorney's fees, the following factors should be considered:

1.      the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;
2.      the liklihood that the acceptance of the particular employment will preclude other employment by the lawyer;
3.      the fee customarily charged in the locality for similar legal services;
4.      the amount involved and the results obtained;
5.      the time limitations imposed by the client or the circumstances;
6.      the nature and length of the professional relationship with the client;
7.      the experience, reputation, and ability of the lawyer or lawyers performing the services; and
8.      whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

- 3 -

## QUESTION ONE

What reasonable amount, if any, is owed to Donna Kline for the necessary legal services she performed for Susan Lee and Susan Gibson on an hourly basis under the contracts?

Answer in dollars and cents, if any.

Answer: _114,207.21._

- 4 -

 

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

## QUESTION TWO

Did Susan Lee and Susan Gibson discharge Donna Kline for good cause?

Answer "Yes" or "No".

Answer:     ___N O___ .

You are instructed that a client has "good cause" to discharge an attorney if the attorney fails to perform her duties in the manner that an attorney of ordinary skill and ability would have performed her duties under the same or similar circumstances.

-5-

 

-76-2016

## QUESTION THREE

What is a reasonable fee for the necessary services of Donna Kline's attorneys in this case?

Answer in dollars and cents, if any.

Answer with an amount for each of the following:

a.    For preparation and trial.

Answer:    $ 75,000.00 .

b.    For an appeal to the Court of Appeals.

Answer:    $ 30,000.00 .

c.    For making or responding to a petition for review to the Supreme Court of Texas.

Answer:    $ 7,500.00 .

d.    If a petition for review is granted by the Supreme Court of Texas.

Answer:    $ 20,000.00 .

- 6 -

PLAINTIFFS' ORIGINAL PETITION - Page 125



What is a reasonable fee for the necessary services of Susan Lee's and Susan Gibson's attorneys in this case?

Answer in dollars and cents, if any.

Answer with an amount for each of the following:

a.      For preparation and trial.

   Answer:    _____0_____.

b.      For an appeal to the Court of Appeals.

   Answer:    _____0_____.

c.      For making or responding to a petition for review to the Supreme Court of Texas.

   Answer:    _____0_____.

d.      If a petition for review is granted by the Supreme Court of Texas.

   Answer:    _____0_____.

  

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror:

1. to preside during your deliberations,

2. to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3. to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,

4. to vote on the questions,

5. to write your answers to the questions in the spaces provided, and

6. to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all the questions you are required to answer under the instructions of the judge, and your presiding juror has placed you answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_Mike Wood_
_____
Judge Presiding

-8-

 

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

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

**(To be signed by the presiding juror if unanimous.)**

_____
**Presiding Juror**

**(To be signed by all jurors in agreement if not unanimous)**

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____

-9-

NO. 137,506-403

| | |
|---|---|
| ESTATE OF KATHERINE PILLOT<br>BARNHART, DECEASED | § IN THE PROBATE COURT NO. 2 |
| DONNA C. KLINE | § |
| V. | § |
| | § OF |
| SUSAN CAMILLE LEE, Individually<br>and as Trustee for SUSAN C. GIBSON | § |
| and | § |
| SUSAN C. GIBSON | § HARRIS COUNTY, TEXAS |

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have been previously given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice, or sympathy play any part in your deliberations.

2. In arriving at your answers consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court, that is what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss or concern yourselves with the effect of your answers.

5. You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the

- 1 -



EXHIBIT
1    A

number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6.      You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than 10 jurors. If the verdict and all the answers therein are reached by unanimous agreement, the Presiding Juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys, and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense which varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other definition or any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed.

A "Yes" answer must be based on a preponderance of the evidence, unless that question states specifically that a different standard should be used. In answering a question based on a preponderance of the evidence, if you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No."

The term "preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case.

In answering a question based on a preponderance of the evidence, a fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proven.



- 2 -

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

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

In determining the amount of reasonable and necessary attorney's fees, the following factors should be considered:

1. the time and labor involved, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;
2. the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
3. the fee customarily charged in the locality for similar legal services;
4. the amount involved and the results obtained;
5. the time limitations imposed by the client or the circumstances;
6. the nature and length of the professional relationship with the client;
7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and
8. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

-3-

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

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

## QUESTION ONE

What reasonable amount, if any, is owed to Donna Kline for the necessary legal services she performed for Susan Lee and Susan Gibson on an hourly basis under the contracts?

Answer in dollars and cents, if any.

Answer: _114,207.21._

-4-

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

## QUESTION TWO

Did Susan Lee and Susan Gibson discharge Donna Kline for good cause?

Answer "Yes" or "No".

Answer: _____NO_____.

You are instructed that a client has "good cause" to discharge an attorney if the attorney fails to perform her duties in the manner that an attorney of ordinary skill[1] and ability would have performed her duties under the same or similar circumstances.

-5-

PLAINTIFFS' ORIGINAL PETITION - Page 133

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

## QUESTION THREE

What is a reasonable fee for the necessary services of Donna Kline's attorneys in this case?

Answer in dollars and cents, if any.

Answer with an amount for each of the following:

a.    For preparation and trial.

    Answer:    $75,000.00.

b.    For an appeal to the Court of Appeals.

    Answer:    $30,000.00.

c.    For making or responding to a petition for review to the Supreme Court of Texas.

    Answer:    $7,500.00.

d.    If a petition for review is granted by the Supreme Court of Texas.

    Answer:    $20,000.00.

-6-

PLAINTIFFS' ORIGINAL PETITION - Page 134

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

## QUESTION FOUR

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

What is a reasonable fee for the necessary services of Susan Lee's and Susan Gibson's attorneys in this case?

Answer in dollars and cents, if any.

Answer with an amount for each of the following:

a.   For preparation and trial.

Answer:   _____0_____ .

b.   For an appeal to the Court of Appeals.

Answer:   _____0_____ .

c.   For making or responding to a petition for review to the Supreme Court of Texas.

Answer:   _____0_____ .

d.   If a petition for review is granted by the Supreme Court of Texas.

Answer:   _____0_____ .

- 7 -

 

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

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror:

1.  to preside during your deliberations,

2.  to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3.  to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,

4.  to vote on the questions,

5.  to write your answers to the questions in the spaces provided, and

6.  to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all the questions you are required to answer under the instructions of the judge, and your presiding juror has placed you answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_____
**Judge Presiding**

- 8 -

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

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

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding
juror if unanimous.)

_____
Presiding Juror

(To be signed by all jurors
in agreement if not unanimous)

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____

-9-

# EXHIBIT "I"



NO. 137506-403

| ESTATE OF KATHERINE PILOT BARNHARDT, DECEASED | § | IN THE PROBATE COURT |
|---|---|---|
| DONNA C. KLINE | § | |
| VS. | § | NO. 2 |
| SUSAN CAMILLE LEE, Individually and as TRUSTEE FOR SUSAN C. GIBSON | § | |
| AND | § | |
| SUSAN C. GIBSON | § | |
| VS. | § | |
| GARY GROTE | § | OF HARRIS COUNTY, TEXAS |

## JUDGMENT

BE IT REMEMBERED that on the 15th day of July, 1997, came on to be heard the above-styled and numbered cause in which Donna C. Kline was Intervenor and Plaintiff, and Susan Camille Lee, individually and as trustee for Susan C. Gibson, and Susan C. Gibson were defendants. A jury consisting of Peter Hugo and 11 other good and lawful men and women were selected to hear the case and returned a verdict on July 23, 1997, signed by 11 members of the jury.

The Court having considered the verdict of the jury, the testimony of the parties, and having considered the argument of counsel, was of the opinion that Judgment should be for the Plaintiff/Intervenor Donna C. Kline.

It is therefore, ORDERED, ADJUDGED and DECREED that Donna C. Kline shall recover of and from the Defendants Susan Camille Lee, individually and as trustee for Susan C. Gibson, and Susan C.

-1-

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

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

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

Gibson, jointly and severally, the sum of $114,207.21, with interest thereon at the rate of six percent (6%) per annum from October 26, 1995. It is further ordered that Donna C. Kline shall recover attorney's fees in the amount of $132,500.00, with interest thereon from date of Judgment at ten percent (10%) per annum from both Lee and Gibson jointly and severally. In the event there is no appeal to one of the Courts of Appeals of Texas following entry of this Judgment, the amount of the Judgment will be reduced by remittitur in the amount of $30,000.00. In the event there is no application for ~~writ of error~~ petition for review filed with the Supreme Court of Texas by any party following entry of this Judgment, the amount of the Judgment shall be reduced by remittitur by $7,500.00. In the event no petition for review is granted by the Supreme Court of Texas following entry of this Judgment, the amount of the Judgment will be reduced by remittitur in the amount of $20,000.00.

Based on the Jury's answer to Question 2, the Court makes declaratory judgment that Donna C. Kline has a good, valid and subsisting interest in any recovery by Susan Camille Lee, individually and as trustee for Susan C. Gibson, and Susan C. Gibson individually, pursuant to her contingent fee contract of March 30, 1995.

Intervenor/Plaintiff Donna C. Kline shall recover all costs of court and interest on all amounts awarded herein from the date of Judgment until paid at the rate of ten percent (10%) per annum.

It is further ORDERED, ADJUDGED AND DECREED that the defendants counter-claimants Susan Camille Lee, Individually and as

-2-

Trustee for Susan C. Gibson ("Lee") and Susan C. Gibson ("Gibson") take nothing on their counterclaims against Donna C. Kline.

On July 11, 1997, came on for consideration the Motion for Summary Judgment of Third Party Defendant and Counter-Plaintiff Gary Grote. The Court considered the Motion, the Reply, the summary judgment evidence and the arguments of counsel and found that the Motion should be granted, as set forth in the Court's Order of July 11, 1997.

It is therefore ORDERED, ADJUDGED AND DECREED that Third Party Plaintiffs Susan Camille Lee, Individually and as Trustee for Susan C. Gibson ("Lee") and Susan C. Gibson ("Gibson") take nothing of and from Third Party Defendant Gary Grote in this lawsuit.

It is further ORDERED, ADJUDGED AND DECREED that Third Party Plaintiff Gary Grote have and recover of and from Susan Camille Lee the amount of Three Thousand Five Hundred Dollars ($3,500.00), in addition to attorney's fees of $2,500.00 through the date of this Judgment; and additional attorneys fees of $15,000.00 if the case is appealed to the Court of Appeals, $15,000.00 if a Petition for Review is filed with the Texas Supreme Court, and $15,000.00 if the Texas Supreme Court grants a petition for review.

All other relief requested by any party that is not granted herein is specifically denied.

RENDERED and SIGNED on this ___21___ day of _November_, 1997.

_____
Honorable Mike Wood
Presiding Judge

-3-

Approved as to form only:

GEORGE M. BISHOP & ASSOCIATES

*George M. Bishop*

George M. Bishop
State Bar No. 02353000
3000 Smith
Houston, Texas 77006
Telephone:  (713) 521-9797
Fax:  (713) 521-3125

GIESSEL, BARKER & LYMAN

Gregg S. Weinberg
State Bar No. 21084150
2700 Two Houston Center
909 Fannin
Houston, TX 77010-1063
Telephone:  (713) 652-2419
Fax:  (713) 652-2419
ATTORNEYS FOR DONNA C. KLINE


WILSON, CRIBBS, GOREN & FLAUM, P.C.

*Mary A. Van Kerrebrook*

Mary A. Van Kerrebrook
State Bar No. 20446750
2200 Lyric Centre
440 Louisiana
Houston, Texas 77002
Telephone: 713/222-9000
fax: 713/229-8824

Examined prior to entry but not approved as to form or substance
and without waiver of any objection or request for post-judgment relief.

BURNS, WOOLEY & MARSEGLIA, L.L.P.

*M. Susan Hardie*

M. Susan Hardie
State Bar No. 08957600
1111 Bagby, Suite 4900
Houston, TX  77002
Telephone: 713/651-0422
fax: 713/651-0817


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

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

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

-4-

# EXHIBIT "J"

**2000 WL 19227**
Only the Westlaw citation is currently available.

NOTICE: NOT DESIGNATED FOR PUBLICATION. UNDER TX R RAP RULE 47.7, UNPUBLISHED OPINIONS HAVE NO PRECEDENTIAL VALUE BUT MAY BE CITED WITH THE NOTATION "(not designated for publication)."

Court of Appeals of Texas, Houston (14th Dist.).

Susan C. Lee, Individually, and Susan C. LEE, Trustee for Susan C. Gibson, and Susan C. Gibson, Appellants,
v.
Donna KLINE and Gary Grote, Appellees.

No. 14-98-00268-CV.
|
Jan. 13, 2000.

On Appeal from the Probate Court No. 2, Harris County, Texas, Trial Court Cause No. 137,506-403.

Panel consists of Chief Justice MURPHY, Justices HUDSON and FOWLER.

OPINION ON REHEARING

FOWLER.

*1 Defendants filed a motion for rehearing in this case. *See* TEX.R.APP.P. 49.1. It is denied. However, our original opinion is withdrawn and this substituted opinion is issued in its stead.

Donna Kline ("Kline") brought this action against Susan C. Lee, Individually, and Susan C. Lee, Trustee for Susan C. Gibson, and Susan C. Gibson (individually as "Lee" and "Gibson" or collectively as "Defendants") to recover attorney fees. Defendants filed a counterclaim against Kline and Gary Grote ("Grote"), alleging legal malpractice. The trial court granted Grote's motion for summary judgment. The remaining claims proceeded to a jury trial. The trial court instructed a verdict in Kline's favor on Defendants' malpractice action. On Kline's action to recover attorney fees, the jury found in favor of Kline and awarded her $114,207.21. In its final judgment, the trial court found

that, based upon the jury's findings, Kline possesses a good, valid and subsisting interest in any recovery obtained by Defendants in the underlying estate case pursuant to Kline's contingent fee contract. [1]

Defendants assign twelve issues on appeal, alleging that Kline failed to obtain necessary jury findings, challenging the sufficiency of the evidence to support the judgment, and that Grote's motion for summary judgment should have been denied because it was unsupported by competent evidence and did not dispose of all issues in the case. Defendants also contend that "the trial judge should have been recused from the trial of this case." Lastly, Defendants assert that "the trial court erred in not conditioning the award of appellate attorney's fees on a successful appeal." We affirm.

I. BACKGROUND

Defendants retained Kline in July 1994. Kline was retained to represent Gibson in an action against Gibson's uncle, who was the executor of the estate of his and Lee's mother (Estate of Katherine Pillot Barnhart, Deceased). [2] Defendants agreed to pay Kline $225 per hour. Defendants were not satisfied with the executor's management of a trust created pursuant to the deceased's will. Defendants believed that disbursements into the trust accounts were not being made by the executor pursuant to the terms of the trust.

The law firm of Butler & Binion was lead counsel in the action brought by Defendants. Kline was retained by Defendants to "help and advise [Defendants] in regard to the handling of the case" and to act as lead counsel on behalf of Gibson. The executor was represented by the law firm of Vinson & Elkins. Butler & Binion withdrew from the case sometime in early 1995. Through Kline's efforts, the Dallas law firm of Thomas, Sheehan & Culp was retained to become Defendants' lead counsel in March 1995. When this firm became lead counsel, the fee agreement was modified. Defendants expressly agreed to continue to pay Kline $225 per hour, $250 per hour for Don Sheehan, and $300 per hour for Tom Thomas. Defendants also expressly agreed to pay a 10% contingency fee on any "recovery ." It was further agreed that 40% of the 10% contingency fee would be paid to Kline and that the remaining 60% would be paid to Thomas, Sheehan & Culp.

*2 The relationship between Defendants and Kline was genuinely affable [3] until September 1995, when Kline received correspondence from Gibson wherein the demand was made to Kline to "withdraw from the case immediately."

PLAINTIFFS' ORIGINAL PETITION - Page 144

Kline obeyed Gibson's demand and withdrew from the case. [4] Prior to withdrawing, Kline received approximately $78,000 in attorney fees from Defendants. These attorney fees were incurred between July 1994 and December 1994. After Kline withdrew, she billed Defendants for her time invested in their case between December 1994 and July 1995. Kline's attorney fees for that period of time totaled $110,388.77. Defendants refused to pay the bill and Kline intervened in the underlying estate case to recover her attorney fees.

Following a trial, the jury awarded Kline $114,207.21 for "legal services she performed for [Defendants] on an hourly basis under the contract." The jury also found that Defendants did not discharge Kline for "good cause." Consequently, in its judgment, the trial court found that Kline possesses "a good, valid and subsisting interest in any recovery by [Defendants] pursuant to her contingent fee contract...."

## II. DISCUSSION

*Jury Findings on Fairness of Contingent Fee Agreement*

In Defendants' first issue, they aver that "Kline failed to prove and to secure findings that she dealt fairly with Gibson and Lee...." They contend that the contingent fee agreement was unfair and invalid because it was made after Kline was initially retained by Defendants. [5]

Kline's original fee agreement provided that Defendants would pay Kline $225 per hour, plus expenses, for legal services she performed in the underlying estate case. The fee agreement between Defendants and Kline was modified when Thomas, Sheehan & Culp was retained to join Kline in representing Defendants. On March 30, 1995, Daniel Sheehan drafted an agreement which outlined the terms of his firm's representation of Defendants in the underlying estate case. The agreement provided that "[o]ur fee will be the sum of: (a) reasonable hourly rates including Donna Kline at the rate of $225 per hour and members of Thomas, Sheehan & Culp, L.L.P. who work on the case with Tom Thomas' rate at $300 per hour and Dan Sheehan's rate at $250 per hour, plus (b) *ten percent (10%) of all Recovery, if any*." (emphasis added). The agreement further provided that "[c]ontingency fees will be divided between us, sixty percent (60%) to Thomas, Sheehan & Culp, L.L.P., *and forty percent (40%) to Donna C. Kline.*" (emphasis added). The record shows that the agreement was executed by both Defendants.

Defendants assert that because the contingent fee agreement between Kline and Defendants was made during the existence of their attorney-client relationship, there was a "presumption of unfairness" of the agreement. They contend that the only way Kline could defeat that presumption was by obtaining a jury finding that the agreement was fair and reasonable. In making this claim, defendants rely on *Archer v. Griffith*, 390 S.W.2d 735 (Tex.1964). There, the supreme court held that where an attorney contracts with his or her client for compensation during the existence of an attorney-client relationship, there "is a presumption of unfairness or invalidity attaching to the contract, and the burden of showing its fairness and reasonableness is on the attorney." *Id.* at 739 (citations omitted); *see also Robinson v. Garcia*, 804 S.W.2d 238, 248 (Tex.App.-Corpus Christi 1991, writ denied).

*3 Although Defendants did not request a jury instruction concerning the fairness and reasonableness of the contingent fee agreement, they did request that the trial court submit the following question to the jury: "Do you find from a preponderance of the evidence that the making of the March 30, 1995 retainer agreement constituted an unconscionable action or course of action with respect to the attorney's fees to be paid to Donna Kline?" [6] The trial court refused to submit Defendants' tendered question to the jury because there was "no evidence to support the elements in the definition of unconscionable conduct or course of action." The trial court also found no "evidence of taking advantage or lack of knowledge or ability or experience or capacity or grossly unfair [because] there is [no] evidence on any of those points."

Jury instructions and questions are proper only if they are raised by the written pleadings and are supported by the evidence. [7] *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992); *Knoll v. Neblett*, 966 S.W.2d 622, 633 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *Bean v. Baxter Healthcare Corp.*, 965 S.W.2d 656, 661 (Tex.App.-Houston [14th Dist.] 1998, no pet.); *see also* TEX.R.CIV.P. 278 (West 1999). A trial court may properly refuse to submit an issue to the jury where no evidence exists to warrant its submission. [8] *Elbaor*, 845 S.W.2d at 243.

Further, presumptions that are imposed by law must be supported by the evidence presented during trial in order to be considered by the trier of facts. We note the following:

> Courts have frequently remarked that presumptions are only intended to take the place of facts and cannot

be relied upon where the facts are shown; or that no presumption can stand in the face of facts. According to such authorities a presumption is an artificial thing, a mere house of cards, which one moment stands with sufficient force to determine an issue, but at the next, by reason of the slightest rebutting evidence, topples utterly out of consideration of the trier of facts.

*Combined American Ins. Co. v. Blanton,* 353 S.W.2d 847, 849 (Tex.1962).

The record in this case is replete with competent evidence to rebut the presumption of unfairness concerning the contingent fee agreement. For example, Kline testified that "from the time we started talking about contingency arrangements with [another law firm], [Defendants] said if someone is going to get a contingency fee, we want you to get part of it, because you have done so much for us...." Conversely, there was no evidence presented by Defendants to suggest that Kline's forty percent contingent fee was unfair or unreasonable. Indeed, the evidence in the record supports the inference that the agreement was entered into freely and voluntarily by Defendants based upon their full understanding of the affect of the contingent fee agreement. *See Archer,* 390 S.W.2d at 739.

The presumption upon which Defendants rely "disappeared like chaff in the wind" upon the introduction of Kline's evidence contradicting the applicable legal presumption. *See Praetorian Mutual Life Ins. Co. v. Humphreys,* 484 S.W.2d 413, 417 (Tex.App.-Fort Worth 1972, writ ref'd n.r.e.). Thereafter, the presumption, previously existent, no longer constituted evidence. *See id.; see also Sudduth v. Commonwealth County Mutual Ins. Co.,* 454 S.W.2d 196, 198 (Tex.1970).

*\*4 Accordingly, there being no evidence of unfairness or unreasonableness in the record, a specific finding by the jury that Kline's contingent fee agreement with Defendants was fair and reasonable was not necessary. *See Elbaor,* 845 S.W.2d at 243. Defendants' first issue is overruled.

*Parties*

In issues two, three, four, five and six, Defendants contend that the trial court erred by entering its judgment against each Defendant under "all three contracts." Defendants maintain that they were not jointly and severally liable on each contract. Defendants also assert that Defendant Susan C. Lee, Trustee for Susan C. Gibson was not a proper party to the suit brought by Kline.

Defendants' allegations of trial court error in issues two through six, inclusive, are waived. "Where a defendant does not file a sworn pleading complaining of a defect of parties before the case is called to trial, such defect is waived." *Sunbelt Const. Corp., Inc. v. S & D Mechanical Contractors, Inc.,* 668 S.W.2d 415, 418 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.); *Allright, Inc. v. Burgard,* 666 S.W.2d 515, 517 (Tex.App.-Houston [14th Dist .] 1983, writ ref'd n.r.e.); *Butler v. Joseph's Wine Shop, Inc.,* 633 S.W.2d 926, 929-30 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.); *see also* TEX.R.CIV.P. 93(4) (West 1999); *Shawell v. Pend Oreille Oil & Gas Co.,* 823 S.W.2d 336, 338 (Tex.App.-Texarkana 1991, writ denied) (a defendant must complain about a defect in the parties before the case is called to trial). Thus, nothing is presented for appellate review.

On rehearing, Susan C. Lee, Trustee, chastises this court for summarily disposing of five points of error; she claims that she was never a party to the suit in her capacity as trustee. We beg to differ. By her Second Amended petition, Donna Kline sued-and served-Susan C. Lee in her capacity as Trustee; Kline also sued Lee in that capacity in a supplemental petition. Moreover, Susan C. Lee, Trustee, appeared in the suit of her own volition in a counterclaim and a third party petition. That pleading began as follows: "NOW INTO COURT, Susan Camille Lee, individually and as Trustee for Susan C. Gibson, and Susan C. Gibson, and files this their Third Amended Original Counterclaim combined with Third Amended Original Third Party Petition complaining of Donna Kline and Gary Grote...." Unquestionably, Susan C. Lee, Trustee, was a party to the lawsuit, appeared in the lawsuit, and requested affirmative relief from the trial court. We overrule issues two through six.

*Separate Jury Findings on "Each Contract"*

Defendants contend in their seventh issue that Kline "invited reversible error" by failing to obtain jury findings upon which an accurate judgment can be entered against them. They contend that the trial court committed reversible error by

submitting one, broad question to the jury concerning the amount of attorney fees owed under the contracts, rather than submitting separate jury questions concerning the amount of attorney fees "owed under each contract."

*5 In interpreting Rule 277, our Supreme Court held that broad-form submissions "shall" be used "whenever feasible" and that trial courts do not possess any discretion to submit separate questions with respect to each element of a case. *Texas Dep't of Human Serv. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). Broad-form submissions must be used "in any and every instance in which it is capable of being accomplished." *Id.* The court also stated that broad-form questions reduce conflicting jury answers, thus reducing appeals and avoiding retrials. *Id.* "Rule 277 expedites trials by simplifying the charge conference and making questions easier for the jury to comprehend and answer." *Id.*

Here, the trial court submitted the following, broad-form question to the jury: "What reasonable amount, if any, is owed to Donna Kline for the necessary legal services she performed for [Defendants] on an hourly basis under the contracts?" The jury answered this question by awarding Kline $114,207.21. The record shows that this amount was entirely consistent with Kline's evidence. Kline testified that Defendants agreed to pay her $225 per hour, plus expenses, for legal services. Kline testified that the amount of her unpaid reasonable and necessary attorney fees and expenses related to her time spent preparing the underlying estate case totaled $110,388.27. Kline also testified that she billed Defendants an additional $3,818.94 for reasonable and necessary attorney fees for representing Defendants in a suit involving one of Defendants' neighbors. Kline testified that the total amount owed to her on an hourly basis for legal services she performed for Defendants totaled $114,207.21.

At trial, the only disputed fact related to Kline's hourly attorney fees under the contracts was the amount owed by Defendants. The question submitted by the trial court was framed to resolve that disputed fact. Trial courts possess "broad discretion in framing questions to be submitted, 'subject only to the requirement that the questions submitted must fairly submit the disputed issues for the jury's determination.'" *Libhart v. Copeland*, 949 S.W.2d 783, 799 (Tex.App.-Waco 1997, no writ). We discern no abuse of trial court discretion in submitting the complained of question.

Further, assuming *arguendo* that the trial court should have submitted separate questions to the jury in this case, to reverse a judgment based upon error in the charge, Defendants must establish that the error complained of amounted to such a denial of the rights of the Defendants that it was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. *See Insurance Co. of North America v. Morris*, 928 S.W.2d 133, 143 (Tex .App.-Houston [14th Dist.] 1996, no writ). Defendants must also establish that they "distinctly" and "specifically" objected to the complained of question so as to have preserved the issue for appellate review. *Kirk v. State of Texas*, 651 S.W.2d 840, 844 (Tex.App.-El Paso 1983, no writ). Concerning the former, Defendants do not develop in their argument how the trial court's complained of jury question caused the rendition of an improper judgment. *See Insurance Co. of North America*, 928 S.W.2d at 143. As to the latter, contrary to Defendants' assertion in their brief, the record shows that Defendants failed to distinctly and specifically object to the complained of question submitted by the trial court to the jury. *See Kirk*, 651 S.W.2d at 844. Issue seven is overruled.

## Good Cause

*6 In their eighth issue, Defendants contend that the jury's finding that Kline was not discharged by Defendants for "good cause" was against the great weight and preponderance of the evidence.

The same standard of review applies in reviewing factual sufficiency challenges, regardless of whether the court of appeals is reviewing a negative or affirmative jury finding and regardless of which party had the burden of proof. *Blonstein v. Blonstein*, 831 S.W.2d 468, 473 (Tex.App.-Houston [14th Dist.] 1992, writ denied). After consideration of all of the evidence, a verdict will be set aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.; see also Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be accorded their testimony. *Id.* Therefore, in determining the sufficiency of the evidence, appellate courts must recognize from the verdict of the jury what the jury, in its discretion, chose to believe. *Shafer Plumbing & Heating, Inc. v. Controlled Air, Inc.*, 742 S.W.2d 717, 720 (Tex.App.-San Antonio 1987, no writ). In doing so, we must accept the jury's resolution of any conflicts or inconsistencies in the evidence and testimony. *Id.* The jury is free to believe or disbelieve any witness' testimony in whole or in part. *Murphy v. Texas Farmers Ins. Co.*, 982 S.W.2d 79,

85 (Tex.App.-Houston [1st Dist.] 1998, no pet. h.). The jury is entitled to disbelieve a witness even though that witness is neither impeached nor contradicted. *Id.*

In Question Two, the jury in this case was asked, "Did [Defendants] discharge Donna Kline for good cause?" The jury was instructed that "a client has 'good cause' to discharge an attorney if the attorney fails to perform her duties in the manner that an attorney of ordinary skill and ability would have performed her duties under the same or similar circumstances." The jury responded to Question Two in the negative.

In their brief, Defendants contend that Kline's performance deteriorated "dramatically" after the contingent fee agreement was executed on March 30, 1995. No criticisms were made of Kline's performance between the time she was retained in July 1994 and March 1995. To show that Kline was discharged for "good cause" in September 1995, Defendants rely solely on criticisms of Kline's performance made at trial by Daniel Sheehan. First, Sheehan did not testify in this case as an expert witness concerning whether Kline met the appropriate standard of care. *See Greathouse v. McConnell,* 982 S.W.2d 165, 174 (Tex.App.-Houston [1st Dist.] 1998, no pet.). Indeed, neither Sheehan nor any other witness in this case was designated as an expert witness on legal malpractice.[9] Second, Sheehan was Kline's co-counsel, not her employer. Kline was employed by Defendants. Sheehan's criticisms of Kline's performance, testifying as only a fact witness,[10] are immaterial as to whether *Defendants* discharged Kline for "good cause." Defendants direct this Court to no testimony in the record by Defendants to support a finding that Kline was discharged by Defendants for good cause. Finally, concerning whether any of Sheehan's criticisms of Kline's performance were ever communicated to Defendants, in their brief, Defendants rely on Sheehan's testimony wherein he testified that he told Defendants that "Kline was not of any real use to me in getting the case ready."

*7 On the other hand, the record is replete with testimony and evidence that shows Kline performed in a diligent manner in preparing the underlying estate case. Kline testified that she prepared pleadings and motions, attended hearings, prepared interrogatories on behalf of Defendants, deposed several witnesses, secured expert witnesses, assisted in getting Defendants' accounting and tax affairs in order, and prepared a portion of the jury charge that was ultimately utilized in the trial of the underlying estate case. Kline testified that she

was instrumental in, *inter alia,* developing the portion of the estate case that resulted in Defendants receiving a verdict for $840,000 on the sale of property located on Westheimer. Further, one of the key expert witnesses in the estate was Dr. Harold Stephen Grace. Dr. Grace is an expert "in litigation consulting on complex business and financial matters ." Kline brought Dr. Grace into the estate case in May 1995. Dr. Grace testified that Kline supplied him with all the necessary documents he needed to develop a strategy and his testimony for the estate case. Dr. Grace testified that Kline possessed a cogent grasp of the issues involved in estate case. In preparing his testimony in the underlying estate case, Dr. Grace testified that "my time sheets would reflect that the overwhelming majority of my time, over 90 percent would be spent with Donna Kline." Dr. Grace testified that he and Kline developed the strategy that he used to testify in the estate case. Defendant Susan Lee told Dr. Grace after he testified in the underlying estate case that his testimony "was the high point of the trial."

Reviewing all the evidence in the light of what the verdict reveals the jury obviously believed, we cannot conclude that the verdict "is contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Shafer Plumbing & Heating, Inc.,* 742 S.W.2d at 721; *see also Blonstein,* 831 S.W.2d at 473-74. Issue eight is overruled.

## Declaratory Judgment

In their ninth issue, Defendants assert that the trial court erred in entering its declaratory judgment which decreed that Kline possesses a "valid and subsisting" contingent interest in any recovery obtained by Defendants in the underlying estate case, pursuant to the contingent fee agreement of March 30, 1995.

The purpose of the Uniform Declaratory Judgment Act is to settle and afford relief from uncertainty and insecurity about rights, status, and other legal relations. *Hasty, Inc. v. Inwood Buckhorn Joint Venture,* 908 S.W.2d 494, 499 (Tex.App.-Dallas 1995, writ denied); *see also* TEX.CIV.PRAC. & REM.CODE ANN. §§ 37.001-.011 (Vernon 1997). Defendants maintain that the trial court's declaratory judgment in this case "does not terminate the uncertainty or controversy giving rise to [the] lawsuit." However, Defendants do not identify in their brief what "uncertainty or controversy" remains. The trial court's declaratory judgment merely decrees that the parties' contingent fee contract is

valid. "A trial court may construe a contract in a declaratory judgment suit either before or after a breach occurs." *Id.*

*8 As to the effect of any potential disputes between the parties in this case, a "declaratory judgment may be entered if it serves a useful purpose in resolving a controversy between the parties, *even if actual or potential disputes remain." Town of Griffing Park v. City of Port Arthur*, 628 S.W.2d 101, 102 (Tex.App.-Beaumont 1981, writ ref'd n.r.e.) (emphasis added). Indeed, "[t]he fact that other issues in the general controversy remain unresolved by a declaratory judgment does not deprive the court of the power and discretion to render such a judgment." *Id* . (citation omitted); *see also Hawkins v. Texas Oil & Gas Corp.*, 724 S.W.2d 878, 891 (Tex.App.-Waco 1987, writ ref'd n.r.e.).

We note that the trial court did not enter a monetary award to Kline based upon the contingent fee contract because the amount of Defendants' recovery in the underlying estate has not been finally adjudicated. *See* note 1, *supra*. All that remains is the calculation of Kline's contingent interest in Defendants' recovery, if any. We hold, therefore, that the trial court did not err in granting a declaratory judgment, which decreed that Kline's contingent fee interest in Defendants' monetary recovery is valid. Issue nine is overruled.

### *Gary Grote's Motion for Summary Judgment*

In their tenth issue, Defendants assert that the trial court erred in granting Gary Grote's motion for summary judgment on (1) Defendants' action for malpractice against Grote, and (2) Grote's action to recover attorney fees from Defendants which were incurred when Grote represented Defendants in a lawsuit involving one of Defendants' neighbors.

The standard of review to be followed in a summary judgment is well-established. The movant has the burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Schlager v. Clements*, 939 S.W.2d 183, 186 (Tex.App.-Houston [14th Dist.] 1996, writ denied). In deciding whether or not there is a disputed material fact issue precluding summary judgment, proof favorable to the non-movant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the non-movant and any doubts are resolved in his or her favor. *Id.; see also Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex.1985). Summary judgment for the defendant is proper when the proof shows that no genuine

issue of material fact exists on one or more of the essential elements of the plaintiff's cause of action, or when the defendant establishes each element of an affirmative defense as a matter of law. *Id.; see also Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990). A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists on the plaintiff's cause of action. *Id.; see also Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 166-67 (Tex.1987).

*9 The function of a summary judgment is not to deprive a litigant of its right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. *Id.; Dallas Cent. Appraisal Dist. v. G.T.E. Directories Corp.*, 905 S.W.2d 318, 319 (Tex.App.-Dallas 1995, writ denied). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit, but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of material fact remains. *Id.*

In a legal malpractice case, as here, the plaintiff must prove a duty owed to him or her by the defendant, a breach of that duty, injury proximately caused by the breach, and damages. *Schlager*, 939 S.W.2d at 186; *see also Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex.1995). A lawyer in Texas is held to the standard of care which would be exercised by a reasonably prudent attorney, based on the information the attorney has at the time of the alleged act of negligence. *Id.* To prevail in a legal malpractice action, a plaintiff must prove "a suit within a suit" by demonstrating that he or she would have prevailed in the underlying action but for his or her attorney's negligence. *Id.* at 186-87. Although proximate cause in a legal malpractice action is usually a question of fact, it may be determined as a matter of law if the circumstances are such that reasonable minds could not arrive at a different conclusion. *Id.* If the attorney demonstrates that his failure to act was not the cause of any damages to the client, a summary judgment may be proper. *Id.*

Defendants filed legal malpractice actions against Gary Grote and Donna Kline. Their action was filed as a counterclaim to Kline's action to recover attorney fees. As to Grote, Defendants alleged that he represented Defendants on matters unrelated to the underlying estate case during 1994-95. Defendants alleged that Grote committed legal malpractice because he breached his employment contract, was negligent in representing Defendants, breached fiduciary duties by

charging excessive attorney fees and by communicating with a juror in the underlying estate case, was negligent and grossly negligent in communicating with a juror in the underlying estate case, knowingly violated the Deceptive Trade Practices Act (DTPA), relative to his representation of Defendants, and conspired with Kline to interfere with the underlying estate case by obtaining juror information sheets and communicating with a juror in that case for the purpose of causing a mistrial. [11]

Grote moved for summary judgment, contending that he was entitled to a judgment as a matter of law on Defendants' malpractice action and on his claim for attorney fees. Defendants contend that Grote's motion for summary judgment should have been denied because it was unsupported by competent summary judgment proof and did not dispose of all of the issues in the case. We disagree.

*10 Grote asserted in his motion that he was entitled to summary judgment on Defendants' malpractice action and his attorney fees action because the attorney fees he charged were reasonable and customary and that he was competent in performing the kind of legal services he performed for Defendants. In support of his motion, Grote attached copies of Defendants' responses to requests for admissions and a detailed affidavit which outlined his qualifications and which showed that his performance in representing Defendants was consistent with the standard care of what a reasonable and prudent attorney would have exercised based on the information the attorney had at the time of the alleged act of malpractice. [12] Grote also attached a copy of his billing invoice which reflected the amount of attorney fees owed by Defendants. Further, as to Defendants' allegations that Grote violated the DTPA by failing "to exercise due care and diligence in representing Susan C. Gibson and Susan C. Lee in the *Estate* case," the record clearly refutes this allegation. Grote's summary judgment unequivocally establishes that Grote never represented either Defendant in the underlying estate case. Finally, as to Defendants' allegations that Grote's communication with a juror in the underlying estate case showed that he was involved in a conspiracy with Kline "to interfere with or compromise" the underlying estate case, the summary judgment proof and record shows that this claim is at best, meritless, and at worst, frivolous. [13] *See* note 13, *supra*.

In sum, we hold, contrary to Defendants' contentions, that Grote's summary judgment proof was not conclusory and that it responded to all of Defendants' pled causes of

action. *See Mackie v. McKenzie*, 900 S.W.2d 445, 451-52 (Tex.App.-Texarkana 1995, writ denied); *see also Klein v. Reynolds, Cunningham, Peterson & Cordell*, 923 S.W.2d 45, 49 (Tex.App.-Houston [1st Dist.] 1995, no writ). Further, the record shows that Defendants' causes of action against Grote were "patently unmeritorious." *See Schlager*, 939 S.W.2d at 186. The trial court did not err in granting Grote's motion for summary judgment. Issue ten is overruled.

## *Recusal*

In their eleventh issue, Defendants aver that the trial court erred in refusing to recuse Judge Wood from the trial of this case.

Citing Rule of Civil Procedure 18b(2), Defendants contend that Judge Wood possessed "personal knowledge of the evidentiary facts concerning the proceeding" and was a "material witness to the Kline and Grote matter in the [underlying estate] litigation." *See* TEX.R.CIV.P. 18b(2) (West 1999). Defendant's eleventh issue is without merit. The gist of Defendants' complaint is that Judge Wood acquired "personal knowledge" and was a "material witness" to the instant case because during the underlying estate case he (1) heard testimony concerning to Grote's communication with Juror Thomas, (2) made certain in-court rulings, and (3) presided over the underlying estate case.

*11 Judicial rulings alone almost never constitute a valid basis for a recusal motion because they cannot possibly show reliance by a judge upon extrajudicial sources. *Ludlow v. DeBerry*, 959 S.W.2d 265, 271 (Tex.App.-Houston [14th Dist.] 1997, no writ). None of Judge Wood's knowledge of the facts of the instant case, if any, resulted from extrajudicial sources nor his "personal knowledge." *See id.* Further, there is no provision contained within Rule 18b(2) that would support Defendants' contention that Judge Wood was a "material witness" in the underlying estate litigation. *See* TEX.R.CIV.P. 18b(2) (West 1999).

There was no abuse of trial court discretion in denying Defendants' motion to recuse. *See Hector v. Thaler*, 927 S.W.2d 95, 99 (Tex.App.-Houston [1st Dist.] 1996, writ denied); *see also* TEX.R.CIV.P. 18a(f) (West 1999). Issue eleven is overruled.

*Attorney's Fees*

In their twelfth issue, Defendants contend that the trial court erred in not conditioning the award of appellate attorney's fees to Kline upon a successful appeal. In response to a jury question, the jury awarded Kline attorney's fees for the trial, for an appeal to the court of appeals, and for an appeal to the Texas Supreme Court. In the trial court's judgment, the respective awards of attorney's fees to Kline were subject to remittitur if no appeal was taken. In other words, no attorney's fees would be awarded to Kline for appeals if Defendants chose not to appeal the trial court's judgment. The trial court's judgment concerning the award of attorney's fees is proper. *See International Security Life Ins. Co. v. Spray,* 468 S.W.2d 347, 349-50 (Tex.1971). Finally, Defendants' argument that Kline's appellate attorney's fee award should have been conditioned upon Defendants' unsuccessful appeal is rendered moot by our decision to affirm the trial court's judgment. *See Siegler v. Williams,* 658 S.W.2d 236, 241 (Tex.App.-Houston [1st Dist.] 1983, no writ). Issue twelve is overruled.

The judgment is affirmed.

**All Citations**

Not Reported in S.W.3d, 2000 WL 19227

Footnotes

1      *See Lee, et al. v. Lee, et al.,* No. 14-97-00162-CV (*In re Estate of Katherine Pillot Lee Barnhart, Deceased* ). The underlying estate case is presently on appeal in this Court, assigned to another panel.

2      The underlying estate action was filed by Defendants in 1988.

3      The record shows that Defendants and Kline vacationed together in the Virgin Islands and exchanged gifts between July 1994 and July 1995.

4      The law firm of Thomas, Sheehan & Culp remained in the case as lead trial counsel. After the trial of the underlying estate case in January 1996, the law firm was awarded $1,500,000 for attorney fees.

5      As we understand Defendants' first issue, they are not challenging the award of $114,207.21. This amount was awarded to Kline based on her hourly billing rate of $225.

6      "Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, *in substantially correct wording,* has been requested in writing and tendered by the party complaining of the judgment." TEX.R.CIV.P. 278 (West 1999) (emphasis added); *Mason v. Southern Pacific Transp. Co.,* 892 S.W.2d 115, 117-18 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (where party complaining of the judgment on appeal failed to tender a written question to the trial court concerning the defendant's duty of care, point of error was waived on appeal); *see also* note 8, *infra.* Defendants' tendered jury instruction appears to be consistent with their contention that Kline violated the Texas Deceptive Trade Practices Act. *See* TEX.BUS. & COM.CODE ANN. § 17.50(a)(3) (Vernon Supp.1998). However, the trial court instructed a verdict in Kline's favor on that issue.

7      We note that the issue regarding the fairness and reasonableness of the contingent fee agreement was not raised in any of Defendants' pleadings or tendered jury questions in this case. *See* TEX.R.CIV.P. 278 (West 1999). Further, our review of the record, including Defendants' motion for new trial, discloses that the fairness and reasonableness of the contingent fee agreement was not an issue in this case at the trial level. *See A.V.A. Services, Inc. v. Parts Indus. Corp.,* 949 S.W.2d 852, 854 (Tex.App .-Beaumont 1997, no writ); *see also Steel v. Rhone Poulenc, Inc.,* 962 S.W.2d 613, 618 (Tex.App.-Houston [1st Dist.] 1997, no pet.); *Hughes v. Thrash,* 832 S.W.2d 779, 788 (Tex.App.-Houston [1st Dist.] 1992, no writ).

8      "It is elementary that undisputed factual issues need not be submitted to the jury" *Koral Indus., Inc. v. Security Connecticut Life Ins. Co.,* 788 S.W.2d 136, 149 (Tex.App.-Dallas 1990, writ denied). As noted, Defendants' specific complaint on appeal does not appear to have been a disputed factual issue at trial.

9      To establish compliance with the appropriate standard of care in a legal malpractice case, expert testimony is required. *Jatoi v. Decker, Jones, McMackin, Hall & Bates,* 955 S.W.2d 430, 434 (Tex.App.-Fort Worth 1997, pet. denied).

10      Lay or fact witnesses are subject to the general rule that a witness' testimony must be limited to facts which the witness has personal knowledge, and a witness must not give a personal opinion or legal conclusion unless he or she is designated as an expert witness. *United Way of San Antonio, Inc. v. Helping Hands Lifeline Found., Inc.,* 949 S.W.2d 707, 713 (Tex.App.-San Antonio 1997, no writ).

11      Defendants' allegations stem from the following event: After a jury had been selected in the underlying estate case, Grote, an attorney, was playing soccer with a team-mate and friend, Earl Thomas. Thomas mentioned that he was serving jury duty that day in a case involving a will dispute. Grote responded to Thomas by saying, "Oh, it's not the Lee case?" Thomas

responded that indeed it was the Lee case. Grote informed Thomas, *inter alia*, that because he was involved in litigation to recover attorney fees from Lee that Thomas should report their conversation to the judge the following morning. Thomas followed Grote's instructions and reported it to the judge the following morning. The judge declared a mistrial because of Thomas' conversation with Grote, in addition to problems with at least four other jurors. The judge noted that if Thomas was the only problem he would allow the trial to proceed but he could not allow it to proceed because another juror stated that she was suffering from intolerable pain and could not afford to serve, another juror stated that he was schizophrenic, and another stated he had to be with his wife who was taken to an emergency room. The judge concluded, "I have reached the conclusion I am very uncomfortable with the jury. I have never had a jury that has been more creative with excuses. It seems to be pandemic among them, and it's well, if you don't buy this excuse, I've got this excuse."

12 Notably, nowhere in Defendants' pleadings nor in Defendants' responses to Grote's motion for summary judgment, is an attempt made to show that Defendants possessed *any* evidence to show that Defendants could prove the "suit within a suit" by demonstrating that they would have prevailed in the action complained of but for Grote's alleged malpractice. *See Schlager*, 939 S.W.2d at 186. Indeed, this Court is left in the dark as to what it was that Grote did in the complained of action that showed he committed legal malpractice or violated the DTPA. *See Greathouse*, 982 S.W.2d at 174 (summary judgment appropriate where plaintiff fails to raise a fact issue concerning the "suit within a suit" element of a legal malpractice cause of action).

13 Attached to Grote's motion for summary judgment are copies of the transcripts from Grote's and Juror Thomas' testimony before the trial court concerning their communication.

---

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT "2"

CAUSE NO. 13-7506-403

| | | |
|---|---|---|
| ESTATE OF KATHERINE PILLOT LEE BARNHART, | § § § | IN THE PROBATE COURT |
| RONALD E. LEE JR., | § § | |
| *Plaintiff,* | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| SUSAN CAMILLE LEE, Individually and as Trustee of the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased, and as Executor of the Estate of Katherine Pillot Lee Barnhart, Deceased, | § § § § § § § § § § | |
| *Defendant.* | § | PROBATE COURT NO. 2 |

## DEFENDANT'S OBJECTIONS, OPPOSITION, AND RESPONSE TO APPLICATION TO APPROVE SETTLEMENT AGREEMENT

Susan Camille Lee, Individually and formerly Trustee of the Article IV Trust (the "Trust") created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased (the "Barnhart Will"), and as Executor of the Estate of Katherine Pillot Lee Barnhart, Deceased, ("Defendant") files her Objections, Opposition, and Response to the Application to Approve Settlement Agreement filed by Applicant Legacy Trust Company ("Legacy") in its capacity as the court-appointed Receiver of the Testamentary Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased, and in support thereof would respectfully show as follows:

## BACKGROUND

The Barnhart Will created the Trust for the benefit of Ronald Ellsworth Lee Jr. ("Ronald Lee"), Susan Camille Lee ("Susan Lee"), and Katherine Pillot Lee Barnhart's grandchildren. On June 18, 2015, the Court removed Susan Lee as Trustee of the Trust and appointed Legacy to

02/10/16

serve as receiver for the Trust pursuant to TEX. PROP. CODE § 114.038. The Order provided that Legacy was authorized to collect, compromise, or settle all debts owed to the Trust.

On January 25, 2016, Legacy filed its Application to Approve Settlement Agreement ("Application"), attaching an executed Settlement Agreement between Ronald Lee and Legacy, dated as effective January 13, 2016. Among other things, the Settlement Agreement calls for a settlement of the judgment against Ronald Lee in favor of the Trust, entered in 1996, arising out of *Lee v. Lee*, Cause No. 137,506, Harris County Probate No. 2. The judgment was modified by the Fourteenth Court of Appeals in *Lee v. Lee*, 47 S.W.3d 767 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The court of appeals rendered its opinion on May 17, 2001, the Texas Supreme Court denied Ronald Lee's petition in December 2001, and the Fourteenth Court of Appeals issued its mandate on February 8, 2002. On December 6, 2012, this Court entered an Order Granting Application for Writ of Scire Facias and to Revive Dormant Judgment in Cause No. 137,506-402 ("Judgment").

I.     **The proposed Settlement Agreement is not in the best interest of the Trust and should not be approved.**

## SUMMARY OF OBJECTION AND RESPONSE

The Court should not approve Legacy's Settlement Agreement with Ronald Lee because:

1. Settlement of the Trust's $26 million Judgment against him for less than one-half of its value is not in the best interest of the Trust and violates Legacy's fiduciary duties.

2. The proposed transfer of Ronald Lee's interest in the River Bend Farm Property is of no benefit to the Trust because it already owns his interest.

A.     The proposed settlement of the Judgment is grossly inadequate.

The proposed Settlement Agreement between Ronald Lee and Legacy allows Ronald Lee to satisfy the Judgment in full, apparently for consideration that includes an alleged payment of $8 million in 2015, and a promissory note in the amount of $4 million payable quarterly over a period of two years at a 4% interest rate. This amount is woefully inadequate, less than one-half of what is due under the Judgment.

Legacy's Application understates the amount of the Judgment against Ronald Lee by a significant amount. The Application simply references a judgment totaling approximately $3.9 million "plus prejudgment interest." The actual amount of the Judgment is in excess of $4.3 million, and significant portions of the Judgment carry post-judgment interest at the rate of 10% compounded annually back to October 1996, almost 20 years. When post-judgment interest is calculated in accordance with the Fourteenth Court of Appeals' opinion, the total amount of the Judgment as of February 2016 exceeds $26 million.[1] Yet, the proposed Settlement Agreement discharges the Judgment and sells the Trust's $26 million asset in return for only $8 million, plus a $4 million promissory note payable over two years. And, the promissory note carries only 4% interest, compared to the Judgment's rate of 10%.

Ronald Lee and Legacy have colluded to relieve him of his obligations to the Trust. Legacy asks the Court to find that the Settlement Agreement is in the best interest of the Trust. Yet, it allows Ronald Lee to discharge this judgment (unpaid for 20 years) for less than 50 cents on the dollar. It is not in the best interest of the Trust or its beneficiaries. Rather, it is only in Ronald

---

[1]     An approximate calculation of the Trust's Judgment against Ronald Lee with prejudgment and post-judgment interest in accordance with the Fourteenth Court of Appeals' opinion is attached hereto as *Exhibit A*.

Lee's interest, providing a windfall to him in violation of Legacy's duties as Receiver. While Legacy has the authority to compromise and settle all debts owed to the Trust, it is also charged with all *duties* of a trustee under the Trust.[2] Legacy owes fiduciary duties to all beneficiaries of the Trust to exercise good faith in protecting the assets of the Trust and discharging its duties as a prudent person would ordinarily exercise in the management of his or her own affairs. The agreement to allow Ronald Lee to satisfy the Judgment is in violation of Legacy's duties.

Based on the foregoing, Susan Lee requests that the Court deny Legacy's Application to Approve the Settlement Agreement and deny Legacy authority to enter into the agreement as presented.

### B. Ronald Lee's transfer of the River Bend Farm Property is of no benefit to the Trust.

Legacy's Settlement Agreement also calls for the settlement of issues related to Ronald Lee's interest in property known as the River Bend Farm Property, consisting of approximately 640 acres in Wharton County, Texas. Legacy's Application states that Ronald Lee acquired a 25% interest in this property from the estate of his father and the Trust acquired a 50% interest under the Barnhart Will. The agreement calls for Ronald Lee to deed his interest in the River Bend Farm Property to Legacy. The problem here is that Ronald Lee has no interest in the River Bend Farm Property. Legacy's Application fails to inform the Court that Ronald Lee's interest in the River Bend Farm Property was foreclosed upon for failure to pay taxes. Susan Lee as Trustee of the Trust later redeemed that interest. Therefore, the conveyance of Ronald Lee's interest in the River Bend Farm Property is worthless to the Trust, because it already owns his interest. Whatever consideration is given to Ronald Lee for the value of his interest in the property for the transfer

---

[2]    Order Removing Trusting and Appointing Receiver ¶ 3.a, June 18, 2015.

should be nullified. In this regard, the purported Settlement Agreement is not in the best of the Trust and Legacy's Application to Approve the Settlement Agreement in this regard should also be denied.

WHEREFORE, PREMISES CONSIDERED, Susan Lee respectfully request that the Court: (1) decline to approve the terms of the Proposed Settlement Agreement; (2) find that the proposed settlement agreement is not in the best interest of the Trust; and (3) deny Legacy in its capacity as receiver the authority to enter into the proposed settlement agreement on behalf of the Trust. Susan Lee also request such other and further relief as which she may show herself justly entitled.

Respectfully submitted,

**DANIEL SHEEHAN PLLC**

/s/Daniel J. Sheehan
DANIEL J. SHEEHAN
State Bar No. 18174500
*dsheehan@dsa-law.com*
JOHN M. PHALEN JR.
State Bar No. 15895300
*jphalen@dsa-law.com*
Campbell Centre II, Suite 100
8150 N. Central Expressway
Dallas, Texas 75206
(214) 468-8899
(214) 468-8803 Fax

**ATTORNEYS FOR
DEFENDANT SUSAN CAMILLE LEE**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record on February 10, 2016, in accordance with TEX. R. CIV. P. 21a.

/s/Daniel J. Sheehan

# EXHIBIT A

*Lee v. Lee*, 47 S.W.3d 767, 801 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)



### EXCESSIVE EXECUTORS' FEES

$659,506

**+** $1,538,848

**$2,198,355**

**+** $333,417 ⟶ PREJUDGMENT INTEREST 10% SIMPLE 7/28/1993 TO 10/24/1996

**$2,531,772** ⟶ PLUS POST-JUDGMENT INTEREST

### EXCESSIVE FEES TOTAL:

**$15,535,701** ⟶ $2,531,772 AT 10% COMPOUNDED ANNUALLY 10/26/1996 TO 2/26/2016 (19.3 YEARS)

### ATTORNEYS' FEES & COURT COSTS

| TRIAL: | $1,500,000 | Plus Post-Judgment Interest |
|---|---|---|
| TOTAL: | $9,173,863 | $1.5M@ 10% Compounded Annually 10/25/1996 to 2/26/2016 (19.3 Years) |
| APPELLATE: | $300,000 | Plus Post-Judgment Interest |
| TOTAL: | $1,035,681 | $300,000@ 10% Compounded Annually 2/28/2002 to 2/26/2016 (13.3 Years) |
| SUPREME COURT: | $100,000 | Plus Post-Judgment Interest |
| TOTAL: | $379,749 | $100,000@ 10% Compounded Annually 12/13/2001 to 12/13/2015 |
| TRIAL COURT COSTS: | $258,452 | $42,259@ 10% Compounded Annually 10/26/1996 to 10/26/2015 |
| APPELLATE COURT COSTS: | $125,993 | $33,178@ 10% Compounded Annually 2/08/2002 to 02/08/2016 |

ATTORNEYS' FEES TOTAL: **$10,589,293**

EXECUTOR'S FEES TOTAL: **$15,535,701**

TOTAL: **$26,124,994**

COSTS TOTAL: **$384,445**

GRAND JUDGMENT TOTAL: **$26,509,439**

FILED
DALLAS COUNTY
5/26/2016 4:02:53 PM
FELICIA PITRE
DISTRICT CLERK
David Hernandez

CAUSE NUMBER DC-16-04570

| | | |
|---|---|---|
| TOM THOMAS, DAN SHEEHAN<br>and MARC CULP, individually and<br>as successors to the interests of<br>Thomas, Sheehan & Culp, L.L.P.,<br>Plaintiffs, | §<br>§<br>§<br>§<br>§<br>§ | IN THE 162nd DISTRICT |
| v. | §<br>§ | COURT OF |
| LEGACY TRUST COMPANY,<br>N.A., in the capacity as RECEIVER<br>FOR THE ARTICLE IV TRUST<br>created by the Last Will and<br>Testament of Katherine Pillot Lee<br>Barnhart, Deceased,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ | DALLAS COUNTY, TEXAS |

# Subject to Motion to Transfer Venue & Motion to Transfer Lawsuit to Statutory Probate Court, Defendant's Original Answer, Plea In Abatement, and Counterclaim

Defendant Legacy Trust Company, N.A., in its capacity as Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased appointed by the Probate Court No. 2 of Harris County (hereinafter referred to as "Defendant or "Legacy"), and, subject to its (1) Motion to Transfer Venue and (2) Motion to Transfer Lawsuit to Statutory Probate Court, files this its Original Answer and Plea in Abatement, and in support thereof would respectfully show the Court the following:

1. As stated above, Defendant is filing this pleading subject to the following two pleadings:

   a. Defendant's Motion to Transfer Venue which is being contemporaneously filed with this Court under the above entitled and numbered cause; and

0050812

05/26/16

| | | |
|---|---|---|
| TOM THOMAS, DAN SHEEHAN and MARC CULP, individually and as successors to the interests of Thomas, Sheehan & Culp, L.L.P., Plaintiffs, | § § § § § § | IN THE 162nd DISTRICT |
| v. | § § | COURT OF |
| LEGACY TRUST COMPANY, N.A., in the capacity as RECEIVER FOR THE ARTICLE IV TRUST created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased, Defendant. | § § § § § § § § | DALLAS COUNTY, TEXAS |

# Subject to Motion to Transfer Venue & Motion to Transfer Lawsuit to Statutory Probate Court, Defendant's Original Answer, Plea In Abatement, and Counterclaim

Defendant Legacy Trust Company, N.A., in its capacity as Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased appointed by the Probate Court No. 2 of Harris County (hereinafter referred to as "Defendant or "Legacy"), and, subject to its (1) Motion to Transfer Venue and (2) Motion to Transfer Lawsuit to Statutory Probate Court, files this its Original Answer and Plea in Abatement, and in support thereof would respectfully show the Court the following:

1.      As stated above, Defendant is filing this pleading subject to the following two pleadings:

  a.  Defendant's Motion to Transfer Venue which is being contemporaneously

      filed with this Court under the above entitled and numbered cause; and

0050812

b. Defendant's Motion to Transfer Lawsuit to Statutory Probate Court which was filed in Harris County Probate Court Number Two (2) under Cause Number 137,506-403 on May 13, 2016.

## Original Answer

## General Denial

2. Defendant hereby asserts a general denial as to each and every allegation contained in Tom Thomas, Dan Sheehan, and Marc Culp's (hereinafter sometimes referred to collectively as the "Plaintiffs") Original Petition as authorized by Rule 92 of the Texas Rules of Civil Procedure. Defendant requests that the Court require Plaintiffs to prove their claims, charges, and allegations as required by the Constitution and the laws of the State of Texas.

3. Defendant respectfully reserves the right to file an amended answer in response to Plaintiff's Original Petition in the manner which is authorized by the Texas Rules of Civil Procedure.

## Verified Denial

4. Without waiving the foregoing general denial, Defendant hereby asserts the following verified denial:

a. Defendant denies the existence of a valid contract (a.k.a. – a written fee agreement) between the Plaintiffs and the Trustee of the Article IV Trust that was created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased (hereinafter referred to as the "Article IV Trust").

0050812

## Additional Defenses

5.     Without waiving the foregoing general denial or verified denial, Defendant hereby assets the following defenses:

a.     Defendant asserts that a duly-authorized Trustee for the Article IV Trust did not sign the written fee agreement, and, as a result, no Trustee of the Article IV Trust (nor the assets of the Article IV Trust) are bound by the terms and provisions of the agreement.

b.     Defendant asserts the defense of res judicata;

c.     Defendant asserts the defense of claim preclusion;

d.     Defendant asserts the defense of issue preclusion;

e.     To the extent that Plaintiffs seek to recover a contingent fee from Susan Lee's or Susan Gibson's beneficial interest in the Article IV Trust by virtue of the fee agreement, Defendant asserts that such a recovery is barred by the spendthrift clause which is a part of the Article IV Trust;

f.     Defendant asserts the defense of estoppel;

g.     Defendant asserts the defense of quasi-estoppel;

h.     Defendant asserts the defense of acceptance of benefits;

i.     Defendant asserts the defense of laches; and

j.     Defendant asserts the defense of limitations.

0050812

k.      Defendant asserts that plaintiffs' claims to entitlement to attorneys' fees are

barred by Texas Government Code §82.065(a).

## Plea In Abatement

6.      Without waiving the foregoing general denial, verified denial, or defenses, Defendant moves to abate these proceedings pending a ruling from Harris County Probate Court Number Two (2) on Defendant's Motion to Transfer Lawsuit to Statutory Probate Court which Defendant previously filed with Harris County Probate Court Number Two (2) on May 13, 2016 under Cause Number 137,506-403.

## Counterclaim

7.      Subject to the foregoing Motion to Transfer Venue, Defendant Legacy Trust Company, N.A., in its capacity as Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased appointed by the Probate Court No. 2 of Harris County asserts the following counterclaims against Plaintiffs Tom Thomas, Dan Sheehan, and Marc Culp.

8.      Defendants Tom Thomas, Dan Sheehan, and Marc Culp have asserted claims against Legacy for legal fees they claim are owed by the trustee of the Article IV Trust. Legacy is the court-appointed Receiver for the Article IV Trust, invested with all the power of the trustee of the Article IV Trust.

9.      The original trustee of the Article IV Trust was Ronald E. Lee, Jr. (hereinafter referred to as "Mr. Lee"). Under the Last Will and Testament of Katherine Pillot Lee Barnhart (hereinafter referred to as the "Barnhart Will"), in the event Mr. Lee failed to serve as trustee, the Article IV Trust was to be managed by co-trustees (1) Susan Camille Lee *and* (2) Texas Commerce Bank, N.A. or any successor to that bank. In the event that Texas Commerce Bank,

0050812

N.A. or its successors failed to serve, another financial institution with trust powers was required by the Barnhart Will to be appointed.

10. Mr. Lee was removed as trustee of the Article IV Trust on February 8, 2002. The successor to Texas Commerce Bank, N.A. at that time was JP Morgan Chase Bank. JP Morgan Chase Bank declined to serve as co-trustee after Susan Camille Lee specifically requested that it not serve with her as co-trustee. Susan Camille Lee never sought or obtained the appointment of a substitute co-trustee as required by the Barnhart Will and Texas law.

11. No agreement was ever signed by any trustee of the Article IV Trust with Tom Thomas, Dan Sheehan or Marc Culp, or with the law firm of Thomas, Sheehan & Culp, L.L.P., for (1) the provision of legal services to the trustee of the Article IV Trust, (2) the payment of a contingent fee for legal services to the trustee of the Article IV Trust or on behalf of the Article IV Trust, or (3) the payment of a debt for legal services of another person. Notwithstanding the lack of any such agreement, Messrs. Thomas, Sheehan and Culp have asserted claims against Legacy in its capacity as court-appointed Receiver of the Article IV Trust for a contingent fee based on collections by Mr. Lee as a former trustee of the Article IV Trust, collections by Legacy as Receiver of the Article IV Trust, and asserted entitlement to collect a contingent fee based on future collections by Legacy as Receiver of the Article IV Trust.

12. Susan Camille Lee was not a co-trustee of the Article IV Trust when she signed the contingency fee agreement in her individual capacity in 1995. In fact, she would not become even a co-trustee for another seven years. When Susan Camille Lee eventually became a co-trustee, she never sought or obtained appointment of a co-trustee as required under the Article IV Trust, a clear violation of the terms of the Trust and the intent of Katherine Pillot Lee Barnhart

0050812

when she executed the Barnhart Will. Susan Camille Lee never had the power to bind the Article IV Trust to the contingency fee agreement.

13. Legacy is placed at jeopardy based on these claims, and pursuant to TEX. CIV. PRAC. & REM. CODE §37.005 asks this Court to declare that, under the terms of the Barnhart Will, the Article IV Trust, and Texas law, the purported March 30, 1995 contingency fee agreement among Thomas, Sheehan & Culp, LLP, Susan Lee, and Susan Gibson does not today bind a lawfully appointed Trustee or Receiver of the Article IV Trust. Legacy seeks this relief to foreclose current and future claims by Plaintiffs against Legacy under the contingency fee agreement.

14. Legacy further requests that this Court award reasonable and necessary attorney's fees to Legacy as would be equitable and just and therefore authorized by TEX. CIV. PRAC. & REM. CODE §37.009.

15. Legacy further requests that pursuant to TEXAS PROPERTY CODE §114.064, this Court make such award of costs and attorney's fees to Legacy as may seem equitable and just.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Defendant and Counterclaim Plaintiff Legacy Trust Company, N.A., in its capacity as court-appointed Receiver of the Article IV Trust under the Last Will and Testament of Katherine Pillot Lee Barnhart, respectfully requests that on final hearing, the Court grant the following relief:

- A judgment from the Court that Plaintiffs take nothing by way of their lawsuit;

- A judgment from the Court that costs be adjudged against Plaintiffs;

- An order that this matter is to be abated until such time as Harris County Statutory Probate Court Number Two (2) has ruled on Defendant's Motion to Transfer Proceeding to Statutory Probate Court;

0050812

- A declaration that Legacy and any future Receiver or trustees of the Article IV Trust have no obligation to pay additional fees to Tom Thomas, Dan Sheehan, Marc Culp, or Thomas, Sheehan & Culp, LLP.;

- An award from Tom Thomas, Dan Sheehan, and Marc Culp, jointly and severally of Legacy's reasonable attorneys' fees incurred in connection with this matter; And

- Such other and further relief as Legacy may show itself justly entitled to receive.

Respectfully submitted,

MacIntyre McCulloch Stanfield
& Young, LLP

By: _____
    **W. Cameron McCulloch**
    State Bar No. 00788930
    **Adri Graves**
    State Bar No. 24049999
    2900 Weslayan, Suite 150
    Houston, TX 77027
    (713) 572-2900
    (713) 572-2902 (FAX)
    Cameron.McCulloch@mmlawtexas.com
    Adri.Graves@mmlawtexas.com

Attorneys for Legacy Trust Company, N.A. in its capacity as Court-appointed Receiver of the Article IV Trust under the Last Will and Testament of Katherine Pillot Lee Barnhart

0050812

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument was sent to the following via United States Certified Mail, return receipt requested, via e-serve, and/or via facsimile on this the _____ day of May, 2016:

Mr. Marc S. Culp
Culp & Dyer, LLP
222 E. McKinney Street, Suite 210
Denton, Texas 76201
(940) 484-4436

Mr. Thomas A. Zabel
Zabel Freeman
1135 Heights Blvd.
Houston, Texas 77008
(713) 802-9114 (Fax)

Mr. Daniel J. Sheehan
Mr. John M. Phalan, Jr.
Mr. M. Patrick McShan
Daniel Sheehan & Associates, LLP
2501 North Harwood, Suite 1280
Dallas, Texas 75201
(214) 468-8803 (Fax)

Mr. John W. Porter
Ms. Keri Brown
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
(713) 229-1522 (Fax)

W. Cameron McCulloch
Adri A. Graves

0050812

# VERIFICATION

STATE OF TEXAS     §
COUNTY OF HARRIS     §

Before me, the undersigned authority, on this day personally appeared Sarah Snook, in her capacity as a Vice President and Trust Officer for Legacy Trust Company, N.A., in its capacity as the Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased. Sarah Snook (hereinafter referred to as the "Affiant") is a person whose identity is known to me. After I administered an oath to Affiant, Affiant testified as follows:

"My name is Sarah Snook. I am a Vice President and Trust Officer for Legacy Trust Company, N.A.. Legacy Trust Company is the Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased appointed by Harris County Probate Court Number Two (2). I am capable of making this verification. I have read the foregoing pleading, which is entitled "Subject to Motion to Transfer Venue & Motion to Transfer Lawsuit to Statutory Probate Court, Defendant's Original Answer, Plea In Abatement and Counterclaim". With regard to paragraphs 4, 5 and 6 of the pleading, the facts stated in these paragraphs are within my personal knowledge and are true and correct."

_____
Sarah Snook, Vice President and Trust Officer for Legacy Trust Company, N.A., in its capacity as the Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barnhart, Deceased

Sworn to and subscribed before me, the undersigned authority, on this the 26 day of

May, 2016.



_____
Notary Public, State of Texas

CANDICE T. MARTIN
Comm. Exp. Feb. 12, 2020
ID. No. 078842-4

TAB 2



W. CAMERON McCULLOCH, JR.
PARTNER
cameron.mcculloch@mmlawtexas.com

MacINTYRE·McCULLOCH·STANFIELD·YOUNG

ROBERT S. MACINTYRE, JR.
W. CAMERON McCULLOCH, JR.
ROBERT·B. STANFIELD
JILL WILLARD YOUNG
ADRIANNE ARCHER GRAVES
CHRISTOPHER BURT
THUY THAI GOTTLIEB
WILLIAM C. MCCULLOCH +

+ OF COUNSEL

July 5, 2016

**Via E-Mail: amontgomery@cdhllp.com**
Ms. Amanda Montgomery
Culp & Dyer, L.L.P.
222 E. McKinney Street, Suite 210
Denton, Texas 76201

Re: Cause Number 137,506-404; *Tom Thomas. Dan Sheehan and Marc Culp, Individually and as Successors to the Interests of Thomas, Sheehan & Culp, L.L.P. vs. Legacy Trust Company, N.A., in its capacity as the Receiver for the Article IV Trust created by the Last Will and Testament of Katherine Pillot Lee Barhnhart, Deceased;* In Harris County Probate Court Number Two (2)[1]

Dear Amanda:

This letter confirms our recent e-mail communications wherein we have agreed, on behalf of our respective clients, to extend discovery response deadlines for the lawsuit which is referenced above.

For purposes of this agreement, the term "Plaintiffs" shall collectively refer to your clients, meaning Plaintiffs Tom Thomas, Dan Sheehan and Marc Culp, Individually and as Successors to the Interest of Thomas, Sheehan & Culp, L.L.P. In addition, the term "Plaintiff", for purpose of this agreement, shall refer to each of the Plaintiffs individually.

For purposes of this agreement, the term "Defendant" shall refer to my client, meaning Legacy Trust Company, N.A., in its capacity as the Court appointed Receiver for the Article IV Trust created under the Will of Katherine Pillot Lee Barnhart, Deceased.

Per our agreement, the deadline for the Plaintiffs to respond to Defendant's pending First Requests for Disclosure, First Requests for Admission, Interrogatories and Requests for Production to TSC shall be extended until August 15, 2016. The purpose of the aforementioned extension is to provide Plaintiffs with sixty days within which to respond to Defendant's pending discovery requests, as identified above.

---

[1] Prior to the entry of an Order Granting Motion to Transfer Lawsuit to This Statutory Probate Court by Harris County Probate Court Number Two (2) on June 7, 2016, this lawsuit was pending in the 162nd Judicial District Court of Dallas County, Texas under Cause Number DC-16-04570.
101167 001962 0051436

Per our agreement, Defendant shall have sixty days within which to respond to the first set of any written discovery requests which are propounded to Defendant by Plaintiffs, or by any Plaintiff, for the lawsuit which is referenced above. Defendant's sixty day discovery response period will begin to accrue on the date upon which Defendant, by and through my office, is served with written discovery requests by Plaintiffs, or by any Plaintiff, for the lawsuit which is referenced above.

If this letter accurately reflects your understanding of our agreement, please acknowledge by signing below and returning it to us. Your cooperation in this regard is greatly appreciated.

Should you have any questions, please call or e-mail me. My telephone number at work is (713) 572-2900, and my e-mail address is Cameron.McCulloch@mmlawtexas.com.

Sincerely,

W. Cameron McCulloch

AGREED ON JULY _____, 2016:

CULP & DYER, L.L.P.

By:_____
        Amanda Montgomery

ATTORNEY FOR PLAINTIFFS TOM THOMAS,
DAN SHEEHAN AND MARC CULP, INDIVIDUALLY
AND AS SUCCESSORS TO THE INTEREST OF
THOMAS, SHEEHAN & CULP, LLP.

# TAB 3

# Virginia Martinez

| | |
|---|---|
| **From:** | Cameron McCulloch |
| **Sent:** | Friday, July 01, 2016 11:54 AM |
| **To:** | Amanda Montgomery |
| **Cc:** | Marc Culp |
| **Subject:** | RE: Cause Number 137506-403; Susan Camille Lee, et al., vs. Ronald E. Lee, Jr., el al,; In Harris County Probate Court Number Two (2) |

Amanda:

Legacy will agree to respond to discovery requests from TSC on the same time frame that TSC responds to Legacy's pending discovery requests. For example, if we agree that TSC will have 60 days to respond to Legacy's pending discovery requests, Legacy would likewise have 60 days to respond to discovery requests from TSC. Legacy would also agree to a stipulation that TSC's propounding of discovery requests to Legacy does not in any way constitute a waiver of TSC's pending plea in abatement argument. Let me know if this proposed solution is acceptable to you.

You are correct that my letter from earlier today should be construed as Legacy being opposed to your Motion for Emergency Stay. Thanks. Cameron

W. Cameron McCulloch
**MacINTYRE • McCULLOCH • STANFIELD • YOUNG, LLP**
Please note our new address:
2900 Weslayan, Suite 150
Houston, Texas 77027
713-572-2900 (Telephone)
713-572-2902 (Fax)
Cameron.McCulloch@mmlawtexas.com

**From:** Amanda Montgomery [mailto:amontgomery@cdhllp.com]
**Sent:** Friday, July 01, 2016 11:22 AM
**To:** Cameron McCulloch <Cameron.McCulloch@mmlawtexas.com>
**Cc:** Marc Culp <MCulp@cdhllp.com>
**Subject:** FW: Cause Number 137506-403; Susan Camille Lee, et al., vs. Ronald E. Lee, Jr., el al,; In Harris County Probate Court Number Two (2)

Cameron,
Marc and I have reviewed the attached letter you sent today regarding a potential 30-day extension on discovery responses under a Rule 11 Agreement. While we appreciate the offer of a 30-day extension, the premise of that allows you to receive discovery (with motions still pending), but we would risk waiving our plea in abatement argument if we were to serve any discovery on Legacy Trust during this interim period. That places TSC in an unfair position, which is why we are pursuing a stay of the proceedings in the 14th CoA, as I discussed this morning with your assistant. My hope is that you promptly received the message I provided to her this morning at around 8:45 a.m., please notify me if you did not receive this message.

We will be filing this Motion with the CoA today, your letter indicates to us that you are opposed to the Motion for Emergency Stay under TRAP 52.10.

Best Regards,

1

**From:** Marc Culp
**Sent:** Friday, July 01, 2016 10:46 AM
**To:** Amanda Montgomery
**Subject:** FW: Cause Number 137506-403; Susan Camille Lee, et al., vs. Ronald E. Lee, Jr., el al,; In Harris County Probate Court Number Two (2)

**From:** Virginia Martinez [mailto:virginia.martinez@mmlawtexas.com]
**Sent:** Friday, July 01, 2016 10:27 AM
**To:** Marc Culp
**Cc:** 'ssnook@legacytrust.com'; Legacy Trust Company, N.A. (jcrow@legacytrust.com); 'kalexander@porterhedges.com'; Cameron McCulloch
**Subject:** Re: Cause Number 137506-403; Susan Camille Lee, et al., vs. Ronald E. Lee, Jr., el al,; In Harris County Probate Court Number Two (2)

Re: Cause Number 137506-403; Susan Camille Lee, et al., vs. Ronald E. Lee, Jr., el al,; In Harris County Probate Court Number Two (2)

Mr. Culp:

Please see the attached transmittal letter in connection with the above entitled matter. If you are unable to access the attachment, please contact me. Thank you for your time.

Please note our new address:

**MMS&Y**

**Virginia Martinez**
**MacINTYRE • McCULLOCH • STANFIELD • YOUNG, LLP**
**2900 Weslayan, Suite 150**
**Houston, Texas 77027**
**(713) 572-2900 Telephone**
**(713) 572-2902 Fax**
virginia.martinez@mmlawtexas.com